Daniel L. Warshaw (CA Bar No. 185365)
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104
Email: dwarshaw@pswlaw.com

*Attorneys for Plaintiffs and the Proposed Class*
*(Additional Counsel on Signature Page)*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| **ANURAG GUPTA and by and through him, D.G. and V.G., his minor children,** <br><br> *individually and on behalf of all others similarly situated,* <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **AERIES SOFTWARE, INC.,** <br><br> **Defendant.** | **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

1    Plaintiffs Anurag Gupta and his minor children, D.G. and V.G. ("Plaintiffs"),
2  individually and on behalf of all other persons similarly situated, and through their
3  attorneys of record, allege the following against Defendant Aeries Software, Inc.
4  ("Aeries" or "Defendant") based upon personal knowledge with respect to themselves,
5  on information and belief derived from investigation of counsel, and review of public
6  documents as to all other matters.

7                              **INTRODUCTION**

8    1.    Plaintiffs D.G. and V.G. are minor students at the ABC Unified School
9  District ("ABC"), which is one of many public school districts in California that utilize
10  the Aeries School Information System offering ("Aeries SIS") to manage student data.
11  Unfortunately for Plaintiffs, Aeries did not adequately safeguard their data, and they
12  and thousands of other students are now the victims of a large-scale, long-lasting data
13  breach that will impact them for years to come. Plaintiff Gupta is the natural parent of
14  Plaintiffs D.G. and V.G., and his data was also compromised in the same data breach.

15    2.    In November 2019, Aeries began internally investigating an attempt of
16  unauthorized persons to access data through "Aeries SIS.[1] According to Aeries, it did
17  not discover any unauthorized access, but nevertheless, it updated the Aeries SIS on
18  December 20, 2019, to fix security deficiencies it discovered during its internal
19  investigation.

20    3.    In January 2020, Aeries learned that one of its school district clients
21  whose students' (as well as the students' parents' and guardians') personal information
22  was stored locally on the school districts' database and processed through the Aeries
23  SIS, had their local database subjected to unauthorized access. Aeries undertook
24  another investigation.[2]

25

26

27
[1] http://aeries.com/notice-of-data-breach-4-27-2020 (last visited May 26, 2020)
[2] *Id.*

4.    Aeries now admits that 166 databases hosted on Aeries servers and storing data on behalf of the school districts (this Aeries server environment is referred to herein as "Aeries Hosting") were subject to unauthorized access beginning on or about November 4, 2019 (the "Data Breach"). According to Aeries, it did not discover the unauthorized access of those other Aeries Hosting databases until March 2020, and it claims "the unauthorized access has been terminated."[3] However, Aeries has not disclosed when such access was terminated, and its assertion that it has resolved the problem is doubtful given its inability to detect the intrusion for four months even though it was on notice of intrusion attempts and known security deficiencies during that time.

5.    Despite having knowledge of the Data Breach as early as November 2019, and certainly no later than January 2020, Aeries did not notify its school district customers of the Data Breach until April 27, 2020, when it issued a "Notice of Data Breach" to school district customers using Aeries Hosting.

6.    The April 27, 2020 "Notice of Data Breach" disclosed only that the following personal information was compromised: "Parent and Student Login information, physical residence addresses, emails, and 'password hashes.'" Aeries further acknowledged that "[w]ith access to a password hash, weak, common or simple passwords, can be deconstructed to gain unauthorized access to Parent and Student Accounts."[4]

7.    The Notice of Data Breach did not disclose that additional treasure troves of personal information were stored on behalf of its school district customers in Aeries Hosting, including, *inter alia*, minor students' immunization and other health records, social security numbers, class grades, standardized test information, previous addresses, parent's or guardian's credit or debit cards and other financial information

---

[3] *Id.*
[4] *Id.*

1 | used to pay school fees and fines, and more (collectively with the personal information
2 | identified in paragraphs 6, 21, and 25, the "PII").

3 |     8.    More than two weeks after Aeries sent its school district customers the
4 | Notice of Data Breach, ABC finally provided notice of the breach to parents and
5 | guardians of children attending ABC schools on May 13, 2020, including Mr. Gupta.[5]
6 | This notice did not disclose any of the categories of students', parents', or guardians'
7 | PII that were compromised in the Data Breach. Nor did a subsequent email sent on
8 | May 21, 2020, from ABC's Director of Information and Technology, which only
9 | provided instructions for how parents and students could reset their passwords used
10 | to access Aeries SIS.[6] On May 28, 2020, ABC finally sent a more detailed notice with
11 | the subject line "An Announcement from Colin Sprigg."[7]

12 |     9.    Unfortunately, even Aeries' subsequent investigations failed to uncover
13 | that it was not only PII stored on Aeries Hosting that was compromised. In early May
14 | 2020, other school district customers discovered that PII processed through the Aeries
15 | SIS but stored on local servers (i.e., the school districts' servers) was also subject to
16 | unauthorized access and part of the Data Breach.[8] Aeries' failure to discover this is
17 | particularly disturbing as the January 2020 incident referenced in the Notice of Data
18 | Breach involved a school district that did not use Aeries Hosting.

19 |     10.    Shockingly, as of the date of filing, Aeries *still* has not publicly disclosed
20 | that its non-Aeries Hosting customers may also have had students', parents', and
21 | guardians' PII compromised in the Data Breach.

---

[5] *See* May 13, 2020 Notice of Data Breach, attached as **Exhibit A**.
[6] A copy of this May 21, 2020 email is attached as **Exhibit B**.
[7] A copy of this May 28, 2020 email is attached as **Exhibit C**.
[8] *See, e.g., Aeries Security Incident*, Rocklin Unified School District (May 12, 2020), *available at* https://www.rocklinusd.org/documents/District%20Info/RUSD%20-%20Aeries%20Breach%20Parent%20Notification.pdf.

11.     Aeries is responsible for allowing the Data Breach to occur because it failed to implement and maintain any reasonable safeguards and failed to comply with industry-standard data security practices, contrary to the representations made in Aerie's privacy statements and its explicit and implied agreements with its school district customers.

12.     During the duration of the Data Breach, Aeries failed to detect the unauthorized third parties' access to its service, notice the massive amounts of data that were compromised, and failed to take any steps to investigate the red flags that should have warned Aeries that its systems were not secure. As a result of Aeries' failure to protect the student information it was entrusted with, Plaintiffs and class members have been exposed to and/or are at a significant risk of identity theft, financial fraud, and other identity-related fraud into the indefinite future. Plaintiffs and class members have also lost the inherent value of their PII. This harm was compounded by Aeries' failure to timely notify its school district customers of the Data Breach, its failure to disclose the extent of the information compromised in the Data Breach, and its further failure to ensure parents and guardians and students of its school district customers received proper and timely notification of the Data Breach.

**PARTIES**

13.     Plaintiffs D.G. and V.G. are the minor children of Plaintiff Anurag Gupta. They are citizens and residents of the State of California and attend public school in ABC, including at the time of the incidents described herein. They entrusted PII to Aeries with the reasonable expectation and understanding that Aeries would protect and safeguard that information from compromise, disclosure, and misuse by unauthorized users, and would be timely notified of any data security incidents involving their PII should such occur.

14.     Plaintiff Anurag Gupta is a citizen and resident of the State of California. He entrusted PII to Aeries with the reasonable expectation and understanding that

Aeries would protect and safeguard that information from compromise, disclosure, and misuse by unauthorized users, and would be timely notified of any data security incidents involving his PII should such occur.

15.     Aeries is a California corporation with its principal place of business in Anaheim, California. Aeries touts that it offers "industry leading student data management system software."[9] Its primary offering, the Aeries SIS, is used by "over 600 public school districts and education agencies."[10] While most of these customers are located in California, Aeries also has customers elsewhere in the United States, including the state of Texas.[11] School district customers using Aeries SIS may elect to have Aeries host student data on Aeries' servers, i.e., Aeries Hosting ("Hosted School District Customers"). ABC is one of many of Aeries' Hosted School District Customers.

## **JURISDICTION AND VENUE**

16.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, there are more than 100 putative class members, and minimal diversity exists because putative class members are citizens of a different state than Aeries.

17.     This Court has personal jurisdiction over Aeries because it is authorized to and regularly conducts business in California and is headquartered in Anaheim, California.

18.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

---

[9] *Id.*

[10] *Id.*

[11] https://www.aeries.com/about/leadership-team (last visited May 26, 2020)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**FACTUAL ALLEGATIONS**

**Aeries and Its Privacy and Data Security Representations**

19.     Aeries has sold its "Software-as-a-Service" offering, the Aeries SIS, to over 600 public school districts and education agencies.[12] At least 300 of those are Hosted School District Customers.[13] Aeries' customers "use Aeries daily to manage student data on over 2.5 million students."[14]

20.     Aeries is compensated handsomely for the services it provides to its school district customers. For example, when the Mt. Diablo Unified School District considered purchasing the Aeries SIS offering, it anticipated paying Aeries $750,000 for the first five years of use, with $568,350 paid for the first year and costs after the first year estimated at approximately $45,000 per year.[15]

21.     Aeries is fully aware of the sensitive nature of students' PII stored on or processed through its systems. It identifies the following categories of "Student Data" that are managed in its systems: "Medical"; "Discipline"; "Siblings"; "Emergency Contacts"; "Fees/Fines"; "Counseling"; "Special Ed. / CASEMIS"; "Intervention Tracking (RTI)"; "Retention Tracking"; "Lockers"; "Photos / ID Cards"; "Custom Supplemental Data"; "Language Assessment"; "Free & Reduced Lunch"; "Physical Fitness"; and "Work Permits." The "Medical" category includes items of information such as "Medical History"; "Immunizations"; "Vaccination Requirements"; "Hearing"; "Vision"; "Physicals"; "Scoliosis"; "Dental"; and "Government Billing."

