DANIEL L. WARSHAW (Bar No. 185365)
    dwarshaw@pswlaw.com
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104

*Attorneys for Plaintiffs and the Proposed Class*
*(Additional Counsel on Signature Page)*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ANURAG GUPTA and by and through him, D.G. and V.G., his minor children,<br><br>*individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>AERIES SOFTWARE, INC.,<br><br>Defendant. | CASE NO. 8:20-cv-00995<br><br>**CLASS ACTION**<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:  July 22, 2021<br>Time:  10:00 a.m.<br>Crtrm.:  6D |

TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 22, 2021, at 10:00 a.m., or as soon thereafter as the matter may be heard in the Courtroom of the Honorable Fernando M. Olguin, United States District Court, Central District of California, Western Division, 350 W. 1st Street, 6th Floor, Courtroom 6D, Los Angeles, CA 90012, Plaintiff Melinda Tomes ("Plaintiff") will and hereby does move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for the entry of an Order:

1.      Preliminarily approving the Settlement Agreement[1] between Plaintiff and Defendant Aeries Software, Inc.;

2.      Approving the form, manner, and content of the notice for the proposed settlement to the Settlement Class;

3.      Appointing JND Legal Administration as the Settlement Administrator;

4.      Appointing Hassan A. Zavareei and Daniel L. Warshaw as Class Counsel on behalf of their firms; and

5.      Setting a Fairness Hearing date and briefing schedule for final approval of the Settlement and consideration of Plaintiff's fee application.

The grounds for this motion are that the proposed settlement is within the necessary range of reasonableness to justify granting preliminary approval pursuant to Rule 23(e).  This motion is based upon this Notice of Motion and Motion for Preliminary Approval of Class Action Settlement, the Memorandum of Points and Authorities, the Declarations of Hassan A. Zavareei, Daniel L. Warshaw, Melinda Tomes, Jonathan Cotton and Gina M. Intrepido-Bowden filed herewith, the pleading and papers on file in this action, and such oral argument and documentary evidence as may be presented at the hearing on this motion.

---

[1] Unless indicated otherwise, all capitalized terms shall have the meaning agreed to by the parties in the Settlement Agreement, which is attached as Exhibit 1 to the Declaration of Hassan A. Zavareei.

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................... 1

II. BACKGROUND ........................................................................................ 2

 A. Facts ................................................................................................ 2

 B. Procedural History ........................................................................ 3

III. THE SETTLEMENT AGREEMENT ...................................................... 7

 A. The Settlement Class ..................................................................... 7

 B. Settlement Consideration .............................................................. 7

  1. Cash Payments to Settlement Class Members ................ 7

  2. Free Credit Monitoring Services ...................................... 9

  3. Equitable Relief: Data Security Improvements .............. 10

 C. Settlement Administrator and Administration Costs ............... 10

 D. The Notice Plan ............................................................................ 11

 E. Opt-Out and Objection Procedures ........................................... 11

 F. Release of Claims ......................................................................... 12

 G. Attorneys' Fees and Costs and Service Award ......................... 13

IV. ARGUMENT ............................................................................................ 13

 A. The Proposed Settlement Class Should be Certified. ............... 13

  1. The Settlement Class Meets the Requirements of Rule 23(a). ........ 13

  2. The Settlement Class Meets the Requirements of Rule 23(b)(3). ......................................................................... 15

 B. The Proposed Settlement Should be Preliminarily Approved. .................. 16

  1. The Settlement is Fair, Reasonable, and Adequate Under Rule 23(e). ........................................................... 16

   (a) The Costs, Risks, and Delay of Trial and Appeal ................ 17

   (b) The Effectiveness of Any Proposed Method of Distributing Relief to the Settlement Class ........................... 19

   (c) The Terms of the Proposed Award of Attorneys' Fees ....... 21

|  |  | 2. | The Settlement Treats Settlement Class Members Equitably. | 22 |
|  |  | 3. | The Settlement is Within a Range of Possible Judicial Approval. | 23 |
|  |  | 4. | Notice Will be Provided Under CAFA | 24 |
|  | C. | The Court Should Appoint the Settlement Administrator. |  | 25 |
|  | D. | The Court Should Schedule a Final Approval Hearing. |  | 25 |
| V. | CONCLUSION |  |  | 25 |

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Inter-Con Sec. Sys. Inc.,*
No. C-06-05248-MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007) ....................22

*Amchem Prods. v. Windsor,*
521 U.S. 591 (1997) ............................................................................... 13, 16

*In re Bluetooth Headset Prods. Liab. Litig.,*
654 F.3d 935 (9th Cir. 2011) .......................................................................21

*Calderon v. Wolf Firm,*
No. SACV 16-1622-JLS(KESx), 2018 WL 6843723 (C.D. Cal. Mar. 13,
2018)........................................................................................................24

*Celano v. Marriott Int'l Inc.,*
242 F.R.D. 544 (N.D. Cal. 2007) ................................................................14

*Chester v. TJX Cos.,*
No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788 (C.D. Cal. Dec. 5,
2017)........................................................................................................18

*Churchill Vill., L.L.C. v. GE,*
361 F.3d 566 (9th Cir. 2004) .......................................................................16

*Dennis v. Kellogg Co.,*
No. 09-cv-1786-L(WMc), 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) ...............18

*Ellis v. Costco Wholesale Corp.,*
657 F.3d 970 (9th Cir. 2011) .......................................................................15

*Fox v. Iowa Health System,*
No. 3:18-cv-00327-jdp, 2020 U.S. Dist. LEXIS 177466 (W.D. Wis.) .....................24

*Grimm v. Am. Eagle Airlines, Inc.,*
No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376 (C.D. Cal.
Sept. 24, 2014)............................................................................................19

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) .......................................................................15

*Hillman v. Lexicon Consulting,*
    No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869 (C.D. Cal. April
    27, 2017) ................................................................................................19

*Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.,*
    No. 1:16-cv-03025-JKB (D. Md.) ........................................................18

*Just Film, Inc. v. Buono,*
    847 F.3d 1108 (9th Cir. 2017) ...................................................... 14, 16

*In re Linkedin User Privacy Litig.,*
    309 F.R.D. 573 (N.D. Cal. 2015) .........................................................16

*Longest v. Green Tree Servicing LLC,*
    308 F.R.D. 310 (C.D. Cal. 2015) .........................................................15

*Nachshin v. AOL LLC,*
    663 F.3d 1034 (9th Cir. 2011) ...............................................................9

*Nat'l Rural Telecomms. Coop. v. DIRECTV,*
    221 F.R.D. 523 (C.D. Cal. 2004) .........................................................23

*Norton v. Maximus, Inc.,*
    No. CV 1:14-0030 WBS, 2017 WL 1424636 (D. Idaho Apr. 17, 2017) ..................23

*Odom v. ECA Mktg.,*
    No. EDCV 20-851 JGB (SHKx), 2021 U.S. Dist. LEXIS 101128 (C.D.
    Cal. May 27, 2021) ..............................................................................14

*Paz v. AG Adriano Goldschmeid, Inc.,*
    No. 14CV1372DMS(DHB), 2016 WL 4427439 (S.D. Cal. Feb. 29,
    2016) ....................................................................................................18

*Schaffer v. Litton Loan Servicing, LP,*
    No. CV 05–07673 MMM, 2012 WL 10274679 (C.D. Cal. Nov. 13,
    2012) ....................................................................................................20

