1
2
3
4
5
6                    **UNITED STATES DISTRICT COURT**

7                    **CENTRAL DISTRICT OF CALIFORNIA**

8

9   ANURAG GUPTA, et al., individually and          Case No. SA CV 20-0995 FMO (ADSx)
    on behalf of all others similarly situated,

10                                              )
                                                )   **ORDER RE: MOTION FOR PRELIMINARY**
11              Plaintiff,                       )   **APPROVAL OF CLASS ACTION**
                                                )   **SETTLEMENT**
        v.                                      )
12                                              )
    AERIES SOFTWARE, INC.,                      )
13                                              )
                Defendant.                       )
14  _____         )

15        Having reviewed and considered all the briefing filed with respect to plaintiff's Renewed

16  Motion for Preliminary Approval of Class Action Settlement (Dkt. 76, "Motion"), and the oral

17  argument presented at the hearing on October 14, 2021, the court concludes as follows.

18                              **BACKGROUND**

19        On May 28, 2020, Anurag Gupta ("Gupta"), individually and behalf of his minor children

20  D.G. and V.G. ("Gupta Plaintiffs") filed a class action against defendant Aeries Software, Inc.

21  ("defendant" or "Aeries"), asserting claims for: (1) negligence; (2) negligence per se; (3)

22  declaratory judgment; (4) breach of confidence; (5) breach of contract; (6) intrusion upon

23  seclusion; (7) violations of California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code §§

24  17200, et seq.; (8) violation of the California Customer Records Act, Cal. Civ. Code §§ 1798.80,

25  et seq.; and (9) violation of the California Consumer Privacy Act, Cal. Civ. Code §§ 1798.100, et

26  seq.  (See Dkt. 1, Complaint at ¶¶ 97-187).  After defendant filed a motion to dismiss, the Gupta

27  Plaintiffs filed a First Amended Complaint ("FAC"), asserting the same claims with the exception

28  of the negligence per se and intrusion upon seclusion claims.  (See Dkt. 26, FAC at ¶¶ 101-178).

On June 9, 2021, the Gupta Plaintiffs, in their individual capacities, and newly added plaintiff, Melinda Tomes ("Tomes" or "plaintiff"), filed the operative Second Amended Complaint ("SAC").[1] (Dkt. 54).

The claims arise from a data breach at ABC Unified School District ("ABC") and the San Dieguito Union High School District ("SDUHSD"), which are two of the school districts that use defendant's Aeries School Information System ("Aeries SIS") to manage student data. (Dkt. 54, SAC at ¶ 1). In January 2020, defendant learned that the local database of one of its school district clients was subjected to unauthorized access. (Id. at ¶ 3). That database stored the personal information of students as well as their parents and guardians. (Id.). Aeries admitted that the 166 databases hosted on Aeries' servers were subjected to unauthorized access beginning on approximately November 4, 2019 ("the Data Breach"). (Id. at ¶ 4).

Plaintiff alleges that Aeries did not notify its school district customers of the Data Breach until April 27, 2020, when it issued a Notice of Data Breach to its school district customers, (Dkt. 54, SAC at ¶ 5), and even then, it did not disclose all the information that was subject to the Data Breach, such as students' health care records, social security numbers, grades and standardized test information, along with credit and debit card and other financial information ("PII") belonging to parents and guardians. (Id. at ¶ 7). In mid-May, more than two weeks after defendant sent the Notice of Data Breach, ABC and SDUHSD provided notice of the breach to parents and guardians of children attending their schools. (See id. at ¶¶ 8-9).

D.G. and V.G. are the minor children of Gupta, and attended a school in the ABC school district at the time of the Data Breach. (Dkt. 54, SAC at ¶ 14). Tomes's children were students in the SDUHSD at the time of the Data Breach. (Id. at ¶¶ 1, 16). The SAC alleges that "Aeries is responsible for allowing the Data Breach to occur because it failed to implement and maintain any reasonable safeguards and failed to comply with industry-standard data security practices[.]" (Id. at ¶ 12). As a result of the breach, "Plaintiffs and class members have been exposed to and/or

---

[1]   The Gupta Plaintiffs settled their claims individually, leaving Tomes as the remaining class representative. (Dkt. 76, Motion at 5).

are at a significant risk of identity theft, financial fraud, and other identity-related fraud into the indefinite future." (Id. at ¶ 13).

On September 21, 2020, the court granted the parties' stipulation to stay the action for purposes of "early resolution via mediation[.]" (See Dkt. 29, Joint Stipulation to Stay Litigation); (Dkt. 30, Court's Order of September 21, 2020). The court subsequently granted four additional stipulations to stay this action. (See Dkt. 36, Court's Order of November 5, 2020); (Dkt. 40, Court's Order of November 24, 2020); (Dkt. 44, Court's Order of January 6, 2021); (Dkt. 46, Court's Order of February 11, 2021). On April 2, 2021, a Notice of Settlement was filed. (Dkt. 48). After the court denied the initial motion for preliminary approval, (see Dkt. 72, Court's Order of October 14, 2021), plaintiff filed the instant Motion. (Dkt. 76, Motion).

The parties have defined the settlement class as: "[A]ll individuals in the United States who had an Aeries account through the San Dieguito Union [High] School District at the time of the Data Breach." (Dkt. 76-1, Settlement Agreement and Release ("Settlement Agreement") at ¶ 38).[2] The settlement class consists of approximately 98,199 individuals, (Dkt. 76, Motion at 6), and expressly excludes plaintiffs in a state court action filed in the San Diego County Superior Court, Case No. 37-2020-00040868. (Dkt. 76-1, Settlement Agreement at ¶ 40).