---

[12] https://www.aeries.com/about (last visited May 26, 2020)
[13] https://www.aeries.com/about/leadership-team (last visited May 26, 2020)
[14] https://www.aeries.com/products/capabilities-advantages (last visited May 26, 2020)
[15] *Agena Docket Form*, Mt. Diablo Unified School District (January 23, 2007), *available at* http://esbpublic.mdusd.k12.ca.us/attachments/f8636ff8-fdcb-4b6e-af7c-c1c5b8ba2ed5.pdf.

1  Other categories of data relevant to students' PII include "Grade Reporting /
2  Transcripts" and "Testing / Assessment."[16]

3         22.    An individual student's login credentials, and/or those of their parent or
4  guardian, may be used to access the PII stored or processed through Aeries' systems
5  and databases specific to that student/guardian. Other accounts, such as school or
6  district-level administrators, have access to all or portions of the PII of students and/or
7  guardians within a particular school or district.[17]

8         23.    When marketing Aeries Hosting, Aeries touts that it "hosts the District
9  Aries database in a secure off-site data center" and that Aeries Hosting offers
10 "[a]dvanced security encryption."[18]

11        24.    Beyond specific representations to its Hosted School District Customers,
12 Aeries makes representations to all of its customers and their students' and those
13 students' guardians regarding its data security practices. In Aeries' "Privacy Center" on
14 its website, Aeries states that "it is of paramount priority that Aeries Software designs
15 its products with privacy and security in mind at all time." The Privacy Center page
16 further represents that Aeries "use[s] the industry best practices to protect data."[19]

17        25.    Aeries' Privacy Policy, last updated April 24, 2019, makes further
18 representations regarding its data security practices. The Privacy Policy informs users
19 of Aeries' systems that the PII stored on its systems may include "the following
20 information about students and their guardians: Demographic information such as
21 name, mailing address, email address, and date of birth; Student education records
22 including, but not limited to student's grades, class enrollment, and behavioral records;

23 _____

24 [16] https://www.aeries.com/products/capabilities-advantages (last visited May 26,
   2020)
25 [17] https://support.aeries.com/support/solutions/articles/14000067946-aeries-
26 security-groups (last visited May 26, 2020)
   [18] https://www.aeries.com/products/aerieshosting (last visited May 26, 2020)
27 [19] https://www.aeries.com/privacy-center (last visited May 26, 2020)

Financial information, including but not limited to fees and fines, such as Chromebook insurance, or administrative fees, determined by LEAs; Health-related information including your student's immunizations and vision and hearing screening results; [and] System usernames and passwords."[20]

26.     Recognizing the sensitivity of the PII stored on its servers or otherwise processed or managed through Aeries SIS, Aeries' Privacy Policy further touts that "Aeries takes various security measures—physical, electronic, and procedural—to help defend against the unauthorized access and disclosure of your information. . . . [O]ur employees are required to comply with information security safeguards, and our systems are protected by technological measures to help prevent unauthorized individuals from gaining access. Aeries employees are trained to observe and comply with applicable federal and state privacy laws in the handling, processing, and storage of your information."[21]

27.     Aeries' Privacy Policy also sets forth expectations for Aeries' behavior in the event of a data breach, providing that "[u]pon discovery or notification of any unauthorized access disclosure, Aeries will take immediate measures to safeguard and prevent further dissemination of any personal information. When reasonably able to do so, Aeries will notify the impacted parties via contact information on record." Aeries represents that it will notify affected users of its system (i.e., students, parents, and guardians) "via email" and, potentially in addition to email, "in writing" depending on applicable legal requirements.[22]

### **Aeries' Knowledge That It Was and Is a Target of Cyber Threats**

28.     Aeries knew it was a prime target for hackers given the significant amount of sensitive student PII processed through Aeries SIS and stored in Aeries Hosting.

---

[20] https://www.aeries.com/privacy-policy (last visited May 26, 2020)
[21] *Id.*
[22] *Id.*

1   Indeed, on the Privacy Center webpage, when touting its data security practices, Aeries
2   acknowledges the "risks involved by schools utilizing its products and services for
3   student data collection and retention."[23]

4        29.    Aeries' knowledge is underscored by massive data breaches of other
5   companies offering educational software products and services. For example, in July
6   2019, the educational software company Pearson announced a data breach that
7   affected approximately "13,000 of the company's school and university accounts"; in
8   one state alone, Nevada, the Pearson data breach resulted in "[m]ore than 650,000
9   Nevada students ha[ving] personal information exposed."[24]

10        30.    The Pearson data breach was not an isolated incident. According to The
11   K-12 Cybersecurity Resource Center, in 2019 alone K-12 public school districts and
12   education agencies across the U.S. suffered a total of 348 publicly acknowledged data
13   security incidents – "a rate of nearly two incidents per school day over the course of
14   2019."[25] Approximately 60% of these data security incidents were "data breaches,
15   primarily involving the unauthorized disclosure of student data."[26]

16        31.    Despite being a holder of PII for tens, if not hundreds of thousands of
17   minor students, Aeries failed to prioritize data security by adopting reasonable data
18   security measures to prevent and detect unauthorized access to their highly sensitive
19   systems and databases. Aeries had the resources to prevent a breach, but neglected to

---

[23] https://www.aeries.com/privacy-center (last visited May 26, 2020)

[24] Amanda Pak-Harvey, *Nevada students' information exposed in data breach*, Las Vegas Review-Journal (Aug. 2, 2019), https://www.reviewjournal.com/local/education/nevada-students-information-exposed-in-data-breach-1817032/

[25] *K-12 Cybersecurity 2019 Year in Review: Part III: Cybersecurity Incidents: 2019,* The K-12 Cybersecurity Resource Center, https://k12cybersecure.com/year-in-review/2019-incidents/ (last visited May 26, 2020).

[26] *Id.*

adequately invest in data security, despite the growing number of well-publicized data breaches affecting educational institutions and their vendors.

32.   Despite these well-publicized breaches of educational institutions and educational vendors, Aeries failed to undertake adequate analyses and testing of its own systems, training of its own personnel, and other data security measures to ensure that similar vulnerabilities were avoided or remedied and that Plaintiffs' and class members' PII was protected.

**The Data Breach**

33.   In November 2019, Aeries became aware that unauthorized persons had attempted to access data through Aeries SIS and conducted an internal investigation. Aeries contends that no actual unauthorized access was uncovered during this investigation.

34.   Nonetheless, on December 20, 2019, Aeries updated the Aeries SIS offering to fix known security deficiencies following its internal investigation.

35.   In January 2020, Aeries learned that one of its school district clients whose students' (as well as the students' parents' and guardians') personal information was stored locally on the school district's database and processed through the Aeries SIS, had its local database subjected to unauthorized access. Aeries undertook another investigation in cooperation with the school district customer, local law enforcement, and federal authorities..

36.   Aeries contends that it was not until March 2020 that it discovered the unauthorized access of other databases in Aeries Hosting.

37.   Specifically, at least 166 databases in Aeries Hosting were subject to unauthorized access beginning on or about November 4, 2019. According to Aeries, "the unauthorized access has been terminated." However, Aeries has not disclosed when such access was terminated or what, if anything, was done to avoid future security incidents.

38.     Despite having knowledge of the Data Breach as early as November 2019, and certainly no later than January 2020, Aeries did not notify its school district customers of the Data Breach until April 27, 2020, when it issued a "Notice of Data Breach" to school district customers using Aeries Hosting.

39.     The April 27, 2020 "Notice of Data Breach" disclosed only that the following personal information was compromised: "Parent and Student Login information, physical residence addresses, emails, and 'password hashes.'" Aeries further acknowledged that "[w]ith access to a password hash, weak, common or simple passwords, can be deconstructed to gain unauthorized access to Parent and Student Accounts."

40.     The Notice of Data Breach did not disclose that additional treasure troves of PII were stored on behalf of its school district customers in Aeries Hosting, including, inter alia, minor students' immunization and other health records, social security numbers, class grades, standardized test information, previous addresses, as well as the information on students, parents, and guardians identified in paragraphs 21 and 25 of this Complaint.

41.     More than two weeks after Aeries sent its school district customers the Notice of Data Breach, ABC finally provided notice of the breach to parents of children attending ABC schools, including Mr. Gupta.  This notice did not disclose any of the categories of students', parents', and guardians' PII that were compromised in the Data Breach. Nor did a subsequent email sent on May 21, 2020 from ABC's Director of Information and Technology, which only provided instructions for how parents and guardians and students could reset their passwords used to access Aeries SIS. On May 28, 2020, ABC finally sent a more detailed notice with the subject line "An Announcement from Colin Sprigg," purporting to "more fully inform those impacted of what data was compromised." The email repeated the same line from Aeries that the only data compromised was "Parent name," "Student Name," "Student

ID (School)," "Physical Resident address," "Email Address," and "Password 'hashes'." In disclaiming that Social Security Numbers were compromised, ABC stated that "No social security numbers are maintained in the Aeries system; therefore, no risk of compromise to this data is possible." However, ABC of course cannot speak to whether other school districts stored Social Security Numbers in Aeries Hosting, and schools regularly collect such information from students. Moreover, ABC (and Aeries) failed to address the myriad other categories of sensitive personal information that are stored in Aeries Hosting such as students' medical records. ABC dubiously asserts "No evidence exists that your data was taken or misused." But Plaintiffs have every reason to believe this information was in fact compromised because ABC stated that "ABC has determined that the unauthorized party attempted to gather your information" and that the login credentials used to access said information were in fact exposed. This reasonable belief is underscored by the wholly inadequate investigation Aeries has undertaken to date, which failed to identify the Data Breach for several months after the first unauthorized access attempts were identified.

42. Unfortunately, even Aeries' subsequent investigations were inadequate. They failed to uncover that it was not only the student, parent, and guardian PII stored on Aeries Hosting that was compromised. In early May 2020, other school district customers discovered that students', parents', and guardians' PII processed through the Aeries SIS but stored on local servers (i.e., the school districts' servers) was also subject to unauthorized access.