*In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA)
Litig.,*
    295 F.R.D. 438 (C.D. Cal. 2014) .........................................................22

*Tyson Foods, Inc. v. Bouaphakeo,*
    136 S. Ct. 1036 (2016) .........................................................................16

**Statutes & Rules**

Cal. Civ. Code § 1542 ......................................................................................13

Class Action Fairness Act, 28 U.S.C. § 1715 ..................................................24

Fed. R. Civ. P. 23............................................................................................13

Fed. R. Civ. P. 23(a) .......................................................................................14

Fed. R. Civ. P. 23(a)(1) ...................................................................................14

Fed. R. Civ. P. 23(a)(3) ...................................................................................14

Fed. R. Civ. P. 23(a)(4) ...................................................................................15

Fed. R. Civ. P. 23(b)(3) .............................................................................15, 19

Fed. R. Civ. P. 23(c)(2)(B) .........................................................................19, 20

Fed. R. Civ. P. 23(e) .......................................................................................16

Fed. R. Civ. P. 23(e)(1) ...................................................................................19

Fed. R. Civ. P. 23(e)(2) ...................................................................................16

**Other Authorities**

Manual for Complex Litigation, § 21.632...........................................................13

Newberg on Class Actions § 13:10 (5th ed.)....................................................16

# I.    <u>INTRODUCTION</u>

Plaintiff Melinda Tomes, on behalf of herself and all other persons similarly situated, ("Class Plaintiff" or "Tomes"), with the consent of Defendant Aeries Software, Inc. ("Aeries" or "Defendant"), respectfully requests entry of an order granting preliminary approval of the class action settlement (the "Settlement") set forth in the parties' Settlement Agreement, certifying a class, appointing Class Counsel, appointing Tomes as Class Representative for settlement purposes, providing for issuance of Notice to the Settlement Class, and scheduling a date for the Final Approval Hearing.

Tomes' claims arise from a data breach that took place in or about January 2020, which affected personal identifying information ("PII") of approximately 100,000 individuals with Aeries accounts through the San Dieguito Union High School District ("SDUHSD") relating to the Aeries School Information System ("Aeries SIS") utilized to manage student data (the "Data Breach").

The proposed Settlement is the result of arm's-length negotiations achieved with the assistance of mediator Martin Quinn, Esq. of JAMS, and provides for substantial and meaningful relief to the Settlement Class. If approved, the Settlement will create a $1,750,000 Settlement Fund and resolve all claims that Tomes and the Settlement Class Members have against Aeries arising from the Data Breach. Settlement Class Members who submit a valid claim will be entitled to compensation for out-of-pocket losses and lost time. In addition, the Settlement requires Aeries to offer twelve months of credit monitoring and identity theft protection services to all Settlement Class Members and implement enhanced security measures. The proposed Settlement is fair and well within the range of preliminary approval. *See* Declaration of Daniel L. Warshaw ("Warshaw Decl.") at ¶ 13; *see also* Declaration of Hassan Zavareei ("Zavareei Decl.") at ¶ 17. By settling now, the Settlement Class can take advantage of remedies that would be unavailable or worth substantially less by the time this case could be litigated to final judgment. Zavareei Decl. at ¶ 19. Not only are credit monitoring services most critical in the first five years after a data breach, but by providing Settlement Class Members with

credit monitoring now, the proposed Settlement helps preserve the confidentiality of Settlement Class Members' private information in ways that a later monetary judgment would not. Accordingly, Tomes respectfully requests that the Court preliminarily approve the Settlement.

## II.   BACKGROUND

### A.   Facts

Aeries manages student data in public school district systems in California that utilize the Aeries SIS. ECF No. 54 at ¶ 1. Aeries admits that 166 databases that are hosted on Aeries' servers and store data on behalf of the school districts ("Aeries Hosting") were subject to unauthorized access beginning on or about November 4, 2019. *Id.* at ¶ 4. Despite having knowledge of the unauthorized access as early as November 2019, and certainly no later than January 2020, Aeries did not notify its school district customers of the Data Breach until April 27, 2020, when it issued a "Notice of Data Breach" to school district customers. *Id.* at ¶ 5. The April 27, 2020 "Notice of Data Breach" disclosed only that the following personal information was compromised: "Parent and Student Login information, physical residence addresses, emails, and 'password hashes.'" *Id.* at ¶ 6. Aeries further acknowledged that "[w]ith access to a password hash, weak, common or simple passwords, can be deconstructed to gain unauthorized access to Parent and Student Accounts." *Id.* The Notice of Data Breach did not disclose that additional PII was stored on behalf of its school district customers, including, *inter alia*, (1) minor students' immunization and other health records, (2) social security numbers, (3) class grades, (4) standardized test information, (5) previous addresses, and (6) parent's or guardian's credit or debit cards and other financial information. *Id.* at ¶ 7.

More than two weeks after Aeries sent its school district customers the Notice of Data Breach, SDUHSD sent notifications to parents and guardians of children attending SDUHSD schools, including a press release dated May 14, 2020. *Id.* at ¶ 9. Unfortunately, even Aeries' subsequent investigations failed to uncover it was not only PII stored on Aeries Hosting that was compromised. *Id.* at ¶ 10. In early May 2020, other school district

2

1   customers discovered that PII processed through the Aeries SIS, but stored on local

2   servers (*i.e.*, the school districts' servers), was also subject to unauthorized access. *Id.*

3         Tomes alleges that Aeries is responsible for allowing the Data Breach to occur

4   because it failed to implement and maintain sufficient safeguards and failed to comply

5   with industry-standard data security practices, contrary to the representations made in

6   Aeries' privacy statements and its explicit and implied agreements with its school district

7   customers. *Id.* at ¶ 12. During the Data Breach, Aeries failed to detect the unauthorized

8   third parties' access to its servers, notice the massive amounts of data that were

9   compromised, and failed to take any steps to investigate the red flags that should have

10  warned Aeries that its systems were not secure. *Id.* at ¶ 13. Tomes alleges that as a result

11  of Aeries' failure to protect the student information with which it was entrusted, she and

12  Settlement Class Members have been exposed to and/or are at a significant risk of

13  identity theft, financial fraud, and other identity-related fraud into the indefinite future.

14  *Id.* Tomes also alleges that she and Settlement Class Members have lost the inherent

15  value of their PII. *Id.* This harm was compounded by Aeries' failure to timely notify its

16  school district customers of the Data Breach, its failure to disclose the extent of the

17  information compromised in the Data Breach, and its further failure to ensure that

18  students and parents or guardians of students within its customers' school districts

19  received proper and timely notification of the Data Breach. *Id.*

20       **B.**   **Procedural History**

21        On May 28, 2020, plaintiffs Anurag Gupta and his minor children, D.G. and V.G.,

22  ("Individual Plaintiffs") filed a Class Action Complaint (the "Complaint") against Aeries

23  on behalf of themselves and other similarly situated students, parents, and guardians in

24  the United States whose PII was compromised in the Data Breach. ECF No. 1. Before

25  filing the Complaint, Class Counsel investigated the potential claims against Aeries,

26  interviewed potential plaintiffs, and gathered information about the Data Breach and its

27  potential impact on consumers. *See* Zavareei Decl. at ¶ 4. Class Counsel also expended

28  resources developing the legal claims at issue. *Id.* On July 21, 2020, Aeries filed a Motion

1   to Dismiss the Complaint. ECF No. 20.