Pursuant to the settlement, defendant will pay a nonreversionary settlement amount of $1,750,000, (Dkt. 76-1, Settlement Agreement at ¶¶ 42, 46-47), which will be used to pay class members, the class representative's service payment, notice and administrative costs, taxes and

---

[2] Although the Settlement Agreement defines the settlement class in terms of the "San Dieguito Union School District" (Dkt. 76-1, Settlement Agreement at ¶ 38); (see also id. at ¶ 39) (referring to settlement class list based on information provided by the "San Dieguito Union School District"), the SAC refers to the San Dieguito Union High School District in the class definition. (See Dkt. 54, SAC at ¶ 89). The Settlement Agreement also, at times, refers to the San Dieguito Union High School District. (See Dkt. 76-1, Settlement Agreement at ¶¶ 12, 33). Because the San Dieguito Union High School District definition is consistent with the parties' abbreviation of "SDUHSD" the court assumes that it is the correct entity. To the extent the court's assumption is correct, the class notice and related forms shall be revised to consistently refer to the correct entity. (See, e.g., id., Exh. A (Claim Form) at 1 (referring to San Dieguito Union School District); (id., Exh. B (Postcard Notice) at 1 (same)); (id. at 2) (referring to San Dieguito Union High School District); (id., Exh. C (Email Notice) at 1 (referring to San Dieguito Union School District)); (id.) (referring on same page to San Dieguito Union High School District). To the extent it is not, the parties shall inform the court prior to disseminating class notice.

tax-related expenses,[3] and attorney's fees and costs.  (Id. at ¶¶ 20, 42); (Dkt. 76, Motion at 6). The settlement provides for up to 25% of the gross settlement amount ($437,500) in attorney's fees, (Dkt. 76-1, Settlement Agreement at ¶ 87); costs not to exceed $20,000, (id.); and a service award of $2,500 for Tomes.  (Id. at ¶ 85).  The proposed settlement administrator, JND Legal Administration ("JND"), shall be paid no more than $250,000.  (Dkt. 76, Motion at 9).

Monetary relief to class members consists of reimbursement for Out-of-Pocket Losses and Attested Time, and if any funds remain following such payments, pro rata cash payments "subject to an individual aggregate cap of $10,000 for total payments[.]" (Dkt. 76-1, Settlement Agreement at ¶¶ 43, 52, 58); (Dkt. 76, Motion at 6-7).  Settlement class members may submit a claim for Out-of-Pocket Losses consisting of "Ordinary Losses" and/or "Extraordinary Losses."[4]  (Dkt. 76-1, Settlement Agreement at ¶ 52).  Compensation for Ordinary Losses will provide payment for "unreimbursed losses, up to a total of $1,000.00 per person, upon submission of a valid and timely Claim and supporting documentation[.]"  (Id. at ¶ 52(a)).  Ordinary Losses include (1)  "Out of pocket expenses incurred as a result of the Data Breach, including bank fees, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, or gasoline for local travel;" (2) "[f]ees for additional credit reports, credit monitoring, or other identity theft insurance products purchased between November 4, 2019, and the date of the Preliminary Approval Order;" and (3) "[u]p to 40 hours of Attested Time, at $25/hour, if at least one full hour was spent dealing with the Data Breach.  For Attested Time, a sworn attestation detailing how the time was spent shall constitute 'supporting documentation.'"  (Id.) (footnote omitted).

Compensation for Extraordinary Losses will provide "up to $10,000.00 in compensation to each Settlement Class Member, upon submission of a valid and timely Claim and supporting

---

[3]  "Taxes and tax-related expenses" pertain to taxes the settlement administrator will have to pay on interest earned on the settlement fund after defendant transfers the $1,750,000 to the settlement administrator but prior to the distribution of monetary relief to the class members.  (Dkt. 75, Motion at 6).

[4]  Claims will be subject to review for completeness and plausibility by the settlement administrator.  (Dkt. 76-1, Settlement Agreement at ¶ 52).

documentation, for proven monetary loss including, inter alia, losses arising from financial fraud or identity theft if:" (1) "[t]he loss is an actual, documented, and unreimbursed monetary loss that has not been compensated for by a third party (such as a bank or credit card company);" (2) "[t]he loss is attributable to the Data Breach;" (3) [t]he loss is not already covered by one or more of the normal reimbursement categories;" and (4) "[t]he settlement class member made reasonable efforts to avoid, mitigate, or seek reimbursement for, the loss." (Dkt. 76-1, Settlement Agreement at ¶ 52(b)).

Any remaining funds will be used to make "an additional cash payment . . . to each Participating Settlement Class Member to be calculated by dividing the Remaining Funds by the number of Participating Settlement Class Members, subject to an individual aggregate cap of $10,000 for total payments under the Settlement." (Dkt. 76-1, Settlement Agreement at ¶ 58). However, if total claims exceed the net settlement fund, the claim of each class member will be reduced on a pro rata basis.[5]  (Id. at ¶ 65).

In addition to payment from the settlement fund, defendant shall offer settlement class members 12 months of "Credit Monitoring Services at no cost, regardless of whether the Settlement Class Member submits a claim for Ordinary Losses or Extraordinary Losses." (Dkt. 76-1, Settlement Agreement at ¶ 56).  The Credit Monitoring Services "will include daily credit monitoring of the Settlement Class Member's credit file at one of the three credit reporting agencies; a $1 million identity theft insurance policy; Identity Restoration Services ('Credit Monitoring and Identity Restoration Services')." (Id.).  Credit Monitoring and Identity Restoration Services will be "provided on an opt-in basis (i.e., Settlement Class Members must apply for the

---

[5] "[P]ro rata reduction shall occur in the following order:  first, each Settlement Class Member's payment for Attested Time shall be reduced pro rata such that no Settlement Class Member's payment for Attested Time shall be reduced below $20.00; second, if after the first pro rata reduction, the balance of the Net Settlement Fund is still insufficient to pay the remaining Claims, then a second pro rata reduction shall be made to Settlement Class Members' claims for Out-of-Pocket Losses such that no Settlement Class Member's payment for Out-of-Pocket Losses shall be reduced more than 50%; and third, if after the second pro rata reduction the balance of the Net Settlement Fund is still insufficient to pay the remaining Claims, then all Claims shall be reduced proportionally." (Dkt. 76-1, Settlement Agreement at ¶ 65).

1   services to receive them)."  (Id.); (see id., Exh. A (Claim Form) at 2).  Class counsel estimates that

2   the retail value of such services is approximately $70 to $120 per class member.  (Dkt. 76-1,

3   Zavareei Decl. at ¶ 14); (Dkt. 76, Motion at 9).

4          Defendant also represents that in response to the Data Breach, "it has employed

5   information security enhancements including external review of security controls, implemented

6   whitelisting and multifactor authentication where possible for third party system access;

7   provisioned for free identity protection services for those impacted; increased training of all Aeries

8   team members regarding cybersecurity; reviewed security posture and updated risk assessments

9   for all Aeries vendors and implemented additional controls upon them, where possible; and

10   increased staff in the following areas: Vendor Management, Audit and Compliance."  (Dkt. 76-1,

11   Settlement Agreement at ¶ 67).  According to class counsel, defendant has estimated these

12   measures will cost $50,000.  (Dkt. 76-1, Zavareei Decl. at ¶ 12).