43. As of the date of filing, Aeries still has not publicly disclosed that its non-Aeries Hosting customers using local servers had students', parents', and guardians' PII compromised in the Data Breach.

44. Moreover, and notwithstanding the representations in its Privacy Policy that it would notify affected users (i.e., students, parents, and guardians) of a data

breach via email, neither D.G. and V.G., nor Mr. Gupta, has received an email from Aeries regarding the breach.

45.     None of the communications from Aeries, nor the communications Mr. Gupta received from ABC, offered victims of the Data Breach any type of identity or fraud monitoring or identity theft protection services. Notably, other companies have provided automatic identity-theft protection services to victims of similar breaches, including in relation to the aforementioned Pearson data breach.[27]

46.     Aeries' response to the Data Breach caused confusion among the victims of the data breach, resulting in class members spending time, and continuing to spend a significant amount of time into the future, taking measures to protect themselves from identity theft, fraud, and other identity-related crimes.

47.     Aeries is responsible for allowing the Data Breach to occur because it failed to implement and maintain any reasonable safeguards and failed to comply with industry-standard data security practices, contrary to the representations made in Aeries' privacy statements and its explicit and implied agreements with its users.

48.     During the duration of the Data Breach, Aeries failed to detect the unauthorized third parties' access to its systems and databases, notice the massive amounts of data that were compromised, and failed to take any steps to investigate the red flags that should have warned Aeries that its systems were not secure. As a result of Aeries' failure to protect the sensitive PII it was entrusted with, Plaintiffs and class members are at a significant risk of identity theft, financial fraud, and other identity-related fraud into the indefinite future. Plaintiffs and class members have also lost the inherent value of their PII.

---

[27] *See, e.g.*, *Students and Schools Affected by Pearson Data Breach*, Identity Theft Resource Center, https://www.idtheftcenter.org/students-and-schools-affected-by-pearson-data-breach/ (last visited May 26, 2020).

49.     Plaintiffs and class members provided their PII to Aeries and its school district customers with the expectation and understanding that Aeries would adequately protect and store their data. If Plaintiffs and class members had known that Aeries data security was insufficient to protect their PII, they would have demanded that their school districts not store their PII on Aeries' databases or process it through Aeries' systems.

## Aeries Failed to Comply with Regulatory Guidance and Meet Consumers' Expectations

50.     Federal agencies have issued recommendations and guidelines to temper data breaches and the resulting harm to individuals and financial institutions. For example, the FTC has issued numerous guides for business highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[28]

51.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[29] Among other things, the guidelines note businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large

---

[28] Federal Trade Commission, *Start With Security* (June 2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited May 26, 2020).
[29] Federal Trade Commission, *Protecting Personal Information: A Guide for Business* (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[30]

52.     Additionally, the FTC recommends that companies limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[31]

53.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer information, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.[32]

54.     In this case, Aeries was fully aware of its obligation to use reasonable measures to protect the PII of its customers, acknowledging as much in its own privacy policies. Aeries also knew it was a target for hackers. But despite understanding the consequences of inadequate data security, Aeries failed to comply with industry-standard data security requirements.

55.     Aeries' failure to employ reasonable and appropriate measures to protect against unauthorized access to students', parents', and guardians' PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45 and various state consumer protection and data breach statutes.

---

[30] *Id.*
[31] FTC, *Start With Security, supra* note 27.
[32] Federal Trade Commission, *Privacy and Security Enforcement: Press Releases*, https://www.ftc.gov/news-events/media-resources/protecting-consumer-privacy/privacy-security-enforcement (last visited May 26, 2020).

**Effect of the Data Breach**

56.     Aeries' failure to keep Plaintiffs' and class members' PII secure has severe ramifications. Given the sensitive nature of the PII stolen in the Data Breach, cyber criminals have the ability to commit identity theft and other identity-related fraud against Plaintiffs and class members now and into the indefinite future.

57.     The information stolen from Aeries included usernames and passwords—PII that is highly valued among cyber thieves and criminals on the Dark Web. For example, Apple ID usernames and passwords were sold on average for $15.39 each on the Dark Web, making them the most valuable non-financial credentials for sale on that marketplace. Usernames and passwords for eBay ($12), Amazon (≤$10), and Walmart (≤$10) fetch similar amounts.[33] Consumers often reuse passwords. By unlawfully obtaining this information, cyber criminals can use these credentials to access other services beyond that which was hacked.

58.     Other information stored on Aeries' databases that were compromised in the Data Breach can fetch far more on the Dark Web. For example, detailed student health records were stored on the compromised databases. Stolen medical records "can fetch up to $350 on the dark web."[34]

59.     PII also has significant monetary value in part because criminals continue their efforts to obtain this data.[35] In other words, if any additional breach of sensitive

---

[33] Don Reisinger, *Here's How Much Your Stolen Apple ID Login Costs on the Dark Web*, Fortune (March 7, 2018), https://fortune.com/2018/03/07/apple-id-dark-web-cost/. *See also* https://www.npr.org/2018/02/22/588069886/take-a-peek-inside-the-market-for-stolen-usernames-and-passwords (last visited May 26, 2020).

[34] *How Cybercriminals Make Money: How much is your information worth to a cybercriminal via the Dark Web?*, Keeper Security, https://www.keepersecurity.com/how-much-is-my-information-worth-to-hacker-dark-web.html (last visited May 26, 2020).

[35] *Data Breaches Rise as Cybercriminals Continue to Outwit IT*, CIO Magazine (Sept. 28, 2014), available at http://www.cio.com/article/2686167/data-breach/data-breaches-rise-as-cybercriminals-continue-to-outwit-it.html.

data did not have incremental value to criminals, one would expect to see a reduction in criminal efforts to obtain such additional data over time. Instead, just the opposite has occurred. For example, the Identity Theft Resource Center reported 1,473 data breaches in 2019, which represents a 17 percent increase from the total number of breaches reported in 2018.[36]

60.    The value of PII is key to unlocking many parts of the financial sector for consumers. Whether someone can obtain a mortgage, credit card, business loan, tax return, or even apply for a job depends on the integrity of their PII. Similarly, the businesses that request (or require) consumers to share their PII as part of a commercial transaction do so with the expectation that its integrity has not been compromised.

61.    Annual monetary losses for victims of identity theft are in the billions of dollars. In 2017, fraudsters stole $16.8 billion from consumers in the United States, which includes $5.1 billion stolen through bank account take-overs.[37]

62.    The annual cost of identity theft is even higher. McAfee and the Center for Strategic and International Studies estimates that the likely annual cost to the global economy from cybercrime is $445 billion a year.[38]

63.    The foregoing problems are compounded where, as with Plaintiffs D.G. and V.G., the victims of the Data Breach are minors.

---

[36] *2019 End-of-Year Data Breach Report* (2019), Identity Theft Resource Center, *available at* https://www.idtheftcenter.org/wp-content/uploads/2020/01/01.28.2020_ITRC_2019-End-of-Year-Data-Breach-Report_FINAL_Highres-Appendix.pdf.

[37] Javelin, *2018 Identity fraud: Fraud Enters A New Era of Complexity*, available at https://www.javelinstrategy.com/coverage-area/2018-identity-fraud-fraud-enters-new-era-complexity (last visited May 26, 2020).

[38] Insurance Information Institute, *Facts + Statistics: Identity theft and cybercrime*, available at https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (last visited May 26, 2020).

64.     Over 1 million minor children were victims of fraud or identity theft in 2017, and two/thirds of those victims were under the age of seven.[39]

65.     Data thieves are also more likely to target minors' PII and to use that PII once it is stolen. In 2017, "[a]mong notified breach victims . . . 39 percent of minors became victims of fraud, versus 19 percent of adults."[40]

66.     Criminals make use of minors' PII to open accounts or new lines of credit that may not be noticed by the minor; and to create "synthetic identities" using a combination of real and fictitious information which again, the minor may not realize was stolen.[41] Because minors do not regularly monitor their bank accounts (if they have them) or their credit reports, data thieves are more likely to make unrestricted use of this information for longer periods of time than they would for adult victims.[42]

67.     Minors also generally are less likely to receive notice from the company responsible for the data breach or to even realize that a thief has made fraudulent use of their information in other ways – such as creating a new identity for the purposes of accessing government benefits, healthcare, or employment.[43] Minors often "won't find out that their identity has been stolen until they apply for their first credit card or college loan."[44]

---

[39] Kelli B. Grant, *Identity Theft isn't just an adult problem. Kids are victims, too*, CNBC (April 24, 2018), https://www.cnbc.com/2018/04/24/child-identity-theft-is-a-growing-and-expensive-problem.html.

[40] *Id.*

[41] *Id.*

[42] Ron Lieber, *Identity Theft Poses Extra Troubles for Children*, N.Y. Times (April 16, 2015), https://www.nytimes.com/2015/04/18/your-money/a-childs-vulnerability-to-identity-theft.html.

[43] *Id.*

[44] Larry Magid, *Teens Vulnerable to Identity Theft, Financial Crimes, and Impersonation*, Forbes (Nov. 7, 2013), https://www.forbes.com/sites/larrymagid/2013/11/07/teens-concerned-about-identity-theft/#6ab243211c49.

68.     Children are also particularly susceptible to physical harm in the event of a data breach. Data thieves can use their PII "to link a child to his or her parents and pinpoint the child's physical address."[45] This risk is particularly disturbing in light of the student PII stored or processed by Aeries, which in some instances includes teacher and home room information – allowing criminals to target children with even greater precision.

69.     Reimbursing a consumer for a financial loss due to fraud does not make that individual whole again. On the contrary, in addition to the irreparable damage that may result from the theft of PII, identity theft victims must spend numerous hours and their own money repairing the impact to their credit. After conducting a study, the Department of Justice's Bureau of Justice Statistics found that identity theft victims "reported spending an average of about 7 hours clearing up the issues" and resolving the consequences of fraud in 2014.[46]

70.     Even before the occurrence of identity theft, victims may spend valuable time and suffer from the emotional toll of a data breach. Here, Plaintiff Gupta has already spent approximately two hours investigating the Data Breach after receiving notice from ABC, including independent online research regarding the scope of the breach and communicating with ABC regarding the breach. He will continue to expend time monitoring his family's credit and other identity-related information (both for himself and on behalf of Plaintiffs D.G. and V.G.), and is exploring options for identity theft protection services because Aeries did not offer such services as a result of the Data Breach.