2   Individual Plaintiffs filed a First Amended Class Action Complaint on August 13,

3   2020 ("Amended Complaint"). ECF No. 26. The Amended Complaint alleged the Data

4   Breach and sought to certify a nationwide class of students, parents, and guardians who

5   were injured as a direct result thereof. *Id.* at ¶ 86. The Amended Complaint also sought

6   to certify a subclass of minor students (and adults who provided their PII to Aeries when

7   they were minor students) who were injured as a result of the Data Breach; a California

8   subclass of all minor students, parents, and guardians in California who were injured as

9   a result of the Data Breach; and a California subclass of minor students (and adults who

10  provided their PII to Aeries when they were minor students) in California who were

11  injured as a result of the Data Breach. *Id.* Specifically, the Amended Complaint alleged

12  that Aeries' inadequate security practices resulted in the compromise of incredibly

13  sensitive PII of thousands of Aeries' school district customers.

14  On August 27, 2020, Aeries filed a Motion to Dismiss the Amended Complaint.

15  ECF No. 27. On September 11, 2020, the parties filed a Stipulation that all proceedings

16  and deadlines in the case (including a scheduling conference and hearing on Aeries'

17  Motion to Dismiss) would be stayed up through and including November 10, 2020, to

18  allow the parties (and the Court) to conserve resources and allow them to focus on

19  mediation and settlement [ECF No. 29], upon which the Court entered an Order

20  granting the Stipulation on November 21, 2020 [ECF No. 30].

21  After discussions among counsel, the parties agreed to engage in mediation on

22  October 26, 2020, with Mr. Quinn, an experienced class action mediator, to explore

23  whether a negotiated resolution was possible. *See* Zavareei Decl. at ¶ 6. Aeries provided

24  information about the scope of the Data Breach, the number of class members, and

25  remedial efforts undertaken in the wake of the Data Breach, to Plaintiff's counsel. *Id.*

26  The parties also exchanged lengthy mediation briefs in advance of the mediation. *Id.* The

27  October 26, 2020 mediation did not result in the parties agreeing on settlement terms,

28  but counsel continued to engage in ongoing settlement discussions. *Id.* at ¶ 6. On

November 4, 2020, the parties filed a Stipulation that all proceedings and deadlines in the case would be stayed up through and including November 30, 2020, to facilitate the settlement process and conserve resources [ECF No. 35]. The Court entered an Order granting the Stipulation on November 5, 2020 [ECF No. 36].

The parties spent significant time negotiating the specific terms and language of the settlement agreement. *See* Zavareei Decl. at ¶ 5. On November 23, 2020, the parties filed another Stipulation that all proceedings in the case would be stayed up through and including January 4, 2021, to allow time to negotiate over Aeries' expected counteroffer to Class Counsel's settlement proposal [ECF No. 39], upon which the Court entered an Order granting the Stipulation on November 24, 2020 [ECF No. 40]. On December 17, 2020, Aeries submitted a counteroffer to Class Counsel's settlement proposal to Mr. Quinn. *See* Zavareei Decl. at ¶ 7. On January 5, 2021, the parties filed another Stipulation that all proceedings and deadlines in the case would be stayed up through and including February 5, 2021, to allow Mr. Quinn to work with the parties on the continued negotiation of the counteroffer [ECF No. 41], upon which the Court entered an Order granting the Stipulation on January 5, 2021 [ECF No. 42]. The parties continued to negotiate and exchange counteroffers through Mr. Quinn, and scheduled a second mediation on March 12, 2021, to expedite a resolution of this matter. *Id.* On February 5, 2021, the parties filed another Stipulation that all proceedings and deadlines in the case would be stayed up through and including April 5, 2021 [ECF No. 45], upon which the Court entered an Order granting the Stipulation on February 11, 2021 [ECF No. 46].

On March 12, 2021, the parties attended their second mediation with Mr. Quinn. *See* Zavareei Decl. at ¶ 7. On April 2, 2021, the parties filed a Notice of Settlement, advising the Court of the agreement and the need to negotiate a written settlement agreement and related documents to submit to the Court and handle other administrative matters. ECF No. 48. The Court entered a Minute Order vacating all pending deadlines in this action and setting May 14, 2021, as the deadline for Individual Plaintiffs to file their motion for class certification and preliminary approval of the parties' proposed

settlement. ECF No. 49. While the parties continued to work diligently to finalize the terms of a written settlement agreement, they became aware of the need to amend the Amended Complaint for the purpose of substituting out the Individual Plaintiffs to ensure proper representation for the putative Settlement Class. *See* ECF No. 50. Accordingly, the parties filed a Stipulation requesting a 31-day continuance of the May 14, 2021 deadline for Class Counsel to file their motion for class certification and preliminary approval of the settlement agreement [*id.*], upon which the Court entered an Order granting the Stipulation on May 13, 2021 [ECF No. 51].

On June 8, 2021, the parties filed a Stipulation to File Second Amended Class Action Complaint [ECF No. 52], upon which the Court entered an Order granting the Stipulation on June 9, 2021 [ECF No. 53]. Plaintiffs filed their Second Amended Class Action Complaint ("Second Amended Complaint") on June 9, 2021. ECF No. 54. The Second Amended Complaint added a new class representative, *i.e.*, Tomes, narrowed the putative class to individuals who had an Aeries account through the SDUHSD at the time of the Data Breach, and recast Individual Plaintiffs' claims as individual claims, rather than the previously pled class claims. *Id.*

On June 9, 2021, a final mediation session with Mr. Quinn was held and attended by Class Representative Tomes. Zavareei Decl. at ¶ 8. On June 14, 2021, the parties executed the Settlement Agreement that is now before the Court for preliminary approval. *Id.* The proposed Settlement is limited to students and parents or guardians of students of the SDUHSD because Class Counsel determined—based on verified representations made by Aeries—that this population was differently situated than the students and parents or guardians of students with Aeries accounts through the other affected school districts and, in Class Counsel's view, had an increased risk of exposure in connection with the Data Breach. *Id.* at ¶ 9; *see also* Declaration of Jonathan Cotton, Executive Director of Operations of Aeries, at ¶¶ 5-7. Because Individual Plaintiffs are outside of that district, they settled their claims individually, and Tomes, who had an Aeries account through the SDUHSD at the time of the Data Breach, will instead

1  adequately represent the Settlement Class.

2  **III.**   **THE SETTLEMENT AGREEMENT**

3      The following is a summary of the material terms of the Settlement.

4      **A.**   **The Settlement Class**

5      The Settlement Agreement contemplates certification of the following Class for

6  settlement purposes only: *All individuals in the United States who had an Aeries account through*

7  *the San Dieguito Union High School District at the time of the Data Breach. See* Settlement

8  Agreement at ¶ 37. The Settlement Class will consist of approximately 98,199 individuals

9  who had an Aeries account through SDUHSD at the time of the Data Breach and whose

10 username/hashed passwords and medical information was compromised. Zavareei Decl.