13          In her Motion, plaintiff seeks an order:  (1) preliminarily approving the proposed settlement;

14   (2) certifying the proposed settlement class; (3) appointing Tomes as the class representative (4)

15   appointing Hassan A. Zavareei (Zavareei") and Daniel L. Warshaw ("Warshaw") as Class Counsel

16   on behalf of their firms; (5) appointing JND as settlement administrator; (6) approving and ordering

17   dissemination of the proposed class notice; and (7) scheduling a final approval hearing.  (See Dkt.

18   76, Motion at 1).

19                                  **LEGAL STANDARDS**

20   I.   CLASS CERTIFICATION.

21          At the preliminary approval stage, the court "may make either a preliminary determination

22   that the proposed class action satisfies the criteria set out in Rule 23 . . . or render a final decision

23   as to the appropriateness of class certification."[6]  Smith v. Wm. Wrigley Jr. Co., 2010 WL 2401149,

24   *3 (S.D. Fla. 2010) (citation and footnote omitted); see also Sandoval v. Roadlink USA Pac., Inc.,

25   2011 WL 5443777, *2 (C.D. Cal. 2011) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620,

26   117 S.Ct. 2231, 2248 (1997) ("Amchem")) ("Parties seeking class certification for settlement

27

28          [6]  All "Rule" references are to the Federal Rules of Civil Procedure.

purposes must satisfy the requirements of Federal Rule of Civil Procedure 23[.]").   In the settlement context, a court must pay "undiluted, even heightened, attention" to class certification requirements.   Amchem, 521 U.S. at 620, 117 S.Ct. at 2248; In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig., 895 F.3d 597, 606 (9th Cir. 2018) (same).   "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold."   Amchem, 521 U.S. at 620, 117 S.Ct. at 2248.

A party seeking class certification must first demonstrate that:   "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."   Fed. R. Civ. P. 23(a).   Courts refer to these requirements by the following shorthand: "numerosity, commonality, typicality and adequacy of representation[.]"   Mazza v. Am. Honda Motor Co., 666 F.3d 581, 588 (9th Cir. 2012), overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC, 31 F.4th 651 (9th Cir. 2022) (en banc) ("Olean Wholesale").   In addition to fulfilling the four prongs of Rule 23(a), the proposed class must meet at least one of the three requirements listed in Rule 23(b).[7]   See Wal-Mart Stores, Inc. v. Dukes,

---

[7]   Rule 23(b) is satisfied if:

(1) prosecuting separate actions by or against individual class members would create a risk of:
    (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
    (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the

1   564 U.S. 338, 345, 131 S.Ct. 2541, 2548 (2011) ("Dukes").

2   "Before it can certify a class, a district court must be satisfied, after a rigorous analysis, that

3   the prerequisites of both Rule 23(a) and" the applicable Rule 23(b) provision have been satisfied.

4   Olean Wholesale, 31 F.4th at 664 (internal quotation marks omitted).  A plaintiff "must prove the

5   facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied

6   by a preponderance of the evidence."  Id. at 665.  However, courts need not consider the Rule

7   23(b)(3) issues regarding manageability are "not a concern in certifying a settlement class where,

8   by definition, there will be no trial."  In re Hyundai and Kia Fuel Econ. Litig., 926 F.3d 539, 556-57

9   (9th Cir. 2019) (en banc) ("In re Hyundai").

10  II.    FAIRNESS OF CLASS ACTION SETTLEMENT.

11          Rule 23 provides that "[t]he claims, issues, or defenses of a certified class – or a class

12  proposed to be certified for purposes of settlement – may be settled . . . only with the court's

13  approval."  Fed. R. Civ. P. 23(e).  "The primary concern of [Rule 23(e)] is the protection of th[e]

14  class members, including the named plaintiffs, whose rights may not have been given due regard

15  by the negotiating parties."  Officers for Just. v. Civ. Serv. Comm'n of the City & Cty. of S.F., 688

16  F.2d 615, 624 (9th Cir. 1982).  Whether to approve a class action settlement is "committed to the

17  sound discretion of the trial judge."  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th

18  Cir. 1992) (internal quotation marks omitted).

19          Approval of a class action settlement requires a two-step process – preliminary approval

20  and the dissemination of notice to the class, followed by a later final approval.  See Spann v. J.C.

21  Penney Corp., 314 F.R.D. 312, 319 (C.D. Cal. 2016).  Although "[c]loser scrutiny is reserved for

22  _____

23          controversy.  The matters pertinent to these findings include:
                    (A) the class members' interests in individually controlling the prosecution or

24                  defense of separate actions;
                    (B) the extent and nature of any litigation concerning the controversy already

25                  begun by or against class members;
                    (C) the desirability or undesirability of concentrating the litigation of the claims

26                  in the particular forum; and
                    (D) the likely difficulties in managing a class action.

27

28  Fed. R. Civ. P. 23(b)(1)-(3).

the final approval hearing[,]" Harris v. Vector Mktg. Corp., 2011 WL 1627973, *7 (N.D. Cal. 2011), "the showing at the preliminary approval stage – given the amount of time, money, and resources involved in, for example, sending out . . . class notice[] – should be good enough for final approval." Spann, 314 F.R.D. at 319; see 4 Newberg on Class Actions § 13:10 (5th ed.) (Supp. 2021) ("[S]ending notice to the class costs money and triggers the need for class members to consider the settlement, actions which are wasteful if the proposed settlement [is] obviously deficient from the outset."). The court may grant preliminary approval and direct notice in a reasonable manner to all class members who would be bound by the settlement if the parties provide sufficient information to the court to show that the court will likely be able to: (1) "approve the proposal under Rule 23(e)(2)"; and (2) "certify the class for purposes of judgment on the [settlement] proposal." Fed. R. Civ. P. 23(e)(1)(B); see Macy v. GC Servs. Ltd. P'ship, 2019 WL 6684522, *1 (W.D. Ky. 2019) ("The standard for preliminary approval was codified in 2018, with Rule 23 now providing for notice to the class upon the parties showing that the court will likely be able to approve the proposed settlement under the final-approval standard contained in Rule 23(e)(2)."); 4 Newberg on Class Actions § 13:10 (5th ed.) ("In 2018, Congress codified this approach into Rule 23. Rule 23(e)(1)(B) now sets forth the grounds for the initial decision to send notice of a proposed settlement to the class[.]").