---

[45] Daniel Victor, *Security Breach at Toy Maker Vtech Includes Data on Children*, N.Y. Times (Nov. 30, 2015), https://www.nytimes.com/2015/12/01/business/security-breach-at-toy-maker-vtech-includes-data-on-children.html.

[46] U.S. Department of Justice, *Victims of Identity Theft, 2014* (Revised November 13, 2017), available at http://www.bjs.gov/content/pub/pdf/vit14.pdf (last visited May 26, 2020).

71.     The impact of identity theft can have ripple effects, which can adversely affect the future financial trajectories of victims' lives. For example, the Identity Theft Resource Center reports that respondents to their surveys in 2013-2016 described that the identity theft they experienced affected their ability to get credit cards and obtain loans, such as student loans or mortgages.[47] For some victims, this could mean the difference between going to college or not, becoming a homeowner or not, or having to take out a high interest payday loan versus a lower-interest loan.

72.     It is no wonder, then, that identity theft exacts a severe emotional toll on its victims. The 2017 Identity Theft Resource Center survey[48] evidences the emotional suffering experienced by victims of identity theft:

- 75% of respondents reported feeling severely distressed;
- 67% reported anxiety;
- 66% reported feelings of fear related to personal financial safety;
- 37% reported fearing for the financial safety of family members;
- 24% reported fear for their physical safety;
- 15.2% reported a relationship ended or was severely and negatively impacted by the identity theft; and
- 7% reported feeling suicidal.

73.     Identity theft can also exact a physical toll on its victims. The same survey reported that respondents experienced physical symptoms stemming from their experience with identity theft:

- 48.3% of respondents reported sleep disturbances;
- 37.1% reported an inability to concentrate / lack of focus;

---

[47] Identity Theft Resource Center, *Identity Theft: The Aftermath 2017*, available at https://www.idtheftcenter.org/images/page-docs/Aftermath_2017.pdf (last visited May 26, 2020).

[48] *Id.*

- 28.7% reported they were unable to go to work because of physical symptoms;

- 23.1% reported new physical illnesses (aches and pains, heart palpitations, sweating, stomach issues); and

- 12.6% reported a start or relapse into unhealthy or addictive behaviors.[49]

74.     There may also be a significant time lag between when PII is stolen and when it is actually misused. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[50]

75.     The risk of identity theft is particularly acute where detailed personal information is stolen, such as the PII that was compromised in the Data Breach.

76.     As the result of the Data Breach, Plaintiffs and class members have suffered or will suffer economic loss and other actual harm for which they are entitled to damages, including, but not limited to, the following:

a.  identity theft and fraud resulting from theft of their PII;

b.  costs associated with the detection and prevention of identity theft and unauthorized use of their online accounts, including financial accounts;

c.  losing the inherent value of their PII;

---

[49] *Id.*

[50] U.S. Government Accountability Office, *Report to Congressional Requesters* (June 2007), http://www.gao.gov/new.items/d07737.pdf.

d.  losing the value of Aeries' explicit and implicit promises of adequate data security;

e.  costs associated with purchasing credit monitoring and identity theft protection services;

f.  unauthorized access to and misuse of their online accounts;

g.  unauthorized charges and loss of use of and access to their financial account funds and costs associated with inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit;

h.  lowered credit scores resulting from credit inquiries following fraudulent activities;

i.  costs associated with time spent and the loss of productivity or enjoyment of one's life from taking time to address and attempt to mitigate and address the actual and future consequences of the Data Breach, including discovering fraudulent charges, cancelling and reissuing cards, addressing other varied instances of identity theft – such as credit cards, bank accounts, loans, government benefits, and other services procured using the stolen PII, purchasing credit monitoring and identity theft protection services, imposing withdrawal and purchase limits on compromised accounts, updating login information for online accounts sharing the same login credentials as were compromised in the Data Breach, and the stress, nuisance, and annoyance of dealing with the repercussions of the Data Breach;

j.  the continued imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being in the possession of one or more unauthorized third parties; and

k.  continued risk of exposure to hackers and thieves of their PII, which remains in Aeries' possession and is subject to further breaches so long as Aeries fails to undertake appropriate and adequate measures to protect Plaintiffs and class members.

77.  Additionally, Plaintiffs and class members place significant value in data security. According to a recent survey conducted by cyber-security company FireEye, approximately 50% of consumers consider data security to be a main or important consideration when making purchasing decisions and nearly the same percentage would be willing to pay more in order to work with a provider that has better data security. Likewise, 70% of consumers would provide less personal information to organizations that suffered a data breach.[51]

78.  The cost of hosting or processing students', parents', and guardians PII on or through Aeries' databases and systems includes things such as the actual cost of the servers and employee hours needed to process said transactions. One component of the cost of using these services is the explicit and implicit promises Aeries made to protect students', parents', and guardians' PII. Because of the value students and their parents and guardians place on data privacy and security, companies with robust data security practices can command higher prices than those who do not. Indeed, if students, parents, guardians, and school districts did not value their data security and privacy, companies like Aeries would have no reason to tout their data security efforts to their actual and potential customers.

79.  Had the victims of the Data Breach including Plaintiffs known the truth about Aeries' data security practices—that Aeries would not adequately protect and

---

[51] FireEye, *Beyond the Bottom Line: The Real Cost of Data Breaches* (May 11, 2016), https://www.fireeye.com/blog/executive-perspective/2016/05/beyond_the_bottomli.html.

store their data—they would have demanded that their school districts not store their PII on Aeries' databases or process it through Aeries' systems.

80.     Plaintiffs and class members are at an imminent risk of fraud, criminal misuse of their PII, and identity theft for years to come as result of the data breach and Aeries' deceptive and unconscionable conduct.

**CLASS ACTION ALLEGATIONS**

81.     Pursuant to Federal Rule of Civil Procedure 23(b)(1), (b)(2) and (b)(3), Plaintiffs seek certification of the following Nationwide Class and Nationwide Minor Subclass:

82.     **Nationwide Class:** All students, parents, and guardians in the United States whose PII was compromised in the Data Breach.

83.     **Nationwide Minor Subclass**: All minor students in the United States whose PII was compromised in the Data Breach, as well as all adult individuals in the United States who provided PII to Aeries while they were minor students and had their PII compromised in the Data Breach.

84.     The Nationwide Class and the Minor Subclass assert claims against Aeries for negligence (Count 1), , negligence *per se* (Count 2), declaratory judgment (Count 3), breach of confidence (Count 4), breach of contract (Count 5), intrusion upon seclusion (Count 6), and violation of California's Unfair Competition Law (Count 7).

85.     Pursuant to Federal Rules of Civil Procedure 23(b)(1), (b)(2) and (b)(3), Plaintiffs seek certification of California state claims in the alternative to the nationwide claims, as well as certification of claims for violations of the California Customer Records Act (Count 8) and the California Consumer Privacy Act (Count 9), on behalf of two subclasses of California residents, defined as follows:

86.     **California Subclass**: All students, parents, and guardians in California whose PII was compromised in the Data Breach.

87.     **California Minor Subclass**: All minor students in California whose PII was compromised in the Data Breach, as well as all adult individuals in California who provided PII to Aeries while they were minor students and had their PII compromised in the Data Breach.

88.     The Nationwide Class, Nationwide Minor Subclass, California Subclass, and California Minor Subclass are collectively referred to herein as the "Class."

89.     Excluded from the Class are any school districts or educational agencies that are Aeries customers, Aeries itself, any entity in which Aeries has a controlling interest, and Aeries' officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, members of their judicial staff, and any judge sitting in the presiding court system who may hear an appeal of any judgment entered.

90.     **Risk of Inconsistent or Varying Adjudications. Fed. R. Civ. P. 23(b)(1).** As the proposed class members include tens, if not hundreds, of thousands of students and their parents or guardians, there is significant risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Aeries. For example, injunctive relief may be entered in multiple cases, but the ordered relief may vary, causing Aeries to have to choose between differing means of upgrading its data security infrastructure and choosing the court order with which it will comply. Class action status is also warranted because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

91.     **Numerosity. Fed. R. Civ. P. 23(a)(1).** Consistent with Rule 23(a)(1), the members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical. While the exact number of class members is unknown to Plaintiffs at this time, Aeries has admitted that 166 databases in Aeries Hosting were compromised in the Data Breach, suggesting that thousands of students and their guardians across at least 166 school districts were affected by the Data Breach, in addition to an unknown number of school districts whose data was stored on local servers that were affected by the Data Breach.