11 at ¶ 10. The Settlement Class excludes: Aeries' customers, Aeries itself, any entity in

12 which Aeries has a controlling interest, and Aeries' officers, directors, legal

13 representatives, successors, subsidiaries, and assigns. Also excluded from the Settlement

14 Class are any judicial officer presiding over this matter, members of their immediate

15 family, members of their judicial staff, and any judge sitting in the presiding court system

16 who may hear an appeal of any judgment entered. *Id.*

17     **B.**   **Settlement Consideration**

18         **1.**   **Cash Payments to Settlement Class Members**

19     The Settlement Agreement provides for a Settlement Fund of $1,750,000 from

20 which the following will be paid: (i) Notice and Administrative Expenses; (ii) Taxes and

21 Tax-Related Expenses; (iii) Service Award Payments approved by the Court; (iv) Fee

22 Award and Costs; (v) reimbursement for Out-of-Pocket Losses and Attested Time; and

23 (vi) Pro Rata Cash Payments. *See* Settlement Agreement at ¶¶ 20, 41. After payment of

24 Notice and Administrative Expenses, Taxes and Tax-Related Expenses, any Court-

25 approved Service Award Payment and Fee Awards and Costs, and reimbursement for

26 Out-of-Pocket Losses and Attested Time to Settlement Class Members submitting a

27 valid and timely Claim Form, any remaining funds (the "Remaining Funds") shall be

28 distributed to each Participating Settlement Class Member to be calculated by dividing

the Remaining Funds by the number of Participating Settlement Class Members, subject to an individual aggregate cap of $10,000 for total payments under the Settlement. *Id.* at ¶ 57. Claims may be subject to a *pro rata* reduction. *Id.* at ¶ 64.

Each Settlement Class Member may submit a Claim for Out-of-Pocket Losses. *Id.* at ¶ 51. Claims will be subject to review for completeness and plausibility by a Settlement Administrator. *Id.* If it is determined that a Claim is deficient in whole or part, the Settlement Administrator shall provide the Settlement Class Member with an opportunity to cure the deficiencies. *Id.* at ¶ 54. Settlement Class Members may submit a Claim for "Ordinary Losses," capped at $1,000 per person, and/or "Extraordinary Losses," capped at $10,000 per person. *Id.* at ¶ 51. Claims may be subject to a *pro rata* reduction. *Id.* at ¶ 64. "Ordinary Losses" include (1) "Out of pocket expenses incurred as a result of the Data Breach, including bank fees, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, or gasoline for local travel"; (2) "Fees for additional credit reports, credit monitoring, or other identity theft insurance products purchased between November 4, 2019 and the date of the Preliminary Approval Order"; and (3) "Up to 40 hours of Attested Time, at $25/hour, if at least one full hour was spent dealing with the Data Breach."[2] *Id.* at ¶ 51. "For Attested Time, a sworn attestation detailing how the time was spent shall constitute 'supporting documentation.'." *Id.* "Extraordinary Losses" are "losses arising from financial fraud or identity theft if:" (1) "The loss is an actual, documented, and unreimbursed monetary loss"; (2) "The loss is fairly traceable to the Data Breach"; (3) "The loss is not already covered by one or more of the normal reimbursement categories"; and (4) "The settlement class member made reasonable efforts to avoid, or seek reimbursement for, the loss." *Id.*

Cash payments will be made by the Settlement Administrator and will either (1) be mailed by check (a "Settlement Check"); or (2) sent electronically. *Id.* at ¶ 71; *see also*

---

[2] Attested Time "means time spent remedying issues related to the Data Breach." Zavareei Decl., Ex. 1 at ¶ 4.

*id.*, Ex. A (Claim Form). For any Settlement Check returned to the Settlement Administrator as undeliverable, the Settlement Administrator shall make reasonable efforts to locate a valid address and resend the Settlement Payment within thirty (30) days. *Id.* at ¶ 59. Any checks that are not cashed within 180 days (or an additional 90 days in the case of replacement Settlement Checks) shall be voided and the money returned to the Settlement Fund for distribution as required by state law or to the Non-Profit Residual Recipient.[3] *Id.* at ¶ 60. Prior to such occurrence, the Settlement Administrator shall attempt to contact the Settlement Class Member to whom the original Settlement Check was issued and, if unsuccessful, make reasonable efforts to locate an updated address for the Settlement Class Member. *Id.*

No portion of the Settlement Fund shall revert or be repaid to Defendant after the Effective Date. *Id.* at ¶ 61. If any monies remain in the Net Settlement Fund more than 150 days after the distribution of Settlement payments to the Participating Settlement Class Members, or 30 days after all reissued Settlement Checks are no longer negotiable, whichever occurs later or as otherwise agreed to by the parties, the parties shall implement a Secondary Distribution *pro rata* to all Settlement Class Members who had an Approved Claim—only if the secondary distribution is economically feasible. *Id.* If a Secondary Distribution is not economically feasible, or if any funds remain from uncashed Secondary Distribution checks, any remaining monies shall be distributed as required by state law or to the Non-Profit Residual Recipient, EFF. *Id.* at ¶¶ 21, 61. EFF's mission is aligned with the objectives of the litigation, addresses the objectives of the underlying law, and targets the class members. *See Nachshin v. AOL LLC*, 663 F.3d 1034, 1039 (9th Cir. 2011). The parties and their counsel do not have an affiliation with EFF.

### 2. Free Credit Monitoring Services

Aeries shall also offer to all Settlement Class Members twelve (12) months of

---

[3] The "Non-Profit Residual Recipient" means the Electronic Frontier Foundation ("EFF"). *Id.* at ¶ 21. The EFF is a 501(c)(3) nonprofit organization defending civil liberties in the digital world, and its mission is to ensure that technology supports freedom, justice, and innovation for all people of the world. Zavareei Decl. at ¶ 13.

Credit Monitoring Services at no cost, regardless of whether the Settlement Class Member submits a claim for Ordinary or Extraordinary Losses. These services will include daily credit monitoring of the Settlement Class Member's credit file at one of the three major credit reporting agencies; a $1 million identity theft insurance policy; identity restoration services; and other additional features ("Credit Monitoring and Identity Restoration Services"). Such Credit Monitoring and Identity Restoration Services shall be provided on an opt-in basis. *See* Settlement Agreement at ¶ 55; *see also* Settlement Agreement, Ex. A (Claim Form). The cost of Credit Monitoring Services (a value of approximately $120 per Settlement Class Member) will be paid by Aeries separate and apart from the Settlement Fund. *Id.*

### 3. Equitable Relief: Data Security Improvements

Aeries has or will employ information security enhancements, including external review of security controls; implemented whitelisting and multifactor authentication where possible for third party system access; provisioned for free identity protection services for those impacted; increased training of all Aeries team members regarding cybersecurity; reviewed security posture and updated risk assessments for all Aeries vendors and implemented additional controls upon them, where possible; and increased staff in Vendor Management, Audit and Compliance. *See* Settlement Agreement at ¶ 66. Aeries estimated that these measures cost $50,000. Zavareei Decl. at ¶ 11.