"At this stage, the court may grant preliminary approval of a settlement and direct notice to the class if the settlement:  (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." Spann, 314 F.R.D. at 319 (internal quotation marks omitted); see Bronson v. Samsung Elecs. Am., Inc., 2019 WL 5684526, *7 (N.D. Cal. 2019) ("Preliminary approval is appropriate if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.") (internal quotation marks omitted); see also 2018 Adv. Comm. Notes to Amendments to Rule 23(e)(1) (The types of information that should be provided to the court in deciding whether to send notice – i.e.,

that it will likely approve the settlement under Rule 23(e)(2) and certify the class for purposes of settlement – "depend on the specifics of the particular class action and proposed settlement." "[G]eneral observations" as to the types of information that should be provided include, but are not limited to, the following:  (1) "the extent and type of benefits that the settlement will confer on the members of the class" and if "funds are . . . left unclaimed, the settlement agreement ordinarily should address the distribution of those funds"; (2) "information about the likely range of litigated outcomes, and about the risks that might attend full litigation"; (3) "[i]nformation about the extent of discovery completed in the litigation or in parallel actions"; (4) "information about the existence of other pending or anticipated litigation on behalf of class members involving claims that would be released under the proposal"; (5) "the proposed handling of an award of attorney's fees under Rule 23(h)"; (6) "any agreement that must be identified under Rule 23(e)(3)"; and (7) "any other topic that [the parties] regard as pertinent to the determination whether the proposal is fair, reasonable, and adequate.").

## DISCUSSION

I.    CLASS CERTIFICATION.

      A.    <u>Rule 23(a) Requirements</u>.

            1.    **Numerosity**.

A putative class may be certified only if it "is so numerous that joinder of all members is impracticable[.]"  Fed. R. Civ. P. 23(a)(1).  "Although the size of the class is not the sole determining factor, . . . where a class is large in numbers, joinder will usually be impracticable." <u>A.B. v. Hawaii State Dep't of Educ.</u>, 30 F.4th 828, 835 (9th Cir. 2022) (internal quotation marks omitted); <u>see</u> <u>Jordan v. Cty. of Los Angeles</u>, 669 F.2d 1311, 1319 (9th Cir.), <u>vacated</u> <u>on</u> <u>other</u> <u>grounds by Cty. of Los Angeles v. Jordan</u>, 459 U.S. 810, 103 S.Ct. 35 (1982) (class sizes of 39, 64, and 71 are sufficient to satisfy the numerosity requirement).  "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members[.]"  <u>Slaven v. BP Am., Inc.</u>, 190 F.R.D. 649, 654 (C.D. Cal. 2000); <u>see</u> <u>Tait v. BSH Home Appliances Corp.</u>, 289 F.R.D. 466, 473-74 (C.D. Cal. 2012) (same).

      Here, the class is so numerous that joinder is impracticable.  The settlement class includes

approximately 98,910 members, (see Dkt. 76, Motion at 14), which easily exceeds the minimum threshold for numerosity.

          2.    **Commonality**.

The commonality requirement is satisfied if "there are questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2).  Proof of commonality under Rule 23(a) is "less rigorous" than the related preponderance standard under Rule 23(b)(3).  See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998), overruled on other grounds as recognized by Castillo v. Bank of Am., NA, 980 F.3d 723 (9th Cir. 2020); Mazza, 666 F.3d at 589.  Commonality requires plaintiffs to demonstrate that their claims "depend upon a common contention . . . [whose] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 564 U.S. at 350, 131 S.Ct. at 2551; see Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1172 (9th Cir. 2010) (The commonality requirement demands that "class members' situations share a common issue of law or fact, and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief.") (internal quotation marks omitted).  "The plaintiff must demonstrate the capacity of classwide proceedings to generate common answers to common questions of law or fact that are apt to drive the resolution of the litigation." Mazza, 666 F.3d at 588 (internal quotation marks omitted).  "This does not, however, mean that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single significant question of law or fact." Abdullah v.  U.S. Sec. Assocs., Inc., 731 F.3d 952, 957 (9th Cir. 2013) (emphasis and internal quotation marks omitted); see Mazza, 666 F.3d at 589 (characterizing commonality as a "limited burden[,]" stating that it "only requires a single significant question of law or fact"). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Hanlon, 150 F.3d at 1019.

This case involves common class-wide questions that are apt to drive the resolution of this litigation.  Here, the class claims turn on whether defendant's data security measures were adequate to protect class members PII.  (See Dkt. 76, Motion at 14). Common questions include whether Aeries engaged in the conduct alleged and whether class members' PII was

compromised in the Data Breach.[8]  See, e.g., In re Yahoo! Inc. Customer Data Security Breach Litig., 2020 WL 4212811, *3 (N.D. Cal. 2020) ("[W]hether Yahoo employed sufficient security measures to protect the Settlement Class Members' Personal Information from the Data Breaches lies at the heart of every claim.  Related factual questions about whether Yahoo knew that its data security was inadequate and whether Yahoo timely disclosed and adequately responded to the Data Breaches also apply uniformly across the entire Settlement Class.").  Under the circumstances, the court finds that plaintiff has satisfied the commonality requirement.

### 3.  **Typicality**.

"Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought."  Ellis v. Costco Wholesale Corp., 657 F.3d 970, 984 (9th Cir. 2011) (internal quotation marks omitted).  To demonstrate typicality, plaintiff's claims must be "reasonably co-extensive with those of absent class members[,]" although "they need not be substantially identical." Hanlon, 150 F.3d at 1020; see Ellis, 657 F.3d at 984 ("Plaintiffs must show that the named parties' claims are typical of the class.").  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  Ellis, 657 F.3d at 984 (internal quotation marks omitted).

Here, plaintiff's claims and the claims of the class arise from and are based on the same factual basis and legal theories, i.e., that Aeries's allegedly inadequate data security caused plaintiff's and class members PII to be compromised.  (See Dkt. 54, SAC); (Dkt. 76, Motion at 15).  Finally, the court is not aware of any facts that would subject the class representative "to unique defenses which threaten to become the focus of the litigation." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).  In short, plaintiff has satisfied the typicality requirement.

### 4.  **Adequacy of Representation**.

"The named Plaintiffs must fairly and adequately protect the interests of the class."  Ellis,

---

[8]  The court addresses specific common questions in connection with predominance below.

657 F.3d at 985 (citing Fed. R. Civ. P. 23(a)(4)).  "To determine whether [the] named plaintiffs will adequately represent a class, courts must resolve two questions:  (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  Id. (internal quotation marks omitted).  "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees."  Id.