92.     **Commonality and Predominance. Fed. R. Civ. P. 23(a)(2) and (b)(3).** This action involves common questions of law and fact that predominate over any questions affecting individual class members. The common questions include, but are not limited to:

        a.      Whether Aeries knew or should have known that its computer and data storage systems were vulnerable to attack;

        b.      Whether Aeries omitted or misrepresented material facts regarding the security of its computer and data storage systems and their inability to protect vast amounts of sensitive data, including Plaintiffs' and class members' PII;

        c.      Whether Aeries failed to take adequate and reasonable measures to ensure such computer and data systems were protected;

        d.      Whether Aeries failed to take available steps to prevent and stop the Data Breach from happening;

        e.      Whether Aeries failed to disclose the material facts that it did not have adequate computer systems and security practices to safeguard PII;

        f.      Whether Aeries owed duties to Plaintiffs and class members to protect their PII;

        g.      Whether Aeries owed a duty to provide timely and accurate notice of the Data Breach to Plaintiffs and class members;

h.      Whether Aeries breached its duties to protect the PII of Plaintiffs and class members by failing to provide adequate data security;

i.      Whether Aeries breached its duty to provide timely and accurate notice of the Data Breach to Plaintiffs and class members;

j.      Whether Aeries' failure to secure Plaintiffs' and class members' PII in the manner alleged violated federal, state and local laws, or industry standards;

k.      Whether Aeries was negligent, reckless or intentionally indifferent in its representations to Plaintiffs and class members concerning its security protocols;

l.      Whether Aeries' conduct and practices described herein amount to acts of intrusion upon seclusion;

m.      Whether Aeries was negligent in making misrepresentations to Plaintiffs and class members;

n.      Whether Aeries was negligent in establishing, implementing, and following security protocols;

o.      Whether the Plaintiffs' and class members' PII was compromised and exposed as a result of the Data Breach and the extent of that compromise and exposure;

p.      Whether Aeries' conduct, including its failure to act, resulted in or was the proximate cause of the Data Breach, resulting in the unauthorized access to and/or theft of Plaintiffs' and class members' PII;

q.      Whether Aeries has a contractual obligation to use reasonable security measures and whether it complied with such contractual obligation;

r.      Whether Plaintiffs and class members were the intended third-party beneficiaries of any contractual obligations owed by Aeries;

s.      Whether Aeries' conduct amounted to violations of California consumer protection and data breach statutes;

t.      Whether, as a result of Aeries' conduct, Plaintiffs and class members face a significant threat of harm and/or have already suffered harm, and, if so, the appropriate measure of damages to which they are entitled;

u.      Whether, as a result of Aeries' conduct, Plaintiffs and class members are entitled to injunctive, equitable, declaratory and/or other relief, and, if so, the nature of such relief;

v.      Whether Plaintiffs and class members are entitled to compensatory damages;

w.      Whether the Plaintiffs and class members are entitled to punitive damages; and

x.      Whether the Plaintiffs and class members are entitled to statutory damages.

93.      **Typicality. Fed. R. Civ. P. 23(a)(3).**  Plaintiffs' claims are typical of other class members' claims because Plaintiffs and class members were subjected to the same allegedly unlawful conduct and damaged in the same way.

94.      **Adequacy. Fed. R. Civ. P. 23(a)(4).** Consistent with Rule 23(a)(4), Plaintiffs are adequate representatives of the Class. All Plaintiffs are members of the Nationwide Class and the California Subclass, and Plaintiffs D.G. and V.G. are also members of the Nationwide Minor Subclass and the California Minor Subclass. Plaintiffs have no conflicts of interest with the Class. Plaintiffs' counsel are competent and experienced in litigating class actions, including extensive experience in data breach and privacy litigation and consumer protection claims. Plaintiffs intends to vigorously prosecute this case and will fairly and adequately protect the interests of the Class.

95.      **Superiority. Fed. R. Civ. P. 23(b)(3).** Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The purpose of the class action

mechanism is to permit litigation against wrongdoers even when damages to individual plaintiffs and class members may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiffs and the class members are relatively small compared to the burden and expense required to individually litigate their claims against Aeries, and thus, individual litigation to redress Aeries' wrongful conduct would be impracticable. Individual litigation by each class member would also strain the court system. Moreover, individual litigation creates the potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

96.    **Injunctive and Declaratory Relief.** Class certification is also appropriate under Rule 23(b)(2). Aeries, through its uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole. Moreover, Aeries continues to maintain its inadequate security practices, retains possession of Plaintiffs' and the class members' PII, and has not been forced to change its practices or to relinquish PII by nature of other civil suits or government enforcement actions, thus making injunctive and declaratory relief a live issue and appropriate to the Class as a whole.

\*       \*       \*

## Count 1

## NEGLIGENCE

Against Aeries on Behalf of Plaintiffs, the Nationwide Class, and the Nationwide Minor Subclass or Alternatively, on behalf of Plaintiffs, the California Subclass, and the California Minor Subclass

97.    Plaintiffs repeat the allegations in paragraphs 1 – 96 in this Complaint, as if fully alleged herein.

98.     Aeries, in offering educational software, knew that Plaintiffs and class members' sensitive PII would be stored or processed by Aeries systems and databases, including in Aeries Hosting. Aeries in fact stored (i.e., for school districts using Aeries Hosting) and/or processed (i.e., for school districts using Aeries Hosting and for school districts using local servers) this PII through and on its computer systems and/or databases. Plaintiffs D.G. and V.G. and the Nationwide Minor and California Minor Subclass members are a particularly vulnerable and defenseless group of Aeries users and are more significantly damaged and imminently threatened to be damaged as a result of Aeries' negligence described herein because, without limitation, they are especially: (1) attractive targets to cyber criminals; (2) vulnerable to fraudulent activity and identity theft with respect to their stolen PII; (3) defenseless to protect themselves from such theft, fraud, or identity theft; and (4) subject to prolonged surreptitious fraud and identity theft following the theft of their data, all of which is well documented in academic and government-issued materials, by experts in the field, and by the media.

99.     By collecting, storing, and using this data, Aeries had a duty of care to Plaintiffs and class members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting this PII in Aeries' possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. More specifically, this duty included, among other things: (a) designing, maintaining, and testing Aeries' security systems and data storage architecture to ensure that Plaintiffs' and class members' PII was adequately secured and protected; (b) implementing processes that would detect an unauthorized breach of Aeries' security systems and data storage architecture in a timely manner; (c) timely acting on all warnings and alerts, including public information, regarding Aeries' security vulnerabilities and potential compromise of the PII of Plaintiffs and class members; (d) maintaining data security measures consistent with industry standards and

applicable state and federal law; and (e) timely and adequately informing Plaintiffs and class members if and when a data breach occurred notwithstanding undertaking (a) through (d) above.

100.   Aeries had common law duties to prevent foreseeable harm to Plaintiffs and class members. These duties existed because Plaintiffs and class members were the foreseeable and probable victims of any inadequate security practices. In fact, not only was it foreseeable that Plaintiffs and class members would be harmed by the failure to protect their PII because hackers routinely attempt to steal such information and use it for nefarious purposes, Aeries knew that it was more likely than not Plaintiffs and other class members would be harmed by such theft.

101.   Aeries had a duty to monitor, supervise, control, or otherwise provide oversight to safeguard the PII that was collected, stored, and processed by Aeries computer systems.

102.   Aeries' duties to use reasonable security measures also arose as a result of the special relationship that existed between Aeries, on the one hand, and Plaintiffs and class members, on the other hand. The special relationship arose because Plaintiffs and class members entrusted Aeries with their PII by virtue of their participation in all aspects of school life. Aeries alone could have ensured that its security systems and data storage architecture were sufficient to prevent or minimize the Data Breach.

103.   Aeries' duties to use reasonable data security measures also arose under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect PII. Various FTC publications and data security breach orders further form the basis of Aeries' duties. In addition, individual states have enacted statutes based upon the FTC Act that also created a duty.

104.   Aeries owed heightened duties to Plaintiffs D.G. and V.G. and the Nationwide Minor and California Minor Subclass members, and Aeries was aware of the heightened vulnerability and damage that would be suffered by Plaintiffs D.G. and V.G. and the Nationwide Minor and California Minor Subclass members in the event of a data breach.

105.   Aeries knew or should have known that its computer systems and data storage architecture were vulnerable to unauthorized access and targeting by hackers for the purpose of stealing and misusing confidential PII.

106.   Aeries knew or should have known that a breach of its systems and data storage architecture would inflict millions of dollars of damages upon Plaintiffs and the Class, and Aeries was therefore charged with a duty to adequately protect this critically sensitive information.

107.   Aeries breached the duties it owed to Plaintiffs and class members described above, including the heightened duties owed to Plaintiffs D.G. and V.G. and the Nationwide Minor and California Minor Subclass members, and thus was negligent. Aeries breached these duties by, among other things, failing to: (a) exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect the PII of Plaintiffs and class members; (b) detect the breach while it was ongoing; and (c) maintain security systems consistent with industry standards.

108.   Aeries also failed to exercise reasonable care when it falsely conveyed information to its Hosted School District Customers in its April 27, 2020 "Notice of Data Breach," which misrepresentation failed to sufficiently convey the scope of PII potentially compromised the Data Breach; provided the thieves and/or subsequent unauthorized recipients of the stolen information with additional time and cover to further purloin and re-sell the stolen PII belonging to Plaintiffs and the Class; provided the thieves and the purchasers and/or other subsequent unauthorized recipients with an opportunity to directly defraud Plaintiffs and the Class; failed to adequately apprise

its school district customers of the need to promptly notify Plaintiffs and the Class of the fact that their PII was compromised and in imminent jeopardy of falling further into the hands of cyber criminals; and failed to directly notify Plaintiffs and the Class of the same.

109.   But for Aeries' wrongful and negligent breach of its duties owed to Plaintiffs and class members, their PII would not have been compromised.

110.   As a direct and proximate result of Aeries' negligence, Plaintiffs and class members have been injured and are entitled to damages in an amount to be proven at trial. Such injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen PII; illegal sale of the compromised PII on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach investigating the nature of the Data Breach not fully disclosed by Aeries, reviewing bank statements, payment card statements, and credit reports; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the PII; lost benefit of their bargains and overcharges for services; and other economic and non-economic harm.

## Count 2

## NEGLIGENCE *PER SE*

Against Aeries on Behalf of Plaintiffs, the Nationwide Class, and the Nationwide Minor Subclass or Alternatively, on behalf of Plaintiffs, the California Subclass, and the California Minor Subclass

111.   Plaintiffs repeats the allegations in paragraphs 1 – 96 in this Complaint, as if fully alleged herein.

112.    Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by Aeries of failing to use reasonable measures to protect PII. Various FTC publications and orders also form the basis of Aeries' duty.

113.    Aeries violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect PII and not complying with industry standards. Aeries' conduct was particularly unreasonable given the nature and amount of PII obtained and stored and the foreseeable consequences of a data breach on Aeries' systems.