### C. Settlement Administrator and Administration Costs

Subject to Court approval, the Settlement Administrator is JND Legal Administration ("JND"), a leading class action administration firm in the United States. *See* Declaration of Gina M. Intrepido-Bowden ("JND Decl."), at ¶ 3. All Notice and Administrative Costs shall be paid from the Settlement Fund. *See* Settlement Agreement at ¶¶ 24, 49, 65, 73. The Settlement Administrator will oversee the provision of Notice to the Settlement Class Members and administration of the Settlement Fund. *See id.* at ¶¶ 71-72. The estimated amount to be paid to the Settlement Administrator is $139,216, caped at $250,000. Zavareei Decl. at ¶ 14. This is a reasonable estimate, based on various

assumptions, including that 5% of Settlement Class Members will file claims; 85% of the claims will be valid; 20% of valid claims will be for ordinary losses (at 10 minutes per claim/$75 per hour); and that 10% of valid claims will be for extraordinary losses (at 30 minutes per claim/$75 per hour). *Id.* Fees to the Settlement Administrator are capped at $250,000. *Id.*

## D. The Notice Plan

Notice will be disseminated directly to the Settlement Class via E-Mail or Postcard. Aeries has committed to providing the Settlement Administrator with the Settlement Class List within twenty-one (21) days after the date of Preliminary Approval Order. *See* Settlement Agreement at ¶ 67. Within twenty-eight (28) days after receipt of the Settlement Class List, the Settlement Administrator shall disseminate Notice to members of the Settlement Class. *Id.* at ¶¶ 23, 67 ("Notice Deadline"). Prior to the date on which the Settlement Administrator initiates the Notice, the parties shall meet and confer and choose a mutually acceptable URL for the Settlement Website. *Id.* at ¶ 68. The Settlement Website shall remain accessible until at least sixty (60) days after all Settlement Payments have been distributed. *Id.* The Settlement Website shall contain: the Settlement Agreement; contact information for Class Counsel and Aeries Counsel; contact information for the Settlement Administrator; the publicly filed motion for preliminary approval, motion for final approval and for attorneys' fees and expenses (when they become available); the signed preliminary approval order; and a downloadable and online version of the Claim Form and Longform Notice. *Id.*

## E. Opt-Out and Objection Procedures

The Class Notice will advise Settlement Class Members of their right to opt out of the Settlement or to object to the Settlement and/or to Class Counsel's application for attorneys' fees, costs, and expenses and/or Service Award to the Class Representative, and of the associated deadlines to opt out or object. *See id.* at ¶¶ 69-70.

Settlement Class Members who choose to opt out must submit a Request for Exclusion, which will be available on the Settlement Website or can be obtained from

the Settlement Administrator. *Id.* at ¶ 69; Settlement Agreement, Ex. E (Request for Exclusion). The Request for Exclusion must be postmarked on or before the deadline set by the Court and specified in the Class Notice, which shall be no less than sixty calendar days after the Notice Deadline. *Id.* It must include the name of the proceeding, the individual's full name, current address, telephone number, personal signature, and will state that the individual does not wish to participate in the Settlement. *Id.* Any person who receives the Class Notice and does not submit a Request for Exclusion will be bound by the Settlement. *Id.*

Settlement Class Members who wish to object to the Settlement must send a written Objection to the Settlement Administrator and to the Court (since the Objections will thereafter be available to the parties on the case docket once the Objections are filed by the clerk of court). *Id.* ¶ 70. Objections must be postmarked on or before the deadline set by the Court and specified in the Class Notice, which shall be no less than 30 calendar days after the Notice Deadline. *Id.* The written Objection must include (i) the name of the proceedings; (ii) the Settlement Class Member's full name, current mailing address, and telephone number; (iii) a statement of the specific grounds for the Objection, as well as any documents supporting the Objection; (iv) a statement as to whether the Objection applies only to the objector, to a specific subset of the class, or to the entire class; (v) the identity of any attorneys representing the objector; (vi) a statement regarding whether the Settlement Class Member (or his/her attorney) intends to appear at the Final Approval Hearing; and (vii) the signature of the Settlement Class Member or the Settlement Class Member's attorney. *Id.* Subject to Court approval, any objecting Settlement Class Member may appear at the Fairness Hearing, in person or through counsel, to show cause why the proposed Settlement should not be approved as fair, adequate, and reasonable.

**F.   <u>Release of Claims</u>**

In exchange for the benefits conferred by the Settlement, all Settlement Class Members who do not timely and validly opt out of the Settlement Class will be bound

by the terms of the Settlement, including the release of the Released Parties from all claims and causes of action pleaded or that could have been pleaded that are related in any way to the activities stemming from the Data Breach. *See id.* ¶¶ 31, 32, 69, 82. The release does not extend to claims the Settlement Class Members do not know or suspect to exist in their favor at the time of executing the release and that, if known to them, would have materially affected their settlement with Aeries. *See* Cal. Civ. Code § 1542.

### G.   Attorneys' Fees and Costs and Service Award

The Settlement Agreement contemplates Class Counsel petitioning the Court for attorneys' fees and customary costs incurred by Class Counsel. Settlement Agreement at ¶¶ 14-15, 19, 86. Any approved attorneys' fees and Litigation Costs and Expenses will be paid from the Settlement Fund prior to distribution to the Settlement Class Members. *Id.* at ¶ 65. Class Counsel intends to seek a fee award of 25% of the Settlement Fund, $437,500, and will explain why this fee is warranted in a separately-filed petition for attorneys' fees and costs. *See id.* at ¶¶ 14, 86. Class Counsel will also seek to recover costs (up to $20,000) and will petition the Court for a Service Award of $2,500 to Tomes as compensation for her service, time and effort on behalf of the Settlement Class, to be deducted from the Settlement Fund. *Id.* at ¶¶ 15, 84, 86; *see also* Declaration of Melinda Tomes ("Tomes Decl."), at ¶¶ 4-5. The attorneys' fees, Litigation Costs and Expenses, and Service Award were not negotiated, and the parties have no agreement with respect to fees and expenses. Zavareei Decl. at ¶ 15. Neither final approval, nor the size of the Settlement Fund, are contingent upon approval of the full amount of requested Service Award, Litigation Costs and Expenses, and/or fees. Settlement Agreement at ¶¶ 85-86.

## IV.   ARGUMENT

### A.   The Proposed Settlement Class Should be Certified.

#### 1.   The Settlement Class Meets the Requirements of Rule 23(a).

Before assessing the parties' Settlement, the Court should first confirm that the underlying Settlement Class meets the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); Manual for

Complex Litigation, § 21.632. The prerequisites for class certification under Rule 23(a) are numerosity, commonality, typicality, and adequacy—each of which is satisfied here. Fed. R. Civ. P. 23(a).

*First*, the Settlement Class as defined meets Rule 23(a)(1)'s numerosity requirement. The class definition encompasses nearly 100,000 Settlement Class Members. The number of Settlement Class Members demonstrates that joinder is a logistical impossibility. *See, e.g., Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544, 548-49 (N.D. Cal. 2007) (numerosity is generally satisfied when a class has at least 40 members).

*Second*, the Settlement Class also satisfies the commonality requirement, which requires that Settlement Class Members' claims "depend upon a common contention … capable of classwide resolution—which means that a determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Odom v. ECA Mktg.*, No. EDCV 20-851 JGB (SHKx), 2021 U.S. Dist. LEXIS 101128, *5 (C.D. Cal. May 27, 2021) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Here, all Settlement Class Members' claims turn on whether Defendant's security environment was adequate to protect Settlement Class Members' PII. Thus, common questions include, *inter alia*, whether Aeries engaged in the wrongful conduct alleged; whether Settlement Class Members' PII was compromised in the Data Breach; whether Aeries owed a duty to Tomes and Settlement Class Members; whether Aeries breached its duties; whether Aeries unreasonably delayed in notifying Tomes and Settlement Class Members of the material facts of the Data Breach; and whether Aeries committed the common law and statutory violations alleged in the Second Amended Complaint.