Here, the proposed class representative, who has no individual claims separate from the class claims, (see, generally, Dkt. 51, SAC), does not appear to have any conflicts of interest with the absent class members.  (See Dkt. 76, Motion at 15); (Dkt. 76-3, Declaration of Melinda Tomes [] ("Tomes Decl.") at ¶ 8); (Dkt. 76-1, Zavareei Decl. at ¶ 19) (representing that he is unaware of any conflicts of interest that plaintiff has with absent class members); Barbosa v. Cargill Meat Sols. Corp, 297 F.R.D. 431, 442 (E.D. Cal. 2013) ("[T]here is no apparent conflict of interest between the named Plaintiffs' claims and those of the other Class Members' – particularly because the named Plaintiffs have no separate and individual claims apart from the Class.").  Moreover, Tomes states that she will "continue to vigorously prosecute this case on behalf of the" settlement class.  (Dkt. 76-3, Tomes Decl. at ¶ 8).  In short, plaintiff has satisfied the adequacy-of-representation requirement.

Finally, as noted earlier, adequacy "also factors in competency and conflicts of class counsel."  Amchem, 521 U.S. at 626 n. 20, 117 S.Ct. at 2251 n. 20.  Here, plaintiff requests that the court appoint Zavareei and Warshaw as class counsel.  (Dkt. 76, Motion at 1); (Dkt. 76-1, Settlement Agreement at ¶ 9) (defining class counsel).  Having reviewed the declarations of proposed class counsel, (see Dkt. 76-1, Zavareei Decl. at ¶¶ 1-3); (id., Exh. 2 (Tycko & Zavareei firm resume)); (Dkt. 76-2, Declaration of Daniel L. Warshaw in Support of Renewed Motion for Preliminary Approval [] ("Warshaw Decl.") at ¶¶ 4-12); (id., Exh. A (Pearson, Simon & Warhshaw, LLP firm resume)), the court finds that plaintiff's counsel are competent, and there are no issues as to the adequacy of representation.  See Barbosa, 297 F.R.D. at 443 ("There is no challenge to the competency of the Class Counsel, and the Court finds that Plaintiffs are represented by

experienced and competent counsel who have litigated numerous class action cases.").

B.    Rule 23(b) Requirements.

Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can be served best by settling their differences in a single action." Hanlon, 150 F.3d at 1022 (internal quotation marks omitted). The rule requires two different inquiries, specifically a determination as to whether: (1) "questions of law or fact common to class members predominate over any questions affecting only individual members[;]" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

1.    **Predominance**.

"[T]he general rule [is] that predominance is easier to satisfy in the settlement context." Jabbari v. Farmer, 965 F.3d 1001, 1006 (9th Cir. 2020). "To determine whether a class satisfies the [predominance] requirement, a court pragmatically compares the quality and import of common questions to that of individual questions." Id. at 1005. "[T]he predominance analysis under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation." Abdullah, 731 F.3d at 964 (internal quotation marks omitted); see Amchem, 521 U.S. at 623, 117 S.Ct. at 2249 ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."). "If a common question will drive the resolution [of the litigation], even if there are important questions affecting only individual members, then the class is sufficiently cohesive to warrant adjudication by representation." Jabbari, 965 F.3d at 1005 (internal quotation marks omitted); see Abdullah, 731 F.3d at 964 ("Rule 23(b)(3) requires [only] a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class.") (internal quotation marks omitted; brackets in original). Finally, the class damages must be sufficiently traceable to plaintiffs' liability case. See Comcast Corp. v. Behrend, 569 U.S. 27, 35, 133 S.Ct. 1426, 1433 (2013).

Here, plaintiff has shown that there is a question common to the class that predominates in this case, i.e., whether Aeries adequately secured the PII that was compromised in the Data

14

1   Breach.  (See Dkt. 76, Motion at 16); (Dkt. 54, SAC at ¶ 93); see In re Hyundai, 926 F.3d at 559

2   (noting that common issues "which turn on a common course of conduct by the defendant, can

3   establish predominance in nationwide class actions"); see, e.g., In re Yahoo!, 2020 WL 4212811,

4   at *7 ("Indeed, the focus on a defendant's security measures in a data breach class action is the

5   precise type of predominant question that makes class-wide adjudication worthwhile.").   The

6   answer to this question will drive the resolution of the litigation, "as the common issue[]

7   predominate[s] over varying factual predicates[.]"   Clesceri v. Beach City Investigations &

8   Protective Services, Inc., 2011 WL 320998, *7 (C.D. Cal. 2011) (internal quotation marks omitted);

9   see Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 453, 136 S.Ct. 1036, 1045 (2016) ("When

10  one or more of the central issues in the action are common to the class and can be said to

11  predominate, the action may be considered proper under Rule 23(b)(3) even though other

12  important matters will have to be tried separately, such as damages or some affirmative defenses

13  peculiar to some individual class members.") (internal quotation marks omitted).

14          Moreover, the court is persuaded that, under the circumstances here – i.e., a settlement-

15  class predominance inquiry – it is not necessary to conduct a choice-of-law analysis.   "For

16  purposes of a settlement class, differences in state law do not necessarily, or even often, make

17  a class unmanageable."   Jabbari, 965 F.3d at 1007.   In other words, "a district court does not

18  commit legal error by not conducting a choice-of-law analysis, despite variations in state law,

19  before determining that common issues predominate for a settlement class."   Id.; see In re

20  Hyundai, 926 F.3d at 559 (noting that common issues "which turn on a common course of conduct

21  by the defendant, can establish predominance in nationwide class actions"); Sullivan v. DB

22  Investments, Inc., 667 F.3d 273, 303-04 (3rd Cir. 2011) ("Because we are presented with a

23  settlement class certification, we are not as concerned with formulating some prediction as to how

24  variances in state law would play out at trial, for the proposal is that there be no trial. . . .   The

25  proposed settlement here obviates the difficulties inherent in proving the elements of varied claims

26  at trial or in instructing a jury on varied state laws, and the difference is key.   Accordingly, while

27  we are cognizant of our responsibility to protect absentees by blocking unwarranted or overbroad

28  class definitions, state law variations are largely irrelevant to certification of a settlement class[.]")

(cleaned up).  Here, given the common course of conduct by Aeries, a determination as to which state's law applies is not necessary because the law of each state at issue shares common questions that are central to the resolution of the claims and capable of resolution in one fell swoop.  See Jabbari, 965 F.3d at 1006.  Finally, the relief sought applies to all class members and is traceable to plaintiff's liability case.  See Comcast, 569 U.S. at 35, 133 S.Ct. at 1433.  In short, the court is persuaded that "[a] common nucleus of facts and potential legal remedies dominates this litigation."  Hanlon, 150 F.3d at 1022.

       2.    **Superiority**.

      "The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case" and "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." Hanlon, 150 F.3d at 1023.  Rule 23(b)(3) provides a list of four non-exhaustive factors relevant to superiority.  See Fed. R. Civ. P. 23(b)(3)(A)-(D).