114.    Aeries' violation of Section 5 of the FTC Act (and similar state statutes) constitutes negligence *per se*.

115.    Plaintiffs and class members are consumers within the class of persons Section 5 of the FTC Act (and similar state statutes) were intended to protect.

116.    Moreover, the harm that has occurred is the type of harm the FTC Act (and similar state statutes) was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of defendants' failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiffs and class members.

117.    As a direct and proximate result of Aeries' negligence, Plaintiffs and class members have been injured and are entitled to damages in an amount to be proven at trial. Such injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen PII; illegal sale of the compromised PII on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach

investigating the nature of the Data Breach not fully disclosed by Aeries, reviewing bank statements, payment card statements, and credit reports; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the PII; lost benefit of their bargains and overcharges for services; and other economic and non-economic harm.

### Count 3

### DECLARATORY JUDGMENT

Against Aeries on Behalf of Plaintiffs, the Nationwide Class, and the Nationwide Minor Subclass or Alternatively, on behalf of Plaintiffs, the California Subclass, and the California Minor Subclass

118. Plaintiffs repeat the allegations in paragraphs 1 – 96 in this Complaint, as if fully alleged herein.

119. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, the Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

120. An actual controversy has arisen in the wake of the Data Breach regarding Aeries' present and prospective common law and other duties to reasonably safeguard its users' PII, and whether Aeries is currently maintaining data security measures adequate to protect Plaintiffs and class members from further data breaches that compromise their PII. Plaintiffs and class members remain at imminent risk that further compromises of their PII will occur in the future.  This is true even if they are not actively using Aeries' products or services.

121. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.  Aeries continues to owe a legal duty to secure users' PII and to timely notify consumers of a data breach under the common law, Section 5 of the FTC Act, and various state statutes;

b.  Aeries continues to breach this legal duty by failing to employ reasonable measures to secure Plaintiffs and class members' PII.

122.   The Court also should issue corresponding prospective injunctive relief pursuant to 28 U.S.C. §2202, requiring Aeries to employ adequate security practices consistent with law and industry standards to protect its users' PII.

123.   If an injunction is not issued, Plaintiffs and class members will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach of Aeries. The risk of another such breach is real, immediate, and substantial. If another breach occurs, Plaintiffs and class members will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

124.   The hardship to Plaintiffs and class members if an injunction does not issue exceeds the hardship to Aeries if an injunction is issued. Among other things, if another data breach occurs at Aeries, Plaintiffs and class members will likely be subjected to fraud, identify theft, and other harms described herein. On the other hand, the cost to Aeries of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Aeries has a pre-existing legal obligation to employ such measures.

125.   Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at Aeries, thus eliminating additional injuries that would result to Plaintiffs, class members, and the hundreds of thousands of students and guardians whose PII would be further compromised.

**Count 4**

**BREACH OF CONFIDENCE**

Against Aeries on Behalf of Plaintiffs, the Nationwide Class, and the Nationwide Minor Subclass or Alternatively, on behalf of Plaintiffs, the California Subclass, and the California Minor Subclass

126.   Plaintiffs repeat the allegations in paragraphs 1 – 96 in this Complaint, as if fully alleged herein.

127.   Plaintiffs D.G. and V.G. and the Nationwide Minor and California Minor Subclass members are a particularly vulnerable and defenseless group of Aeries users and are more significantly damaged and imminently threatened to be damaged as a result of Aeries' breach of confidence described herein because, without limitation, they are especially: (1) attractive targets to cyber criminals; (2) vulnerable to fraudulent activity and identity theft with respect to their stolen PII; (3) defenseless to protect themselves from such theft, fraud, or identity theft; and (4) subject to prolonged surreptitious fraud and identity theft following the theft of their data, all of which is well documented in academic and government-issued materials, by experts in the field, and by the media.

128.   At all times during Plaintiffs' and class members' interactions with Aeries, Aeries was fully aware of the confidential and sensitive nature of Plaintiffs' and class members' PII.

129.   As alleged herein and above, Aeries' relationship with Plaintiffs and class members was governed by terms and expectations that Plaintiffs' and class members' PII would be collected, stored, and protected in confidence, and would not be disclosed to the public or any unauthorized third parties.

130.   Plaintiffs and class members provided their respective PII to Aeries with the explicit and implicit understandings that Aeries would protect and not permit their PII to be disseminated to the public or any unauthorized parties.

131.   Plaintiffs and class members also provided their respective PII to Aeries with the explicit and implicit understandings that Aeries would take precautions to protect the PII from unauthorized disclosure, such as following basic principles of encryption and information security practices.

132.   Aeries voluntarily received in confidence Plaintiffs' and class members' PII with the understanding that PII would not be disclosed or disseminated to the public or any unauthorized third parties.

133.   Due to Aeries' failure to prevent, detect, and avoid the Data Breach from occurring by following best information security practices to secure Plaintiffs' and class members' PII, Plaintiffs' and class members' PII was disclosed and misappropriated to the public and unauthorized third parties beyond Plaintiffs' and class members' confidence, and without their express permission.

134.   But for Aeries' disclosure of Plaintiffs' and class members' PII in violation of the parties' understanding of confidence, their PII would not have been compromised, stolen, viewed, accessed, and/or used by unauthorized third parties. The Data Breach was the direct and legal cause of the theft of Plaintiffs' and class members' PII, as well as the resulting damages.

135.   The injury and harm Plaintiffs and class members suffered was the reasonably foreseeable result of Aeries' unauthorized disclosure of Plaintiffs' and class members' PII. Aeries knew its computer systems and technologies for accepting, securing, and storing Plaintiffs' and class members' PII had serious security vulnerabilities because Aeries failed to observe even basic information security practices or correct known security vulnerabilities.

136.   As a direct and proximate result of Aeries' breaches of confidence, Plaintiffs and class members have been injured and were damaged as discussed herein and as will be proven at trial.

137.   Moreover, Plaintiffs D.G. and V.G. and the Nationwide Minor and California Minor Subclass members are a particularly vulnerable and defenseless group of Aeries' users and are more significantly damaged and imminently threatened to be damaged as a result of Aeries' breach of confidence described herein.

138.   As a direct and proximate result of Aeries' breach of confidence, Plaintiffs and class members have been injured and are entitled to damages in an amount to be proven at trial. Such injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen PII; illegal sale of the compromised PII on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach investigating the nature of the Data Breach not fully disclosed by Aeries, reviewing bank statements, payment card statements, and credit reports; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the PII; lost benefit of their bargains and overcharges for services; and other economic and non-economic harm.

### Count 5

### BREACH OF CONTRACT

Against Aeries on Behalf of Plaintiffs, the Nationwide Class, and the Nationwide Minor Subclass or Alternatively, on behalf of Plaintiffs, the California Subclass, and the California Minor Subclass

139.   Plaintiffs repeat the allegations in paragraphs 1 – 96 in this Complaint, as if fully alleged herein.

140.   Aeries' Privacy Policy (the "Privacy Policy") is an agreement between Aeries and its school district customers. Plaintiffs and class members are the clear intended third-party beneficiaries of the Privacy Policy.

141.   The Privacy Policy states that it applies to persons "using Aeries products," and it details how Aeries will both protect and use the PII provided by users of Aeries' products and services, including PII stored on or processed through Aeries' databases and systems that was provided by its school district clients (and their component educational institutions).

142.   The Privacy Policy provides detailed information about what types of PII will be shared and with what entities. It further promises that Aeries "takes various security measures—physical, electronic, and procedural—to help defend against the unauthorized access and disclosure of your information," that its "employees are required to comply with information security safeguards," and that its "systems are protected by technological measures to help prevent unauthorized individuals from gaining access."

143.   Aeries' school district clients on the one hand and Aeries on the other formed a contract pursuant to the Privacy Policy when those school district clients used Aeries products and services for the school districts' students, staff, and students' guardians. Plaintiff and class members became the intended third-party beneficiaries of a direct and substantial benefit under said Privacy Policy contract when they provided PII to Aeries subject to the Privacy Policy. The clear or manifest intent of Aeries and its school district clients to benefit Plaintiffs and class members is evidenced by references in the Privacy Policy to its applicability to Plaintiff and class members' PII.

144.   Plaintiffs and class members are entitled to enforce the Privacy Policy contract as third-party beneficiaries.

145.    Aeries breached the Privacy Policy contract, to the detriment of Plaintiffs and class members, by failing to protect their PII. Specifically, Aeries (1) failed to use reasonable measures to protect that information; and (2) disclosed that information to unauthorized third parties, in violation of the agreement.

146.    As a direct result of Aeries' breach of contract, Plaintiffs and the Class have suffered injury, have been damaged as described herein and as will be proven at trial, and are entitled to damages in an amount to be proven at trial.

**<u>Count 6</u>**

**<u>INTRUSION UPON SECLUSION</u>**

<u>Against Aeries on Behalf of Plaintiffs and all members of the Nationwide Class and the Nationwide Minor Subclass</u>

<u>or Alternatively, on behalf of Plaintiffs, the California Subclass, and the California Minor Subclass</u>

147.    Plaintiffs repeat the allegations in paragraphs 1 – 96 in this Complaint, as if fully alleged herein.

148.    Plaintiffs D.G. and V.G. and the Nationwide Minor and California Minor Subclass members are a particularly vulnerable and defenseless group of Aeries users and are more significantly damaged and imminently threatened to be damaged as a result of Aeries' intrusion upon seclusion described herein because, without limitation, they are especially: (1) attractive targets to cyber criminals; (2) vulnerable to fraudulent activity and identity theft with respect to their stolen PII; (3) defenseless to protect themselves from such theft, fraud, or identity theft; and (4) subject to prolonged surreptitious fraud and identity theft following the theft of their data, all of which is well documented in academic and government-issued materials, by experts in the field, and by the media.