*Third*, the Settlement Class satisfies the typicality requirement, as Tomes' claims are typical of Settlement Class Members because they arise from the same course of alleged conduct. *See* Fed. R. Civ. P. 23(a)(3). Tomes had PII that was stored on Aeries Hosting and was compromised in the Data Breach, and so was affected by the same inadequate data security that she alleges harmed the rest of the Settlement Class. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if

the plaintiff endured a course of conduct directed against the class.").

*Fourth*, the Settlement Class satisfies the adequacy requirement, as Tomes has and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To make this determination, "courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)); *Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310, 325 (C.D. Cal. 2015). Here, Tomes adequately represents the Settlement Class, as she has no conflicts of interest with other Settlement Class Members, is subject to no unique defenses, and she and her counsel have and continue to vigorously prosecute this case on behalf of the Settlement Class. *See* Tomes Decl. at ¶ 8; *see also* Zavareei Decl. at ¶ 16. The proposed Settlement Class is the same as the proposed class in the Second Amended Complaint. *See* ECF No. 54. Moreover, the parties believe the settlement to be "fair, adequate, and reasonable, and that it is in the best interest of members of the Settlement Class." *See* Zavareei Decl. at ¶ 17; Tomes Decl. at ¶ 6.

## 2.     The Settlement Class Meets the Requirements of Rule 23(b)(3).

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. Here, the proposed Settlement Class is maintainable under Rule 23(b)(3), as common questions predominate over any questions affecting only individual members and class resolution is superior to other available methods for a fair resolution of the controversy. *Id.* Tomes' liability case primarily depends on whether Aeries used reasonable data security to protect her PII, which can be resolved using the same evidence for all Settlement Class Members, and thus is the precise type of predominant question that makes a class-wide adjudication worthwhile.

*See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). Certification is particularly appropriate in this context because manageability considerations do not need to be considered: "the proposal is that there be no trial," and so manageability considerations have no impact on whether the proposed Settlement Class should be certified. *Amchem*, 521 U.S. at 620. There is only the predominant issue of whether Aeries properly secured the PII compromised in the Data Breach, such that Aeries' security should be improved and Settlement Class Members affected by the Data Breach provided with a remedy. As a practical matter, that issue cannot be resolved through individual trials or settlement negotiations: the amount at stake for each individual Settlement Class Member is too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. *See Just Film*, 847 F.3d at 1123. A class action is thus the superior method of adjudicating consumer claims arising from this Data Breach—just as in other data breach cases where classwide settlements have been approved. *See, e.g.*, *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 585 (N.D. Cal. 2015).

### B.   The Proposed Settlement Should be Preliminarily Approved.

Before the Settlement can be approved, the Settlement Class Members who will be bound by its terms must be notified and given an opportunity to object or otherwise react to the proposed Settlement. Fed. R. Civ. P. 23(e). This notification process takes time and can be quite expensive, so it has become customary for courts to first conduct a preliminary fairness review. *See* Newberg on Class Actions § 13:10 (5th ed.).

For the following reason, the Settlement complies with Rule 23(e)(2), the factors set forth in *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566 (9th Cir. 2004), and the requirements set forth in this Court's Order re: Notice of Settlement and Requirements re: Preliminary Approval [ECF No. 49], and should be approved.

### 1.   The Settlement is Fair, Reasonable, and Adequate Under Rule 23(e).

Rule 23(e) was amended in December 2018 to set forth specific factors to consider in determining whether a settlement is "fair, reasonable, and adequate," including:

23(e)(2)(C): [Considering whether] the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorneys' fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3).

23(e)(2)(D): the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(C)-(D). Tomes addresses each of the foregoing settlement factors and submits that they collectively weigh in favor of judicial approval.

### (a)  The Costs, Risks, and Delay of Trial and Appeal

By negotiating a Settlement at this early stage of the litigation, the parties have ensured that Settlement Class Members will receive the substantial benefits described above while avoiding the risks and potential pitfalls of prolonged litigation. While confident in the strength of their claims, Tomes and Class Counsel are also pragmatic and recognize the risks inherent in litigation of a complex data breach case. *See* Zavareei Decl. at ¶ 18. The risks, expense, complexity, and likely duration of further litigation support preliminary approval of the Settlement. *Id.* Should the case proceed in litigation, Tomes' claims could be dismissed or narrowed at the motion to dismiss stage, summary judgment, at trial, or on a subsequent appeal. Tomes also faces the risk that class certification could be denied. *Id.* Each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal—which would result in *zero* recovery for the Class. *Id.* And even if Tomes prevailed at trial, any recovery could be delayed for years by an appeal.

In contrast, the Settlement provides immediate and substantial benefits to nearly 100,000 Settlement Class Members—similar to the relief and benefits obtained in other data breach class actions—and on a much quicker timeline. *See, e.g.*, Settlement

1 Agreement, *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, No. 1:16-cv-03025-JKB (D.

2 Md.) ($3,250,000 settlement after 2.5 years where names and Social Security Numbers of

3 61,000 class members were exposed). *See* Zavareei Decl. at ¶ 21.

4    It is "plainly reasonable for the parties at this stage to agree that the actual recovery

5 realized and risks avoided here outweigh the opportunity to pursue potentially more

6 favorable results through full adjudication." *Dennis v. Kellogg Co.*, No. 09-cv-1786-

7 L(WMc), 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). "Here, as with most class

8 actions, there was risk to both sides in continuing towards trial. The settlement avoids

9 uncertainty for all parties involved." *Chester v. TJX Cos.*, No. 5:15-cv-01437-ODW(DTB),

10 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). This case is settling in its early stages;

11 if the Settlement is not approved, the parties will likely need to litigate through multiple

12 dispositive motions and a motion for class certification. Zavareei Decl. at ¶ 19. That

13 process would likely take years to resolve and involve expensive expert discovery. *Id.* Yet

14 there is no guarantee that lengthy litigation and expensive discovery would lead to greater

15 benefits for Settlement Class Members. *Id.* Instead, there would be multiple points at

16 which the Settlement Class' claims could be narrowed or dismissed. *Id.* "Regardless of

17 the risk, litigation is always expensive, and both sides would bear those costs if the

18 litigation continued." *Paz v. AG Adriano Goldschmeid, Inc.*, No. 14CV1372DMS(DHB),

19 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016).

20    The early resolution of the case, before both sides spend significant sums on

21 litigation costs, is in the best interest of the Settlement Class. Prior to filing, Class Counsel

22 engaged in investigation of the Data Breach and the potential claims that may arise

23 therefrom. Zavareei Decl. at ¶ 4. Moreover, the parties engaged in three mediation

24 sessions before an experienced mediator, and Aeries provided information about the

25 scope of the Data Breach, the number of class members, and remedial efforts undertaken

26 in the wake of the Data Breach prior to reaching the Settlement. *Id.* at ¶ 6. The parties

27 also exchanged mediation briefs, wherein they discussed the strengths and weaknesses

28 of their respective claims and defenses. *Id.* "[T]he efficiency with which the Parties were

1   able to reach an agreement need not prevent this Court from granting preliminary

2   approval." *Hillman v. Lexicon Consulting*, No. EDCV 16-01186-VAP(SPx), 2017 WL

3   10433869, at *8 (C.D. Cal. April 27, 2017). Additionally, the risk of maintaining class

4   action status through trial supports preliminary approval of the Settlement. Zavareei

5   Decl. at ¶ 18. The proposed Settlement Class has not yet been certified, and Aeries will

6   certainly oppose certification if the case proceeds. *See id.* Thus, Tomes "necessarily risk[s]

7   losing class action status." *Grimm v. Am. Eagle Airlines, Inc.*, No. LA CV 11-00406

8   JAK(MANx), 2014 WL 1274376, at *10 (C.D. Cal. Sept. 24, 2014). This factor favors

9   preliminary approval.