      The first factor considers "the class members' interests in individually controlling the prosecution or defense of separate actions."  Fed. R. Civ. P. 23(b)(3)(A).  "This factor weighs against class certification where each class member has suffered sizeable damages or has an emotional stake in the litigation."  Barbosa, 297 F.R.D. at 444.  Here, plaintiff does not assert claims for emotional distress, nor is there any indication that the amount of damages any individual class member could recover is significant or substantially greater than the potential recovery of any other class member.  Thus, there is no evidence that class members have any interest in controlling prosecution of their claims separately.[9]  See 2018 Adv. Comm. Notes to Amendments to Rule 23(e)(1) (Among the type of information that should be provided to the court deciding whether to grant preliminary approval is "information about the existence of other pending or anticipated litigation on behalf of class members involving claims that would be released under the proposal").  But even if some do, it would not be sufficient, by itself, to deny class certification.

---

      [9]   There is an individual lawsuit pending in state court; however, the plaintiffs in that suit are expressly excluded from this settlement.  (See Dkt. 76-1, Settlement Agreement at ¶ 40); (Dkt. 76-1, Zavareei Decl. at ¶ 26).

The second factor is "the extent and nature of any litigation concerning the controversy already begun by or against class members[.]"  Fed. R. Civ. P. 23(b)(3)(B).  While any class member that wishes to control its own case may opt out of the class, see Fed. R. Civ. P. 23(c)(2)(B)(v), "other pending litigation is evidence that individuals have an interest in controlling their own litigation[.]"  2 Newberg on Class Actions § 4:70 (5th ed. 2012) (emphasis omitted).  Here, other than the individual action filed in state court by the target of the Data Breach and her parents, there is no indication that any class member is involved in other litigation concerning the claims in this case.  (See Dkt. 76, Motion at 17).

The third factor is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum[,]" and the fourth factor is "the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(C)-(D).  As noted above, "[i]n the context of settlement . . . the third and fourth factors are rendered moot and are irrelevant."  Barbosa, 297 F.R.D. at 444;  see Amchem, 521 U.S. at 620, 117 S.Ct. at 2248 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.") (citation omitted); In re Hyundai, 926 F.3d at 556-57 ("The criteria for class certification are applied differently in litigation classes and settlement classes.  In deciding whether to certify a litigation class, a district court must be concerned with manageability at trial.  However, such manageability is not a concern in certifying a settlement class where, by definition, there will be no trial.").

The only factors in play here weigh in favor of class treatment.  Further, the filing of separate suits by thousands of other class members "would create an unnecessary burden on judicial resources."  Barbosa, 297 F.R.D. at 445.  Under the circumstances, the court finds that the superiority requirement is satisfied.

II.     FAIRNESS,   REASONABLENESS,   AND   ADEQUACY   OF   THE   PROPOSED SETTLEMENT.

A.     The Settlement is the Product of Arm's-Length Negotiations.

Pursuant to Rule 23(e)(2)(B), the court must evaluate whether the settlement was negotiated at arm's length.  Here, settlement was reached as a "result of intensive, arm's-length

1  negotiations" involving three mediation sessions before an experienced mediator, Martin Quinn,

2  Esq. of JAMS.  (Dkt. 76-1, Zavareei Decl. at ¶¶ 5-8).   In connection with the settlement

3  discussions, Aeries provided information about the scope of the Data Breach, the number of class

4  members, and remedial efforts undertaken in the wake of the Data Breach.  (Id. at ¶ 6).  The

5  parties also exchanged lengthy mediation briefs that addressed the strengths and weaknesses

6  of their respective claims and defenses.  (Id.).

7          Based on the evidence and record before the court, the court is persuaded that the parties

8  thoroughly investigated and considered their own and the opposing parties' positions.  The parties

9  had a sound basis for measuring the terms of the settlement against the risks of continued

10  litigation, and there is no evidence that the settlement is "the product of fraud or overreaching by,

11  or collusion between, the negotiating parties[.]"  Rodriguez v. West Publishing Corp., 563 F.3d

12  948, 965 (9th Cir. 2009) (internal quotation marks omitted).

13          **B.**     The Amount Offered in Settlement Falls Within a Range of Possible Judicial

14                  Approval and Is a Fair and Reasonable Outcome for Class Members.

15                  1.     **Recovery for Class Members.**

16          As described above, defendant will  pay a nonreversionary gross settlement amount of

17  $1,750,000.  (Dkt. 76-1, Settlement Agreement at ¶¶ 42, 46-47).  Class members will submit

18  claims for Out-of-Pocket Losses and Attested Time, and if any funds remain following such

19  payments, additional pro rata cash payments will be made, "subject to an individual aggregate cap

20  of $10,000 for total payments[.]"[10]  (Id. at ¶¶ 43, 52, 58); (Dkt. 76, Motion at 6-7).  Moreover,

21

22          [10]   As noted above, compensation for Ordinary Losses will provide compensation for

23  "unreimbursed losses, up to a total of $1,000 per person, upon submission of a valid and timely
    Claim and supporting documentation," (Dkt. 76-1, Settlement Agreement at ¶ 52(a)), and

24  compensation for Extraordinary Losses will provide "up to $10,000.00 in compensation to each
    Settlement Class Member, upon submission of a valid and timely Claim and supporting

25  documentation, for proven monetary loss including, inter alia, losses arising from financial fraud
    or identity theft if:" (1) "[t]he loss is an actual, documented, and unreimbursed monetary loss that

26  has not been compensated for by a third party (such as a bank or credit card company);" (2) "[t]he
    loss is attributable to the Data Breach;" (3) [t]he loss is not already covered by one or more of the

27  normal reimbursement categories;" and (4) "[t]he settlement class member made reasonable
    efforts to avoid, mitigate, or seek reimbursement for, the loss."  (Id. at ¶ 52(b)).

28

separate from the monetary relief, all class members are eligible for 12 months of credit monitoring services.  (Dkt. 76-1, Settlement Agreement at ¶ 56); (Dkt. 76, Motion at 28).

According to plaintiff, the settlement will allow class members "to recover essentially the same amounts as if they had fully prevailed on each of the claims at trial." (Dkt. 76, Motion at 29). Class members will receive "100% of their out-of-pocket losses, up to $10,000" and because the settlement "provides for pro-rata subsequent cash payments, Participating Class Members will each receive an average payment of between $211.81 and $234.37." (Id. at 29).  Indeed, plaintiff notes that "it is possible that Settlement Class Members would actually recover less at trial, as their only statutory damages claim, for violation of the CCPA, allows for an award of between $100 and $750."  (Id.) (citing Cal. Civ. Code § 1798.150(a)(1)(A)).[11]  Plaintiff's counsel also notes that the settlement amount reflects "the lack of evidence that the accessed information was exfiltrated[.]"  (Dkt. 76-1, Zavareei Decl. at ¶ 13).