149.    Plaintiffs and class members had a reasonable expectation of privacy in the PII that Aeries mishandled.

150.    By failing to keep Plaintiffs' and class members' private information safe, and by misusing and/or disclosing said private information to unauthorized parties for unauthorized use, Aeries invaded Plaintiffs' and class members' privacy by:

      a.    Intruding into Plaintiffs' and class members' private affairs in a manner that would be highly offensive to a reasonable person; and

      b.    Publicizing private facts about Plaintiffs and class members, which is highly offensive to a reasonable person.

151.    Aeries knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiffs' position would consider Aeries' actions highly offensive.

152.    Aeries invaded Plaintiffs' and class members' right to privacy and intruded into Plaintiffs' and class members' private affairs by misusing and/or disclosing their private information without their informed, voluntary, affirmative, and clear consent.

153.    As a proximate result of such misuse and disclosures, Plaintiffs' and class members' reasonable expectation of privacy in their private information was unduly frustrated and thwarted. Aeries' conduct amounted to a serious invasion of Plaintiffs' and class members' protected privacy interests.

154.    In failing to protect Plaintiffs' private information, and in misusing and/or disclosing their private information, Aeries has acted with malice and oppression and in conscious disregard of Plaintiffs' and class members' rights to have such information kept confidential and private, in failing to provide adequate notice, and in placing its own economic, corporate, and legal interests above the privacy interests of its hundreds of thousands of users. Plaintiffs and class members, therefore, seek an award of damages, including punitive damages, on behalf of Plaintiffs and the Class.

155.    As child victims, Plaintiffs and the Nationwide Minor and California Minor Subclass members have suffered greater harm from Aeries' privacy intrusion

1  than adult victims and are thus entitled to increased damages, including punitive

2  damages.

### Count 7

### CALIFORNIA'S UNFAIR COMPETITION LAW

*Cal. Bus. & Prof. Code §§ 17200, et seq.*

Against Aeries on Behalf of Plaintiffs, the Nationwide Class, and the Nationwide

Minor Subclass or Alternatively, on behalf of Plaintiffs, the California Subclass, and

the California Minor Subclass

9    156.   Plaintiffs repeat the allegations in paragraphs 1 – 96 in this Complaint, as

10  if fully alleged herein.

11    157.   Aeries is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

12    158.   Aeries violated Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") by

13  engaging in unlawful, unfair, and deceptive business acts and practices.

14    159.   Aeries' unfair acts and practices include:

15      a.   Aeries failed to implement and maintain reasonable security measures to

16           protect Plaintiffs' and class members' PII from unauthorized disclosure,

17           release, data breaches, and theft, which was a direct and proximate cause

18           of the Data Breach. Aeries failed to identify foreseeable security risks,

19           remediate identified security risks, and adequately improve security

20           following previous cybersecurity incidents in the education sector. This

21           conduct, with little if any utility, is unfair when weighed against the harm

22           to Plaintiffs and class members whose PII has been compromised.

23      b.   Aeries' failure to implement and maintain reasonable security measures

24           also was contrary to legislatively declared public policy that seeks to

25           protect consumers' data and ensure that entities that are trusted with it

26           use appropriate security measures. These policies are reflected in laws,

27           including the FTC Act, 15 U.S.C. § 45, California's Consumer Records

Act, Cal. Civ. Code §§ 1798.81.5 *et seq.*, and California's Consumer Privacy Act, Cal. Civ. Code §§ 1798.100 et seq.

   c. Aeries' failure to implement and maintain reasonable security measures also lead to substantial consumer injuries, as described above, that are not outweighed by any countervailing benefits to consumers or competition. Moreover, because consumers could not know of Aeries' inadequate security, consumers could not have reasonably avoided the harms that Aeries caused.

   d. Engaging in unlawful business practices by violating Cal. Civ. Code § 1798.82.

160.   Aeries has engaged in "unlawful" business practices by violating multiple laws, including California's Consumer Records Act, Cal. Civ. Code §§ 1798.81.5 (requiring reasonable data security measures) and 1798.82 (requiring timely breach notification), California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1780, *et seq.*, the FTC Act, 15 U.S.C. § 45, California's Consumer Privacy Act, Cal. Civ. Code §§ 1798.100, *et seq.*, and California common law.

161.   Aeries' unlawful, unfair, and deceptive acts and practices include:

   a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs' and class members' PII, which was a direct and proximate cause of the Data Breach;

   b. Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents in the education sector, which was a direct and proximate cause of the Data Breach;

   c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and class members' PII, including

duties imposed by the FTC Act, 15 U.S.C. § 45, California's Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.*, which was a direct and proximate cause of the Data Breach;

d.  Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs' and class members' PII, including by implementing and maintaining reasonable security measures

e.  Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and class members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, and California's Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.*; and California's Consumer Privacy Act, Cal. Civ. Code §§ 1798.100 *et seq.*

f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs' and class members' PII; and

g.  Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and class members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45; California's Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.*; and California's Consumer Privacy Act, Cal. Civ. Code §§ 1798.100 *et seq.*

162.    Aeries' representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Aeries' data security and ability to protect the confidentiality of consumers' PII.

163.    Aeries intended to mislead Plaintiffs and class members and induce them to rely on its misrepresentations and omissions.

164.    Had Aeries disclosed to Plaintiff and class members that its data systems were not secure and, thus, vulnerable to attack, Aeries would have been unable to continue in business and it would have been forced to adopt reasonable data security

measures and comply with the law. Instead, Aeries received, maintained, and compiled Plaintiffs' and class members' PII as part of the services Aeries provided and for which its school district customers (and through them Plaintiffs class members) paid without advising its school district customers, Plaintiffs,  and class members that Aeries' data security practices were insufficient to maintain the safety and confidentiality of Plaintiffs' and class members' PII. Accordingly, Plaintiffs and class members acted reasonably in relying on Aeries' misrepresentations and omissions, the truth of which they could not have discovered.

165.   Aeries acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded Plaintiffs' and class members' rights. Past breaches within the education sector put Aeries on notice that its security and privacy protections were inadequate.

166.   As a direct and proximate result of Aeries' unfair, unlawful, and fraudulent acts and practices, Plaintiffs and class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages as described herein and as will be proved at trial.

167.   Plaintiffs and class members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Aeries' unfair, unlawful, and fraudulent business practices or use of their PII; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

168.   As child victims, Plaintiffs D.G. and V.G. and Nationwide Minor and California Minor Subclass members have suffered greater harm from Aeries' violation of the California Unfair Competition Law than adult victims.

**Count 8**

**CALIFORNIA CUSTOMER RECORDS ACT**

*Cal. Civ. Code §§ 1798.80, et seq.*

Against Aeries on Behalf of Plaintiffs, the California Subclass, and the California Minor Subclass

169.    Plaintiffs repeat the allegations in paragraphs 1 – 96 in this Complaint, as if fully alleged herein.

170.    "[T]o ensure that Personal Information about California residents is protected," the California legislature enacted Cal. Civ. Code § 1798.81.5, which requires that any business that "owns, licenses, or maintains Personal Information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the Personal Information from unauthorized access, destruction, use, modification, or disclosure."

171.    Aeries is a business that owns, maintains, and licenses Personal Information, within the meaning of Cal. Civ. Code § 1798.81.5, about Plaintiffs and California Subclass and California Minor Subclass members.

172.    Businesses that own or license computerized data that includes Personal Information are required to notify California residents when their Personal Information has been acquired (or is reasonably believed to have been acquired) by unauthorized persons in a data security breach "in the most expedient time possible and without unreasonable delay." Cal. Civ. Code § 1798.82. Among other requirements, the security breach notification must include "the types of Personal Information that were or are reasonably believed to have been the subject of the breach." Cal. Civ. Code § 1798.82.

173.    Aeries is a business that owns or licenses computerized data that includes Personal Information as defined by Cal. Civ. Code § 1798.80.

174.   Plaintiffs' and California Subclass and California Minor Subclass members' Personal Information includes Personal Information as covered by Cal. Civ. Code § 1798.82.

175.   Because Aeries reasonably believed that Plaintiffs' and California Subclass and California Minor Subclass members' Personal Information was acquired by unauthorized persons during the Data Breach, Aeries had an obligation to disclose the Data Breach in a timely and accurate fashion as mandated by Cal. Civ. Code § 1798.82. Indeed, Aeries' own privacy policy states that it would provide affected individuals with notice of a data breach.

176.   By failing to disclose the Data Breach in a timely and accurate manner, Aeries violated Cal. Civ. Code § 1798.82.

177.   As a direct and proximate result of Aeries' violations of the Cal. Civ. Code §§ 1798.81.5 and 1798.82, Plaintiffs and California Subclass and California Minor Subclass members suffered damages, as described above and as will be proven at trial.

178.   Plaintiffs and California Subclass and California Minor Subclass members seek relief under Cal. Civ. Code § 1798.84, including actual damages and injunctive relief.

## Count 9

## CALIFORNIA CONSUMER PRIVACY ACT

*Cal. Civ. Code §§ 1798.100 et seq.*

Against Aeries on Behalf of Plaintiffs, the California Subclass, and the California Minor Subclass

179.   Plaintiffs repeat the allegations in paragraphs 1 – 96 in this Complaint, as if fully alleged herein.

180.   Plaintiffs and California Subclass and California Minor Subclass members are "consumer[s]" as that term is defined in Cal. Civ. Code. § 1798.140(g).

181.   Aeries is a "business" as that term is defined in Cal. Civ. Code. § 1798.140(c).

182.   Plaintiffs' and California Subclass and California Minor Subclass members' PII is "nonencrypted and nonredacted personal information" as that term is used in Cal. Civ. Code § 1798.150(a)(1).

183.   The Data Breach constitutes "an unauthorized access and exfiltration, theft, or disclosure" pursuant to Cal. Civ. Code § 1798.150(a)(1).

184.   Aeries had a duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the Plaintiffs' and California Subclass and California Minor Subclass Members' PII to protect said PII.