10                  **(b)      The Effectiveness of Any Proposed Method of**
                              **Distributing Relief to the Settlement Class**

11

12          The proposed method of distributing relief to the Settlement Class, including the

13   method of processing Settlement Class Member Claims, is highly effective. Zavareei

14   Decl. at ¶ 12. The proposed notice plan is designed to reach as many Settlement Class

15   Members as possible and is the best notice practicable under the circumstances of the

16   instant case. The federal rules require that before finally approving a class settlement,

17   "[t]he court must direct notice in a reasonable manner to all class members who would

18   be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Where the settlement class is certified

19   pursuant to Rule 23(b)(3), the notice must also be the "best notice that is practicable

20   under the circumstances, including individual notice to all members who can be identified

21   through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

22          The proposed notice plan would provide Settlement Class Members with direct

23   E-Mail notice (to the extent their e-mail addresses are available) and direct mail notice to

24   the last known address of each class member. There will also be a website that will make

25   available for download pertinent case documents, including the operative Second

26   Amended Complaint and Settlement Agreement. Tomes requests that the Court approve

27   this method of notice as the best practicable under the circumstances.

28          The proposed notice plan also adequately informs Settlement Class Members of

the Settlement and their right to object. The notice provided to class members should "clearly and concisely state in plain, easily understood language" the nature of the action; the class definition; the class claims, issues, or defenses; that the class member may appear through counsel; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members. Fed. R. Civ. P. 23(c)(2)(B). The form of notice proposed by the parties complies with those requirements. Settlement Class Members will receive an e-mail or a postcard in the mail designed to catch their attention and alert them to the Settlement and available remedies. *See* Settlement Agreement at ¶ 68. It will also direct them to the Settlement Website, where more information—including a detailed long-form notice and other case documents including the operative Second Amended Complaint and Settlement Agreement—will be made available. *See id.* The parties believe that this is the most effective way to alert the Settlement Class Members to the existence of the Settlement and convey detailed information about the Settlement approval process, and accordingly ask that the Court approve the proposed forms of notice. Zavareei Decl. at ¶ 12; *see Schaffer v. Litton Loan Servicing, LP*, No. CV 05–07673 MMM (JCx), 2012 WL 10274679, at *8 (C.D. Cal. Nov. 13, 2012) (approving similar postcard notice plan).

The opt-out, objection, and notice procedures are also effective and reasonable. Zavareei Decl. at ¶ 12. The proposed notice plan will advise Settlement Class Members of their right to opt out of, or object to, the Settlement and of the associated deadlines to opt out or object. *See* Section III.D, *supra.* Settlement Class Members who choose to opt out can exercise their rights under the Settlement by submitting a Request for Exclusion. *Id.* Any objecting Class Member may appear at the Fairness Hearing, in person or through counsel, to show cause why the proposed Settlement should not be approved as fair, adequate, and reasonable. *Id.*

The method of processing Settlement Class Members' Claims is also effective. Zavareei Decl. at ¶ 12. Each Settlement Class Member may submit a Claim for

1   reimbursement for Out-of-Pocket Losses (*i.e.*, claims for "Ordinary Losses," capped at

2   $1,000 per person, and/or "Extraordinary Losses," capped at $10,000 per person). *See*

3   Section III.B.1, *supra*. The Settlement Administrator will make cash payments, either (1)

4   mailed by Settlement Check; or (2) sent electronically. *See id.* For any Settlement Check

5   returned to the Settlement Administrator as undeliverable, the Settlement Administrator

6   shall make reasonable efforts to locate a valid address and resend the Settlement

7   Payment. *Id.* A Secondary Distribution shall be implemented *pro rata* to all Settlement

8   Class Members who had an Approved Claim, but only if a Second Distribution is

9   economically feasible. *Id.* Any uncashed checks shall be voided and the money returned

10  to the Settlement Fund for distribution as required by state law or to the Non-Profit

11  Residual Recipient. *Id.* No portion of the Settlement Fund shall revert or be repaid to

12  Defendant after the Effective Date. *Id.*

13                    **(c)    The Terms of the Proposed Award of Attorneys' Fees**

14       In examining the terms of any proposed award of attorneys' fees, courts must

15  apply the factors set forth in *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th

16  Cir. 2011) ("*Bluetooth*") to determine if collusion may have led to class members being

17  shortchanged: (1) "when counsel receives a disproportionate distribution of the

18  settlement, or when the class receives no monetary distribution but class counsel are

19  amply rewarded"; (2) "when the parties negotiate a 'clear sailing' arrangement providing

20  for the payment of attorneys' fees separate and apart from class funds, which carries 'the

21  potential of enabling a defendant to pay class counsel excessive fees and costs in

22  exchange for counsel accepting an unfair settlement on behalf of the class'"; and (3)

23  "when the parties arrange for fees not awarded to revert to defendants rather than be

24  added to the class fund." *Id.* at 947 (citations omitted). Here, the proposed award of

25  attorneys' fees complies with *Bluetooth*. The Settlement Class is receiving a substantial

26  monetary distribution (*i.e.*, $1,750,000), and Class Counsel will request a fee of 25% of

27  the Settlement Fund, which is consistent with the Ninth Circuit's benchmark and not a

28  disproportionate distribution of the Settlement. Settlement Agreement at ¶ 86.

Furthermore, the parties have not negotiated a "clear sailing" arrangement, and have agreed that any remaining monies in the Settlement Fund after all payments have been made shall be distributed as required by state law or to EFF (not Aeries). *Id.* at ¶ 61.

Here, the Settlement was reached in the absence of collusion and is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and the legal and factual issues in this Action. Zavareei Decl. at ¶ 5; *see also* Warshaw Decl. The parties engaged in three mediation sessions before an experienced mediator, Mr. Quinn, before reaching the Settlement. Zavareei Decl. at ¶ 5. Prior to the first mediation, Aeries provided Individual Plaintiffs with information regarding the Data Breach. *Id.* at ¶ 6. The parties also exchanged lengthy mediation briefs wherein they discussed the strengths and weaknesses of their respective claims and defenses. *Id.* This exchange of information, and the guidance of Mr. Quinn, allowed the parties to reach an agreement in principle as to the material terms of the Settlement after the second mediation. *Id.* at ¶ 7. After Tomes was added as a substitute Class Representative to this action, the parties continued their settlement discussions as they finalized the terms of the Settlement, including a final mediation session with her participation. *Id.* at ¶ 8. The parties' vigorous negotiation of the claims with the help of Mr. Quinn evidences an absence of collusion and the presence of fairness and good faith. *See, e.g.*, *In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 450 (C.D. Cal. 2014) (presumption of fairness applies when class settlement is negotiated at arm's-length by class counsel); *Adams v. Inter-Con Sec. Sys. Inc.*, No. C-06-05248-MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