Under the circumstances, the court is persuaded that the settlement relief is fair, reasonable, and adequate, particularly when taking into account the costs, risks, and delay of trial and appeal.  See Fed. R. Civ. P. 23(e)(1)(B)(i) & (e)(2)(C)(i); 2018 Adv. Comm. Notes to Amendments to Rule 23(e)(1) (The types of information that should be provided to the court deciding whether to grant preliminary approval  includes, among other things:  (1) "the extent and type of benefits that the settlement will confer on the members of the class"; and (2) "information about the likely range of litigated outcomes and about the risks that might attend full litigation"). Even putting aside defendant's defenses, and assuming class certification were granted and upheld on appeal, defeating summary judgment, winning the case at trial, and then sustaining the final judgment on appeal would be extremely difficult.  (See Dkt. 76-1, Zavareei Decl. at ¶ 21).  In short, the risks of continued litigation are significant, and the court takes these real risks into account.  Weighed against those risks, and coupled with the delays associated with continued litigation, the court is persuaded that the benefits to the class fall within the range of

---

[11] Cal. Civ. Code § 1798.150(a)(1)(A) provides that a consumer may "recover damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident or actual damages, whichever is greater."

reasonableness.  See, e.g., In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (ruling that "the Settlement amount of almost $2 million was roughly one-sixth of the potential recovery, which, given the difficulties in proving the case, [was] fair and adequate"); In re Uber FCRA Litig., 2017 WL 2806698, *7 (N.D. Cal. 2017) (granting preliminary approval of settlement that was worth "7.5% or less" of the expected value); Atkinson v. Minted, Inc., 2021 WL 6028374, *1-*3 (N.D. Cal. 2021) (granting final approval of data breach class actions settlement involving approximately 4,198,490 class members and a $5 million settlement fund) see also Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.").

2. **Release of Claims**.

The court must also consider whether a class action settlement contains an overly broad release of liability.  See 4 Newberg on Class Actions § 13:15 (5th ed.) ("Beyond the value of the settlement, courts [have] rejected preliminary approval when the proposed settlement contain[s] obvious substantive defects such as . . . overly broad releases of liability."); see, e.g., Fraser v. Asus Comput. Int'l, 2012 WL 6680142, *3 (N.D. Cal. 2012) (denying preliminary approval of proposed settlement that provided defendant a "nationwide blanket release" in exchange for payment "only on a claims-made basis[,]" without the establishment of a settlement fund or any other benefit to the class).  Here, class members who do not exclude themselves from the settlement will release "any and all claims . . . that the Releasing Parties have or may have had in the past, or may claim now or in the future to have, . . . that were or could have been asserted or alleged arising out of the same nucleus of operative facts as any of the claims alleged or asserted in the Action[.]"  (Dkt. 76-1, Settlement Agreement at ¶ 31).[12]

---

[12]   The Releasing Parties include Aeries and its customers, including the San Dieguito Union High School District.  (Dkt. 76-1, Settlement Agreement at ¶ 33).  The inclusion of the San Dieguito Union High School District in the Release does not undermine the fairness of the Settlement.  See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 748 (9th Cir. 2006) ("A class settlement may . . . release factually related claims against parties not named as defendants[.]"); 6 Newberg on Class Actions § 18:20 (5th ed.) ("[C]ourts approve the release of non-parties, even those beyond their jurisdiction, so long as there exists some factual relationship

With the understanding that, under the Release, class members are not giving up any claims unrelated to those asserted in this action, the court finds that the Release adequately balances fairness to absent class members and recovery for the class with defendant's business interest in ending the litigation. See Fraser, 2012 WL 6680142, at *4 (recognizing defendant's "legitimate business interest in 'buying peace' and moving on to its next challenge" as well as the need to prioritize "[f]airness to absent class member[s]").

C. The Settlement Agreement Does Not Improperly Grant Preferential Treatment to the Class Representative.

Pursuant to Rule 23(e)(2)(D), the court must evaluate whether the settlement "treats class members equitably relative to each other." One of the areas the court must scrutinize carefully is "[i]ncentive awards [which] are payments to class representatives for their service to the class in bringing the lawsuit." Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157, 1163 (9th Cir. 2013). The Ninth Circuit has instructed "district courts to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." Id. The court must examine whether there is a "significant disparity between the incentive awards and the payments to the rest of the class members" such that it creates a conflict of interest. See id. at 1165. "In deciding whether [an incentive] award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998).

Here, the Settlement Agreement provides that plaintiff may apply to the court for a service award of $2,500. (See Dkt. 76-1, Settlement Agreement at ¶ 85). Tomes appears to have been diligent in litigating this action, (see Dkt. 76-3, Tomes Decl. at ¶¶ 4-5), and "attended" the final mediation session before Quinn on June 9, 2021. (Id. at ¶ 8); (Dkt. 83-1, Supplemental Declaration of Hassan A. Zavareei [] ("Zavareei Supp. Decl.") at ¶¶ 26-27. Under the circumstances here, the court tentatively finds that an incentive payment of $2,500 is appropriate.

between the release and the class's claims.").

D.    <u>Class Notice and Notification Procedures</u>.

Upon settlement of a certified class, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal[.]"  Fed. R. Civ. P. 23(e)(1)(B).  Rule 23(c)(2) requires the "best notice that is practicable under the circumstances, including individual notice" of particular information.  <u>See</u> Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

"The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness."  <u>Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.</u>, 396 F.3d 96, 113 (2d Cir. 2005); <u>Low v. Trump Univ., LLC</u>, 881 F.3d 1111, 1117 (9th Cir. 2018) ("The yardstick against which we measure the sufficiency of notices in class action proceedings is one of reasonableness.") (internal quotation marks omitted).  A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  <u>Churchill Vill., L.L.C. v. Gen. Elec.</u>, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotation marks omitted); <u>see</u> <u>Gooch v. Life Invs. Ins. Co. of Am.</u>, 672 F.3d 402, 423 (6th Cir. 2012) (Settlement notices "are sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, [and] that any class member may appear and be heard at the hearing[.]").  The notice should provide sufficient information to allow class members to decide whether they should accept the benefits of the settlement, opt out and pursue their own remedies, or object to the terms of the settlement but remain in the class.  <u>See</u> <u>In re Integra Realty Res., Inc.</u>, 262 F.3d 1089, 1111 (10th Cir. 2001) ("The standard for the settlement notice under Rule 23(e) is that it must 'fairly apprise' the class members of the terms of the proposed settlement and of their options.") (internal quotation marks omitted).