185.   Aeries breached the duty it owed to Plaintiffs and California Subclass Members described above, including the heightened duty owed to Plaintiffs D.G. and V.G. and the California Minor Subclass members. Aeries breached these duties by, among other things, failing to: (a) exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect the PII of Plaintiffs and California Subclass and California Minor Subclass Members; (b) detect the breach while it was ongoing; and (c) maintain security systems consistent with industry standards.

186.   Aeries' breach of the duty it owed to Plaintiffs and California Subclass and California Minor Subclass Members described above was the direct and proximate cause of the Data Breach. As a result, Plaintiffs and California Subclass and California Minor Subclass members suffered damages, as described above and as will be proven at trial.

187.   Plaintiffs seek injunctive relief in the form of an order enjoining Aeries from continuing the practices that constituted its breach of the duty owed to Plaintiffs and California Subclass and California Minor Subclass Members as described above. Concurrently with the filing of this Complaint, Plaintiffs are serving a letter of notice

on Aeries pursuant to Cal. Civ. Code § 1798.150(b) and anticipates amending this Complaint to seek statutory damages upon receipt of a written statement from Aeries in response to that letter of notice.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all class members proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against Aeries as follows:

1) For an Order certifying the Nationwide Class, the Nationwide Minor Subclass, the California Subclass, and the California Minor Subclass, as defined herein, and appointing Plaintiffs and Plaintiffs' counsel to represent the Class as alleged herein;

2) For injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and class members, including but not limited to an order:

   a) Prohibiting Aeries from engaging in the wrongful and unlawful acts described herein;

   b) Requiring Aeries to protect, including through adequate encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

   c) Requiring Aeries to delete, destroy, and purge the PII of Plaintiffs and class members unless Aeries can provide the Court a reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiffs and the class members;

   d) Requiring Aeries to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Plaintiffs' and class members' PII;

   e) Requiring Aeries to engage independent third-party security auditors and internal personnel to run automated security monitoring;

f)  Requiring Aeries to audit, test, and train its personnel regarding any new or modified procedures;

g)  Requiring Aeries to segment data by, among other things, creating firewalls and access controls so that if one area of Aeries' network is compromised, hackers cannot gain access to other portions of Aeries' systems;

h)  Requiring Aeries to conduct regular database scanning and security checks;

i)  Requiring Aeries to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon employees' respective responsibilities with handling PII, as well as protecting the PII of Plaintiffs and class members;

j)  Requiring Aeries to routinely and continually conduct internal training and education, at least annually, to inform security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

k)  Requiring Aeries to implement, maintain, regularly review, and revise as necessary, a threat management program designed to appropriately monitor Aeries' information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

l)  Requiring Aeries to meaningfully educate all class members about the threats they face as a result of the loss of their PII to third parties, as well as the steps affected individuals must take to protect themselves;

m)  Requiring Aeries to implement logging and monitoring programs sufficient to track traffic to and from its servers, as well as programs sufficient to protect infiltration of school districts' local servers connected to Aeries' systems; and

n)  Requiring Aeries to provide ten years of identity theft and fraud protection services to Plaintiffs and class members.

3)  For an award of compensatory, consequential, and general damages, including nominal damages, as allowed by law in an amount to be determined;

4)  For an award of statutory damages and punitive damages, as allowed by law in an amount to be determined;

5)  For an award of restitution or disgorgement, in an amount to be determined;

6)  For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

7)  For prejudgment interest on all amounts awarded; and

8)  Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs, on behalf of themselves and the Class of all others similarly situated, hereby demand a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: May 28, 2020

Respectfully submitted,

  /s/ Daniel L. Warshaw
Daniel L. Warshaw (CA Bar No. 185365)
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104
Email: dwarshaw@pswlaw.com

Joseph C. Bourne (CA Bar No. 308196)
**PEARSON, SIMON & WARSHAW, LLP**
800 LaSalle Avenue, Suite 2150
Minneapolis, Minnesota 55402

Telephone: (612) 389-0600
Facsimile: (612) 389-0610
Email:jbourne@pswlaw.com

Hassan A. Zavareei (CA Bar No. 181547)
Mark A. Clifford*
**TYCKO & ZAVAREEI LLP**
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
Email: hzavareei@tzlegal.com
         mclifford@tzlegal.com

*Counsel for Plaintiffs and the Proposed Class*

*\*pro hac vice application forthcoming*

# Exhibit A

---

**From: ABC Unified School District via Aeries Communication** <17887785-do-not-reply@a.signalkit.com>
Date: Wed, May 13, 2020 at 5:23 PM
Subject: Notice of Data Breach
To: <naarayan@gmail.com>



## NOTICE OF DATA BREACH

The District's Information & Technology department has received notification from **Aeries Software Inc,** our database vendor**,** that the District's student information system database was compromised through a vulnerability in the Aeries software. We are currently investigating this issue.

Until we know the extent of this possible breach, we need all ABC students and families with Aeries portal accounts to reset their passwords.

Tomorrow, May 14, 2020, an email will be sent to all ABC parent/student account holders with a link to reset their password.

Once we have more information, families impacted will be notified by the District.

Thank you,

Dr. Colin Sprigg
Director
Information & Technology



You are receiving this email because your email address is associated with
**ABC Unified School District**
16700 Norwalk Blvd. Cerritos, CA 90703

Want to change how you receive these emails?
Manage your notification preferences
You've contacted the wrong person

Copyright © 2019

# Exhibit B

From: **Colin Sprigg via Aeries Communication** <17896938-do-not-reply@a.signalkit.com>
Date: Thu, May 14, 2020 at 6:37 PM
Subject: An announcement from Colin Sprigg (Aeries Portal Password Reset)
To: <naarayan@gmail.com>

Dear ABC Parents and Students that have an Aeries Portal account:

As published within ABC Unified's **Notice of Data Breach** shared with the ABC community on May 13 (see attached), the school district will require all ABC parents and students that have an online Aeries Portal account to reset their passwords for security purposes.  Please follow the written instructions below to manually reset your passwords. All Aeries Portal functions will not be accessible beginning May 14 until this process has been completed.

Password Reset Instructions

- Go to https://parentportal.abcusd.us

- Click on **Forgot Password?**

- Type the email address for your Parent Portal account

(Click **Next**)

- Check your email inbox for a message from
  portal.confirmation@abcusd.us

- Open the message and click on the link that says **Click Here**

- Click **Next**

- Enter your new password in both the **New Password** field and again in the **ReType New Password** field**. (Click Next)**

- Once you see the screen that says **Complete**, the password reset process is done.

For more information go to the ABC Unified School District website at **www.abcusd.us** > **Departments** > **Information and Technology** > **Data Breach.**

For technical support, please review the attached password reset "how-to" document, or contact the Online Learning at Home Technical Support Line at (562) 229-7929 from 8:30 AM to 4 PM, or email support@abcusd.us.

Thank you,
Dr. Colin Sprigg, Director
Information and Technology

**This announcement included a file attachment. Click the link below to view.**

How_to_Reset_your_Parent_Portal_Account_Password.pdf
Data_Breach_05.13.20_v1.pdf



You are receiving this email because your email address is associated with
**ABC Unified School District**
16700 Norwalk Blvd. Cerritos, CA 90703

Want to change how you receive these emails?
Manage your notification preferences
You've contacted the wrong person

Copyright © 2019

Exhibit C

From: **Colin Sprigg via Aeries Communication** <18038891-do-not-reply@a.signalkit.com>
Date: Thu, May 28, 2020 at 1:34 PM
Subject: An announcement from Colin Sprigg
To: <Naarayan@gmail.com>

Dear ABC Community:

On May 13, the ABC Unified School District publicly
reported that a software data breach had occurred
involving Aeries Portal, the online program allowing
student and parent access to common educational
records. In order to keep all ABC Aeries Portal users
secure, the District revoked all Aeries Portal passwords,
requiring all account holders to manually reset their
passwords to regain access.

The District has since learned which ABC families were
affected by the breach, and this notice serves to more

fully inform those impacted of what data was compromised, the District's response, and what families can do to further protect their information.

This notice is publicly posted on the District website at [www.abcusd.us](http://www.abcusd.us) > Departments > Information and Technology.

| Notice of Data Breach | |
|---|---|
| **What Happened?** | On May 12, 2020, the ABC Unified School District was informed by Aeries Software, Inc., the vendor for our student information database, that they had suffered a data breach impacting those who use the ABC USD portal.<br><br>State and federal law enforcement agencies are conducting ongoing investigations into this data breach. At this point, investigators believe one entity was responsible for the attack, and suspects are in custody.<br><br>Aeries Software has since patched the software issue that allowed unauthorized access to occur. |
| **What Information was Involved?** | The following information was exposed on November 4, 2019:<br><br>• **Parent Name**<br><br>• **Student Name**<br><br>• **Student ID (School)**<br><br>• **Physical Resident Address** |

**Email Address**

- **Password "hashes"** *Aeries automatically encrypts passwords. A password hash does not reveal the password.  However, with access to a password hash, unauthorized persons may be able to deconstruct weak, common, or simple passwords.*

<u>No other information was exposed</u>. No social security numbers are maintained in the Aeries system; therefore, no risk of compromise to this data is possible.

ABC has determined that the unauthorized party attempted to gather your information. No evidence exists that your data was taken, nor misused. ABC is required by law to notify the families that were subject to unauthorized access.

| | |
|---|---|
| **What the District is Doing**. | ABCUSD Information & Technology revoked all existing passwords, and users were instructed on how to manually reset their password. |
| **What You Need to Do.** | Parents and students need to reset their Aeries Portal password in response to this incident before further access is granted.<br><br>It is recommended that families consider changing user names, and/or passwords that may have been in common with those used with the Aeries Portal. |

**For additional support, please contact the Tech Support Hotline at (562) 229-7929.**



You are receiving this email because your email address is associated with
**ABC Unified School District**
16700 Norwalk Blvd. Cerritos, CA 90703

Want to change how you receive these emails?

Manage your notification preferences
You've contacted the wrong person

Copyright © 2019