### 2.     <u>The Settlement Treats Settlement Class Members Equitably.</u>

The Settlement provides for a notice plan that is designed to reach as many Settlement Class Members as possible and provides Settlement Class Members with direct E-Mail or mail notice of the Settlement. *See* Section IV.B.1(b), *supra*. It also informs

1   Settlement Class Members of their right to object to, or opt out of, the Settlement. Each

2   Settlement Class Member can submit a claim for out-of-pocket expenses and lost time.

3   Thus, the Settlement treats Settlement Class Members equitably relative to each other.

### 3.   The Settlement is Within a Range of Possible Judicial Approval.

6        The terms of the Settlement are fair. It treats Settlement Class Members equitably

7   relative to each other. *See* IV.B.2., *supra.* It also provides immediate and substantial

8   benefits to nearly 100,000 Settlement Class Members, like that obtained in other data

9   breach class actions, but on a quicker timeline. *See* IV.B.1(a), *supra.* Moreover, in the view

10   of Class Counsel (who are experienced in class action litigation, including data breach

11   and consumer privacy cases), this Settlement is an outstanding recovery for the

12   Settlement Class. Zavareei Decl. at ¶¶ 3, 17; *see also* Warshaw Decl. at ¶ 13. Based on

13   Class Counsel's experience, counsel for Aeries is also experienced and sophisticated.

14   Zavareei Decl. at ¶ 22. A great deal of weight is accorded to the recommendation of

15   counsel, who are most closely acquainted with the facts of the underlying litigation. *See,*

16   *e.g., Norton v. Maximus, Inc.*, No. CV 1:14-0030 WBS, 2017 WL 1424636, at *6 (D. Idaho

17   Apr. 17, 2017); *Nat'l Rural Telecomms. Coop. v. DIRECTV*, 221 F.R.D. 523, 528 (C.D. Cal.

18   2004).

19        The anticipated class recovery also supports preliminary approval. "In assessing

20   the consideration obtained by the class members in a class action settlement, it is the

21   complete package taken as a whole, rather than the individual component parts, that

22   must be examined for overall fairness." *Norton*, 2017 WL 1424636, at *5 (quotation marks

23   and citation omitted). The Settlement Fund of $1,750,000 allows for reimbursement of

24   up to $1,000 in out-of-pocket expenses, including lost time of up to 40 hours at

25   $25/hour, up to $10,000 in documented extraordinary losses, and a residual cash

26   payment. The Settlement also provides for a year of credit monitoring and assurances

27   from Aeries that it has implemented changes to its data security practices and procedures.

28   This Settlement is a strong result for the Settlement Class and in line with other data

1    breach settlements of similar scope. *See, e.g.*, *Fox v. Iowa Health System*, No. 3:18-cv-00327-
2    jdp, 2020 U.S. Dist. LEXIS 177466 (W.D. Wis.) (defendant agreed to pay up to $1,000
3    in attested out-of-pocket expenses and lost time up to 3 hours at $15/hour; up to $6,000
4    in document expenses; credit monitoring; and business practice changes); *see also* Zavareei
5    Decl. at ¶ 17. Because the amount of the Settlement is similar to other settlements
6    reached and approved in similar cases (when taking into account the size of the class),
7    this factor reflects that the Settlement is fair. *See Calderon v. Wolf Firm*, No. SACV 16-
8    1622-JLS(KESx), 2018 WL 6843723, at *7-8 (C.D. Cal. Mar. 13, 2018) (comparing class
9    settlement with other settlements in similar cases). Considering the difficulties and
10   expenses Settlement Class Members would face to pursue individual claims, and the
11   likelihood that they might be unaware of their claims, the amount of the Settlement is
12   appropriate.

13          The Settlement will also allow Settlement Class Members to recover essentially the
14   same amounts as if they had fully prevailed on each of the claims that are the subject of
15   the Settlement. Settlement Class Members are at risk of having their identities stolen until
16   such time that Settlement Class Members receive credit monitoring services, which they
17   will receive under the Settlement. Participating Settlement Class Members will also
18   receive 100% of their out-of-pocket losses, up to $10,0000. The amount of the Settlement
19   Fund is based on various factors, including: the nature of the Data Breach, including the
20   unique risk faced by individuals with accounts through the SDUHSD; the lack of
21   evidence that the accessed information was exfiltrated (*i.e.*, dumped on the dark web);
22   the timing of the Settlement in the case's early stages; Aeries' willingness to make
23   immediate changes to its data security measures and to offer credit monitoring services;
24   the benefits to Settlement Class Members in comparison to other data breach cases; and
25   Aeries' insurance coverage. These factors all support preliminary approval of the
26   Settlement.

27              **4.       Notice Will be Provided Under CAFA.**

28          Pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, Aeries will provide

1  notice of the proposed Settlement to the U.S. Attorney General, including all required
2  materials, so that the federal government may make an independent evaluation of the
3  Settlement and bring any concerns to the Court's attention prior to final approval.

4        **C.**      <u>**The Court Should Appoint the Settlement Administrator.**</u>

5        The parties respectfully request the Court to appoint JND to serve as Settlement
6  Administrator. JND has over 80 years of collective experience in law and administration.
7  JND Decl. at ¶ 5. It has experience serving as a settlement administrator in many large
8  and complex class action lawsuits, including in other data breach lawsuits in which it
9  handled similar duties with respect to assisting class members avail themselves of credit
10  monitoring services, and resolving claims for out-of-pocket expenses. *Id.* at ¶ 6. JND was
11  selected after the parties retained bids from multiple administrators and determined that
12  engaging JND was in the best interests of the Settlement Class. Zavareei Decl. at ¶ 14.
13  The cost of notice and claims administration (an estimated $139,216.00) will be drawn
14  from the Settlement Fund. *See* Settlement Agreement at ¶ 65.

15        **D.**      <u>**The Court Should Schedule a Final Approval Hearing.**</u>

16        A key advantage of early resolution is the ability of Settlement Class Members to
17  receive the benefits of the Settlement in short order. Also, for Settlement Class Members
18  who opt-in to credit monitoring services, time is of the essence to ensure they do not
19  unknowingly become victims of identity theft while waiting for approval of the
20  Settlement. To that end, the Court to schedule a Preliminary Approval Hearing as soon
21  as possible and schedule a Final Approval Hearing as soon as the Court deems
22  appropriate after entry of the Preliminary Approval Order.

23  **V.**      <u>**CONCLUSION**</u>

24        For the foregoing reasons, Tomes requests that the Court preliminarily approve
25  the Settlement, enter the Preliminary Approval Order, appoint her as Class
26  Representative, appoint Daniel L. Warshaw of Pearson, Simon & Warshaw, LLP, and
27  Hassan A. Zavareei of Tycko & Zavareei LLP as Class Counsel, direct that the Notice
28  Plan be implemented, and schedule a Final Approval Hearing.

Dated:      June 14, 2021                    Respectfully submitted,

*/s/ Daniel L. Warshaw*
Daniel L. Warshaw (CA Bar No. 185365)
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104
Email: dwarshaw@pswlaw.com

Hassan A. Zavareei (CA Bar No. 181547)
**TYCKO & ZAVAREEI LLP**
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
Email: hzavareei@tzlegal.com
mclifford@tzlegal.com

*Counsel for Plaintiffs and the Proposed Class*