Here, class members will receive notice by email and/or first class mail, (<u>see</u> Dkt. 76-1, Settlement Agreement at ¶ 69), which will consist of either the Postcard Notice (<u>id.</u>, Exh. B) or the Email Notice.  (<u>Id.</u>, Exh. C) (collectively "Notice").  The Notice describes the nature of the action and the claims alleged in the case.  (<u>See</u> <u>id.</u>, Exh. B (Postcard Notice) at 2); (<u>id.</u>, Exh. C (Email

1    Notice) at 1); see also Fed. R. Civ. P. 23(c)(2)(B)(i) & (iii).  It provides the definition of the class,

2    (see Dkt. 76-1, Settlement Agreement, Exh. B (Postcard Notice) at 1); (id., Exh. C (Email Notice)

3    at 1); see also Fed. R. Civ. P. 23(c)(2)(B)(ii), and explains the terms of the settlement, including

4    the settlement amount, and the distribution of that amount.   (See Dkt. 76-1, Settlement

5    Agreement, Exh. B (Postcard Notice) at 2-4); (id., Exh. C (Email Notice) at 1-2).  It includes an

6    explanation that lays out the class members' options under the settlement: they may remain in the

7    class, object to the settlement but still remain in the class, or exclude themselves from the

8    settlement and pursue their claims separately against defendant.  (See Dkt. 76-1, Settlement

9    Agreement, Exh. B (Postcard Notice) at 4); (id., Exh. C (Email Notice) at 2); see also Fed. R. Civ.

10   P. 23(c)(2)(B)(v)-(vi).  The Notice also explains the procedures for objecting to the settlement, (see

11   Dkt. 76-1, Settlement Agreement, Exh. B (Postcard Notice) at 4); (id., Exh. C (Email Notice) at

12   2),[13] and provides information about the Final Fairness Hearing.  (See id., Exh. B (Postcard Notice)

13   at 4); (id., Exh. C (Email Notice) at 2-3).  Finally, the parties request that JND be appointed as the

14   settlement administrator.  (See id at ¶ 37).

15          Based on the foregoing, the court finds there is no alternative method of distribution that

16   would be more practicable here, or any more reasonably likely to notify the class members.  See

17   Fed. R. Civ. P. 23(c)(2)(B).  Under the circumstances, the court finds that the procedure for

18   providing notice and the content of the class notice constitute the best practicable notice to class

19   members and complies with the requirements of due process.

20          E.      Summary.

21          The court's preliminary evaluation of the settlement does not disclose grounds to doubt its

22   fairness "such as unduly preferential treatment of class representatives or segments of the class,

23   inadequate compensation or harms to the classes, . . . or excessive compensation for attorneys."

24   Manual for Complex Litigation § 21.633 at 321 (4th ed. 2004); see also Spann, 314 F.R.D. at 323.

25

26   _____

27          [13]   Both the Postcard Notice and the Email Notice direct class members to the settlement
     website to obtain further details about their rights, how to exclude or object to the settlement, and
28   how to download the Claim Form.

**CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1.   Plaintiff's   Renewed Motion for Preliminary Approval of Class Action Settlement **(Document No. 76)** is **granted** upon the terms and conditions set forth in this Order.

2.   The court preliminarily certifies the class, as defined in ¶ 38 of the Class Action Settlement Agreement ("Settlement Agreement") (Dkt. 76-1) and as modified above, for the purposes of settlement.

3.   The court preliminarily appoints Melinda Tomes as the class representative for settlement purposes.

4.   The court preliminarily appoints Daniel Warshaw of Pearson, Simon & Warshaw, LLP and Hassan Zavareei of Tycko & Zavareei LLP as class counsel for settlement purposes.

5.   The court preliminarily finds that the terms of the settlement are fair, reasonable and adequate, and comply with Rule 23(e) of the Federal Rules of Civil Procedure.

6.   The court approves the form, substance, and requirements of the class Notice, (Dkt. 76-1, Settlement Agreement, Exh. B (Postcard Notice) & Exh. C (Email Notice)).   The proposed manner of notice of the settlement set forth in the Settlement Agreement constitutes the best notice practicable under the circumstances and complies with the requirements of due process.

7.   The court appoints JND as settlement administrator.

8.   JND shall complete dissemination of class notice, in accordance with the Settlement Agreement, no later than **August 8, 2022**.

9.   Plaintiff shall file a motion for an award of class representative incentive payment and attorney's fees and costs no later than **September 6, 2022,** and notice it for hearing for the date of the final approval hearing set forth below.[14]

10.   Any class member who wishes to:  (a) object to the settlement, including the requested attorney's fees, costs and incentive award; or (b) exclude him or herself from the settlement must

---

[14]   If the request for attorney's fees is made under the percentage-of-the-fund method, counsel shall also make a showing under the lodestar method.

file his or her objection to the settlement, or request exclusion no later than **October 10, 2022**, in accordance with the Notice and this Order.

11.  Plaintiff shall, no later than **October 17, 2022,** file and serve a motion for final approval of the settlement and a response to any objections to the settlement.  The motion shall be noticed for hearing for the date of the final approval hearing set forth below.[15]

12.  Defendant may file and serve a memorandum in support of final approval of the Settlement Agreement and/or in response to objections no later than **October 24, 2022**.

13.  Any class member who wishes to appear at the final approval (fairness) hearing, either on his or her own behalf or through an attorney, to object to the settlement, including the requested attorney's fees, costs or incentive award, shall, no later than **October 31, 2022**, file with the court a Notice of Intent to Appear at Fairness Hearing.

14.  A final approval (fairness) hearing is hereby set for **November 10, 2022**, at **10:00 a.m.** in Courtroom 6D of the First Street Courthouse, to consider the fairness, reasonableness, and adequacy of the Settlement as well as the award of attorney's fees and costs to class counsel, and incentive award to the class representative.

15.  All proceedings in the Action, other than proceedings necessary to carry out or enforce the Settlement Agreement or this Order, are stayed pending the final fairness hearing and the court's decision whether to grant final approval of the settlement.

Dated this 7th day of July, 2022.


                                                    _____
                                                                    /s/
                                                         Fernando M. Olguin
                                                     United States District Judge

_____

   [15]   The motion shall address each Rule 23(e) requirement as well as the <u>Bluetooth</u> factors.