DANIEL L. WARSHAW (Bar No. 185365)
dwarshaw@pswlaw.com
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8300
Facsimile: (818)788-8104

Attorneys for Plaintiff and the Proposed Class
*(Additional Counsel on Signature Page)*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ANURAG GUPTA and by and through him, D.G. AND V.G., his minor children,<br><br>*individually and on behalf of all others similarly situated,*<br><br>                   Plaintiff,<br><br>v.<br><br>AERIES SOFTWARE, INC.,<br><br>                   Defendant. | Case No. 8:20-cv-00995<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PAYMENT OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION COSTS AND EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARD**<br><br>Date: Nov. 10, 2022<br>Time: 10:00 a.m.<br>Courtroom: 6D<br>Judge: The Hon. Fernando M. Olguin |

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES, AND SERVICE AWARD

TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 10, 2022, at 10:00 a.m., or as soon thereafter as the matter may be heard in the Courtroom of the Honorable Fernando M. Olguin, United States District Court, Central District of California, Western Division, 350 W. 1st Street, 6th Floor, Courtroom 6D, Los Angeles, CA 90012, Plaintiff Melinda Tomes ("Plaintiff") will and hereby does move the Court, pursuant to Federal Rule of Civil Procedure 23(h), for the entry of an Order:

1. awarding attorneys' fees in the amount of $437,500.00 to Plaintiff's Counsel;

2. awarding costs in the amount of $15,780.88 to Plaintiff's Counsel; and

3. awarding Plaintiff a service payment of $2,500.00.

The grounds for this motion are that the requested fee is reasonable under the percentage-of-the-fund analysis; the costs incurred by Plaintiff's Counsel over the course of this litigation are reasonable; and the requested service payment is fair and reasonable. This motion is based upon this Notice of Motion and Motion for Payment of Attorneys' Fees, Reimbursement of Litigation Costs and Expenses, and Class Representative Service Award, the Memorandum of Points and Authorities, the Declarations of Daniel L. Warshaw, Hassan A. Zavareei, and Kristen Lake Cardoso filed herewith, the pleading and papers on file in this action, and such oral argument and documentary evidence as may be presented at the hearing on this motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on August 25, 2022.

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................1

II.    BACKGROUND ...................................................................................2

       A.    The Action and the Claims Asserted Therein ................................2

       B.    Mediation, Settlement Negotiations, and Settlement...........................5

III.   ARGUMENT..........................................................................................8

       A.    The Requested Fee Is Reasonable and Appropriate ...........................8

             1.   The Court Should Calculate Class Counsel's Fees as a Percentage
                  of the Common Fund .......................................................9

             2.   The Amount Requested is Reasonable .........................................12

                  a.   The Results Achieved for the Class Support the Requested
                       Fee ...................................................................13

                  b.   Class Counsel Faced Significant Risk in Litigating
                       the Action ............................................................13

                  c.   Class Counsel Litigated this Action on a Purely
                       Contingent Basis........................................................15

                  d.   The Skill Required and Quality of Work Performed by
                       Counsel Support the Requested Fee.......................................16

                  e.   Awards in Similar Cases Support the Requested Fee..............17

                  f.   Response to the Settlement.............................................18

             3.   A Lodestar-Multiplier "Cross-Check" Further Confirms the
                  Reasonableness of the Requested Fee ...........................................18

       B.    Class Counsel's Litigation Costs and Expenses are Reasonable
             and Should be Reimbursed ..........................................................20

       C.    The Service Award Request is Reasonable ...................................21

IV.    CONCLUSION ....................................................................................22

1

**TABLE OF AUTHORITIES**

2    <u>**Cases**</u>                                                    <u>**Page(s)**</u>

3    *Alvarez v. Sirius XM Radio Inc.*,

4       No. CV 18-8605 JVS(SSx), 2021 WL 1234878 (C.D. Cal. Feb. 8, 2021)..........19

5    *Bahnmaier v. Wichita State Univ.,*

6       No. 2:20-cv-02246-JAR-TJJ, 2021 WL 3662875 (D. Kan. Aug. 18, 2021) ...........14

7    *Bennett v. SimplexGrinnell LP*,

8       No. 11-cv-1854-JST, Dkt. No. 278, at 11 (N.D. Cal. Sept. 3, 2015).......................17

9    *Blum v. Stenson*,

10      465 U.S. 886 (1984) .........................................................................10, 19

11   *Boeing Co. v. Van Gemert*,

12      444 U.S. 472 (1980) ...........................................................................8, 11

13   *Craft v. County of San Bernardino*,

14      624 F. Supp. 2d 1113 (C.D. Cal. 2008).....................................................12

15   *Dearaujo v. Regis Corp.*,

16      No. 2:14-CV-01408-KJM-DB, 2017 WL 3116626 (E.D. Cal. July 21, 2017)........17

17   *Deaver v. Compass Bank*,

18      No. 13-CV00222-JSC, 2015 WL 8526982 (N.D. Cal. Dec. 11, 2015) ..................17

19   *Fox v. Iowa Health System*,

20      No. 3:18-cv-00327-jdp, 2020 WL 5678704 (W.D. Wis.)......................................13

21   *Gaston v. Fabfitfun, Inc.*,

22      No. 2:20-cv-09534-RGK-E, 2021 WL 6496734 (C.D. Cal. Dec. 9, 2021) .......17, 22

23   *Hanlon v. Chrysler Corp.*,

24      150 F.3d 1011 (9th Cir. 1998).................................................................12

25   *Harris v. Marhoefer*,

26      24 F.3d 16 (9th Cir. 1994)....................................................................20

27   *Hensley v. Eckerhart*,

28      461 U.S. 424 (1983) ..........................................................................8, 13

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989) ........................................................11

*In re Amgen Inc. Sec. Litig.*,
  No. CV 7-2536 PSG (PLAx), 2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) .......19

*In re Anthem, Inc. Data Breach Litig.*,
  No. 15-MD-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018)...............14

*In re Apple Inc. Device Performance Litig.*,
  No. 5:18-md-02827-EJD, 2021 WL 1022866 (N.D. Cal. Mar. 17, 2021)..............11

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ................................................... 8, 9, 12, 13

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
  109 F.3d 602 (9th Cir. 1997).................................................................12

*In re Equity Funding Corp. Sec. Litig.*,
  438 F. Supp. 1303 (C.D. Cal. 1977).......................................................17

*In re Heritage Bond Litig.*,
  No. 02-ML-1475, 2005 WL 1594389 (C.D. Cal. June 10, 2005).....................14, 16

*In re High-Tech Employee Antitrust Litig.*,
  No. 11–CV–02509–LHK, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ..............18

*In re Korean Air Lines Co., Ltd. Antitrust Litig.*,
  No. CV 07–05107 SJO (AGRx), 2013 WL 7985367 (C.D. Cal. Dec. 23, 2013)....11

*In re Media Vision Tech. Sec. Litig.*,
  913 F. Supp. 1362 (N.D. Cal. 1995) ......................................................21

*In re Omnivision Tech.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...............................................11, 14

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015)..................................................................9

*In re Oracle Sec. Litig.*,
  131 F.R.D. 688 (N.D. Cal. 1990) ..........................................................11

*In re Wash. Pub. Power Supply System Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994)................................................................ 8, 14, 15, 18

*In re Yahoo Mail Litig.*,
   No. 13-CV-4980-LHK, 2016 WL 4474612 (N.D. Cal. Aug. 25, 2016).................20

*In re Yahoo! Inc. Consumer Data Sec. Breach Litig.*,
   No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020)..........13, 19

*Kaupelis v. Harbor Freight Tools USA. Inc.*,
   No. SACV191203JVSDFMX, 2022 WL 2288895 (C.D. Cal. Jan. 12, 2022) ........19

*Knight v. Red Door Salons, Inc.*,
   No. 08–01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009)...............................16

*Lee v. JPMorgan Chase & Co.*,
   No. 13-cv-511-JLS, 2015 WL 12711659 (C.D. Cal. Apr. 28, 2015) .....................18

*Leonard, et al. v. Baumer (In re United Energy Corp. Solar Power Modules Tax*
   *Shelter Inv. Sec. Litig.)*,
   No. CV87-3962RN(GX), 1989 WL 73211 (C.D. Cal. Mar. 9, 1989) ..............20, 21

*Medeiros v. HSBC Card Services, Inc.*,
   No. CV 15-09093 JVS (AFMx), 2017 WL 11632870 (C.D. Cal. Oct. 23, 2017)...12

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970) ...........................................................................................21

*Moore v. James H. Matthews & Co.*,
   682 F.2d 830 (9th Cir. 1982).................................................................................20

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989)........................................................................9, 10, 11

*Pfeiffer v. RadNet, Inc.*,
   No. 2:20-CV-09553-RGK-SK, 2022 WL 2189533
   (C.D. Cal Feb. 15, 2022) ............................................................... 13, 17, 22

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009).........................................................................9, 21, 22

*Six Mexican Workers v. Ariz. Citrus Growers*,

   904 F.2d 1301 (9th Cir. 1990)........................................................................9, 11, 12

*Staton v. Boeing Co.*,

   327 F.3d 938 (9th Cir. 2003)....................................................................................8, 21

*Syed v. M-I, L.L.C.*,

   No. 1:12-cv-1718-DAD-MJS, 2017 WL 3190341 (E.D. Cal. July 27, 2017).........17

*Tait v. BSH Home Appliances Corp.*,

   No. SACV-0711-DOC (ANx), 2015 WL 4537463 (C.D. Cal. July 27, 2015)........12

*Vasquez v. Coast Valley Roofing, Inc.*,

   266 F.R.D. 482 (E.D. Cal. 2010) .............................................................................12

*Viceral v. Mistras Group, Inc.*,

   No. 15-cv-02198-EMC, 2017 WL 661352 (N.D. Cal. Feb. 17, 2017) ....................21

*Vizcaino v. Microsoft Corp.*,

   290 F.3d 1043 (9th Cir. 2002)........................................................................ *passim*

*Williams v. MGM-Pathe Comm. Co.*,

   129 F.3d 1026 (9th Cir. 1997).................................................................................11

*Wininger v. SI Mgmt. L.P.*,

   301 F.3d 1115 (9th Cir. 2002).................................................................................21

*Zakskorn v. Am. Honda Motor Co.*,

   No. 2:11–cv–02610–KJM–KJN, 2015 WL 3622990 (E.D. Cal. Jun. 9, 2015).......19

**<u>Rules</u>**

Fed. R. Civ. P. 23(h) ....................................................................................................8

## I.   **INTRODUCTION**

After two years of litigation, Class Counsel[1] has obtained a favorable result on behalf of nearly one hundred thousand individuals who had their username/hashed passwords and medical information compromised in the subject Data Breach. Plaintiff and Class Counsel respectfully submit this Motion for Payment of Attorneys' Fees, Reimbursement of Litigation Costs and Expenses, and Class Representative Service Award and request that this Court approve: (1) an award of attorneys' fees in the amount of $437,500.00; (2) reimbursement of reasonable and necessary Litigation Costs and Expenses in the amount of $15,780.88; and (3) a service award of $2,500.00 to the Settlement Class Representative, Plaintiff Melinda Tomes ("Tomes" or "Plaintiff").

First, the requested attorneys' fee award is reasonable, particularly given the challenges associated with pursuing data breach cases. It is also factually supported by Class Counsel's declarations, which explain their experience as class action practitioners and set forth their firms' collective lodestar. The requested attorneys' fee award amounts to 25% of the $1.75 million Settlement Fund, an amount matching the Ninth Circuit's 25% benchmark. *See* Declaration of Daniel L. Warshaw, Pearson, Simon & Warshaw, LLP ("Warshaw Decl.") at ¶ 9. Class Counsel will spend additional time (and additional costs) in preparing for and attending the Final Approval Hearing, addressing any objections, responding to any appeals, and overseeing the administration of Settlement Class benefits, as described below and in Class Counsel's supporting declarations filed concurrently herewith. Warshaw Decl. at ¶¶ 6, 13. Declaration of Hassan A. Zavareei, Tycko & Zavareei LLP ("Zavareei Decl.") at ¶ 11;

---

[1] Unless defined herein, capitalized terms shall have the same meaning as those assigned to them in the Settlement Agreement (the "Agreement"), attached as Exhibit 1 to the Declaration of Hassan A. Zavareei in Support of Motion for Preliminary Approval of Settlement, ECF No. 55-1.

Declaration of Kristen Lake Cardoso, Kopelowitz Ostrow Ferguson Weiselberg Gilbert ("Cardoso Decl.") at ¶ 9.

Second, the requested Litigation Costs and Expenses of $15,780.88 are reasonable and represent necessary costs that were actually incurred by Class Counsel in connection with the Litigation. *See* Warshaw Decl. at ¶¶ 10-12; Zavareei Decl. at ¶¶ 9-10.

Finally, the requested service award of $2,500.00 constitutes modest and reasonable compensation to acknowledge the Plaintiff's zealous prosecution of this Action alongside Class Counsel, which was integral to the settlement of this Action for which she assumed risk. *See generally* Declaration of Melinda Tomes in Support of Renewed Motion for Preliminary Approval of Class Action Settlement ("Tomes Decl."), ECF No. 76-3.

Accordingly, and for the reasons set forth in detail below, Plaintiff and Class Counsel respectfully request the Court award the requested amounts.

## II. <u>BACKGROUND</u>

### A.   <u>The Action and The Claims Asserted Therein</u>

Plaintiff's claims arise from the Data Breach that took place in or about January 2020, which affected personal identifying information ("PII") of approximately 100,000 individuals with Aeries accounts through the San Dieguito Union High School District ("SDUHSD") relating to the Aeries School Information System ("Aeries SIS") utilized to manage student data.

Aeries manages student data in public school district systems in California that utilize the Aeries SIS. ECF No. 54 at ¶ 1. Aeries admits that 166 databases that are hosted on Aeries' servers and store data on behalf of the school districts ("Aeries Hosting") were subject to unauthorized access beginning on or about November 4, 2019. *Id.* at ¶ 4. Despite having knowledge of the unauthorized access as early as November 2019, and certainly no later than January 2020, Aeries did not notify its school district customers of the Data Breach until April 27, 2020, when it issued a

"Notice of Data Breach" to school district customers. *Id.* at ¶ 5. The April 27, 2020 "Notice of Data Breach" disclosed only that the following personal information was compromised: "Parent and Student Login information, physical residence addresses, emails, and 'password hashes.'" *Id.* at ¶ 6. Aeries further acknowledged that "[w]ith access to a password hash, weak, common or simple passwords, can be deconstructed to gain unauthorized access to Parent and Student Accounts." *Id.* The Notice of Data Breach did not disclose that additional PII was stored on behalf of its school district customers, including, inter alia, (1) minor students' immunization and other health records, (2) social security numbers, (3) class grades, (4) standardized test information, (5) previous addresses, and (6) parent's or guardian's credit or debit cards and other financial information. *Id.* at ¶ 7.

More than two weeks after Aeries sent its school district customers the Notice of Data Breach, SDUHSD sent notifications to parents and guardians of children attending SDUHSD schools, including a press release dated May 14, 2020. *Id.* at ¶ 9. Unfortunately, even Aeries' subsequent investigations failed to uncover it was not only PII stored on Aeries Hosting that was compromised. *Id.* at ¶ 10. In early May 2020, other school district customers discovered that PII processed through the Aeries SIS, but stored on local servers (*i.e.*, the school districts' servers), was also subject to unauthorized access. *Id.*

Plaintiff alleges that Aeries is responsible for allowing the Data Breach to occur because it failed to implement and maintain sufficient safeguards and failed to comply with industry-standard data security practices, contrary to the representations made in Aeries' privacy statements and its explicit and implied agreements with its school district customers. *Id.* at ¶ 12. During the Data Breach, Aeries failed to detect the unauthorized third parties' access to its servers, notice the massive amounts of data that were compromised, and failed to take any steps to investigate the red flags that should have warned Aeries that its systems were not secure. *Id.* at ¶ 13. Plaintiff alleges that as a result of Aeries' failure to protect the student information with which it was

entrusted, she and Settlement Class Members have been exposed to and/or are at a significant risk of identity theft, financial fraud, and other identity-related fraud into the indefinite future. *Id.* Plaintiff also alleges that she and Settlement Class Members have lost the inherent value of their PII. *Id.* This harm was compounded by Aeries' failure to timely notify its school district customers of the Data Breach, its failure to disclose the extent of the information compromised in the Data Breach, and its further failure to ensure that students and parents or guardians of students within its customers' school districts received proper and timely notification of the Data Breach. *Id.*

On May 28, 2020, plaintiffs Anurag Gupta and his minor children, D.G. and V.G., ("Gupta Plaintiffs") filed a Class Action Complaint (the "Complaint") against Aeries on behalf of themselves and other similarly situated students, parents, and guardians in the United States whose PII was compromised in the Data Breach. ECF No. 1. Before filing the Complaint, Class Counsel investigated the potential claims against Aeries, interviewed potential plaintiffs, and gathered information about the Data Breach and its potential impact on consumers. *See* ECF No. 55-1 at ¶ 4. Class Counsel also expended resources developing the legal claims at issue. *Id.* On July 21, 2020, Aeries filed a Motion to Dismiss the Complaint. ECF No. 20.

Gupta Plaintiffs filed a First Amended Class Action Complaint on August 13, 2020 ("Amended Complaint"). ECF No. 26. The Amended Complaint alleged the Data Breach and sought to certify a nationwide class of students, parents, and guardians who were injured as a direct result thereof. *Id.* at ¶ 86. The Amended Complaint also sought to certify a subclass of minor students (and adults who provided their PII to Aeries when they were minor students) who were injured as a result of the Data Breach; a California subclass of all minor students, parents, and guardians in California who were injured as a result of the Data Breach; and a California subclass of minor students (and adults who provided their PII to Aeries when they were minor students) in California who were injured as a result of the Data Breach. *Id.* Specifically, the Amended Complaint alleged that Aeries' inadequate security practices resulted in the

compromise of incredibly sensitive PII of thousands of Aeries' school district customers.

On August 27, 2020, Aeries filed a Motion to Dismiss the Amended Complaint. ECF No. 27. On September 11, 2020, the parties filed a Stipulation that all proceedings and deadlines in the case (including a scheduling conference and hearing on Aeries' Motion to Dismiss) would be stayed up through and including November 10, 2020, to allow the parties (and the Court) to conserve resources and allow them to focus on mediation and settlement [ECF No. 29], upon which the Court entered an Order granting the Stipulation on November 21, 2020 [ECF No. 30].

During the parties' settlement negotiations, they became aware of the need to amend the Amended Complaint for the purpose of substituting out the Gupta Plaintiffs to ensure proper representation for the putative Settlement Class. *See* ECF No. 50. Accordingly, on June 8, 2021, the parties filed a Stipulation to File Second Amended Class Action Complaint [ECF No. 52], upon which the Court entered an Order granting the Stipulation on June 9, 2021 [ECF No. 53]. Plaintiffs filed their Second Amended Class Action Complaint ("Second Amended Complaint") on June 9, 2021. ECF No. 54. The Second Amended Complaint added a new class representative, *i.e.*, Tomes, narrowed the putative class to individuals who had an Aeries account through the SDUHSD at the time of the Data Breach, and recast Gupta Plaintiffs' claims as individual claims, rather than the previously pled class claims. *Id.*

On July 7, 2022, this Court entered an Order preliminarily approving the Settlement. ECF No. 90. The Final Approval Hearing is scheduled for November 10, 2022 at 10:00 a.m. *See id.* at ¶ 14.

**B.**    **Mediation, Settlement Negotiations, and Settlement**

After discussions among counsel, the parties agreed to engage in mediation on October 26, 2020, with Mr. Martin Quinn, an experienced class action mediator, to explore whether a negotiated resolution was possible. *See* ECF No. 55-1 at ¶ 6. Aeries provided information about the scope of the Data Breach, the number of class

members, and remedial efforts undertaken in the wake of the Data Breach, to Plaintiff's counsel. *Id.* The parties also exchanged lengthy mediation briefs in advance of the mediation. *Id.* The October 26, 2020 mediation did not result in the parties agreeing on settlement terms, but counsel continued to engage in ongoing settlement discussions. *Id.* On November 4, 2020, the parties filed a Stipulation that all proceedings and deadlines in the case would be stayed up through and including November 30, 2020, to facilitate the settlement process and conserve resources [ECF No. 35]. The Court entered an Order granting the Stipulation on November 5, 2020 [ECF No. 36].

The parties spent significant time negotiating the specific terms and language of the Agreement. *See* ECF No. 55-1 at ¶ 5. On November 23, 2020, the parties filed another Stipulation that all proceedings in the case would be stayed up through and including January 4, 2021, to allow time to negotiate over Aeries' expected counteroffer to Class Counsel's settlement proposal [ECF No. 39], upon which the Court entered an Order granting the Stipulation on November 24, 2020 [ECF No. 40]. On December 17, 2020, Aeries submitted a counteroffer to Class Counsel's settlement proposal to Mr. Quinn. *See* ECF No. 55-1 at ¶ 7. On January 5, 2021, the parties filed another Stipulation that all proceedings and deadlines in the case would be stayed up through and including February 5, 2021, to allow Mr. Quinn to work with the parties on the continued negotiation of the counteroffer [ECF No. 41], upon which the Court entered an Order granting the Stipulation on January 5, 2021 [ECF No. 42]. The parties continued to negotiate and exchange counteroffers through Mr. Quinn, and scheduled a second mediation on March 12, 2021, to expedite a resolution of this matter. *Id.* On February 5, 2021, the parties filed another Stipulation that all proceedings and deadlines in the case would be stayed up through and including April 5, 2021 [ECF No. 45], upon which the Court entered an Order granting the Stipulation on February 11, 2021 [ECF No. 46].

On March 12, 2021, the parties attended their second mediation with Mr. Quinn. *See* ECF No. 55-1 at ¶ 7. On April 2, 2021, the parties filed a Notice of Settlement,

1  advising the Court of the agreement and the need to negotiate a written settlement

2  agreement and related documents to submit to the Court and handle other

3  administrative matters. ECF No. 48. The Court entered a Minute Order vacating all

4  pending deadlines in this Action and setting May 14, 2021, as the deadline for Gupta

5  Plaintiffs to file their motion for class certification and preliminary approval of the

6  parties' proposed settlement. ECF No. 49.

7          After Plaintiff was added as a substitute class representative in this Action, *see*

8  Section II.A*, supra*, the parties continued their settlement discussions as they finalized

9  the terms of the Settlement, including a final mediation session with the participation

10 of Plaintiff. ECF No. 55-1 at ¶ 8. On June 9, 2021, a final mediation session with Mr.

11 Quinn was held and attended by Plaintiff. *Id.* On June 14, 2021, the parties executed

12 the Agreement that is now before the Court. *Id.*

13         The proposed Settlement is limited to students and parents or guardians of

14 students of the SDUHSD because Class Counsel determined—based on verified

15 representations made by Aeries—that this population was differently situated than the

16 students and parents or guardians of students with Aeries accounts through the other

17 affected school districts and, in Class Counsel's view, had an increased risk of exposure

18 in connection with the Data Breach. *Id.* at ¶ 9; *see also* Declaration of Jonathan Cotton,

19 Executive Director of Operations of Aeries, ECF No. 55-4 at ¶¶ 5-7. Because Gupta

20 Plaintiffs are outside of that district, they settled their claims individually, and Plaintiff,

21 who had an Aeries account through the SDUHSD at the time of the Data Breach, will

22 instead adequately represent the Settlement Class.

23         The parties have no agreement as to the amount of attorneys' fees and Litigation

24 Costs and Expenses that the Court should award, except that Plaintiff unilaterally

25 included in the Agreement a provision capping the amount of fees and costs to be

26 requested, which Aeries accepted without revision. *See* Supplemental Declaration of

27 Hassan A. Zavareei in Support of Plaintiff's Supplemental Brief in Response to the

28 Court's Order of December 13, 2021 [DKT. 80], ECF No. 83-1, at ¶¶ 6-12. Moreover,

1  Aeries remains free to object to any request for attorneys' fees or Litigation Costs and
2  Expenses. *Id.* at ¶ 7. As to the Service Award, although not a point of discussion, Aeries
3  did agree, without comment, to Plaintiff's inclusion of language in the Agreement that
4  Aeries would pay a $2,500.00 Service Award to Plaintiff, subject to Court Approval.
5  *Id.* at ¶¶ 13-17. Neither final approval, nor the size of the Settlement Fund, are
6  contingent upon approval of the full amount of requested service award, Litigation
7  Costs and Expenses, and/or attorneys' fees. ECF No. 55-1 at ¶ 15.

**III.   ARGUMENT**

**A.   The Requested Fee Is Reasonable and Appropriate**

10      In connection with a class action settlement, a court may award reasonable
11  attorneys' fees as authorized by law or by the parties' agreement. *See* Fed. R. Civ. P.
12  23(h); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)
13  (court may award reasonable attorneys' fees and costs where "the successful litigants
14  have created a common fund for recovery or extended a substantial benefit to a class").
15  As the Supreme Court has explained: "A request for attorney's fees should not result
16  in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."
17  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

18      The Ninth Circuit endorses the common fund doctrine, pursuant to which
19  counsel have an equitable right to receive compensation for their successful efforts in
20  creating a common fund. *See Staton v. Boeing Co.*, 327 F.3d 938, 967-68 (9th Cir.
21  2003); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer
22  who recovers a common fund . . . is entitled to a reasonable attorney's fee from the
23  fund as a whole[.]"); *In re Wash. Pub. Power Supply System Sec. Litig.*, 19 F.3d 1291,
24  1300 (9th Cir. 1994) (same).

25      "Under Ninth Circuit law, the district court has discretion in common fund cases
26  to choose either the percentage-of-the-fund or the lodestar method." *Vizcaino v.
27  Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *In re Bluetooth*, 654 F.3d at 942
28  (same). "[T]he choice between lodestar and percentage calculation depends on the

circumstances, but [ ] 'either method may ... have its place in determining what would be reasonable compensation for creating a common fund.'" *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (ellipsis in original) (quoting *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)). The Ninth Circuit also "encourage[s] courts to guard against an unreasonable result by cross-checking their calculations against a second method." *In re Bluetooth*, 654 F.3d at 944-45.

Ultimately, the Ninth Circuit requires "only that fee awards be reasonable in the circumstances." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009).

## 1.   The Court Should Calculate Class Counsel's Fees as a Percentage of the Common Fund

The Settlement creates a non-reversionary common fund totaling $1,750,000.00, from which the following will be paid: (i) Notice and Administrative Expenses; (ii) Taxes and Tax-Related Expenses; (iii) Service Award Payment approved by the Court; (iv) Fee Award and Costs; (v) reimbursement for Out-of-Pocket Losses and Attested Time; and (vi) Pro Rata Cash Payments. *See* Agreement at ¶¶ 20, 41; *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015) ("The district court did not abuse its discretion in calculating the fee award as a percentage of the total settlement fund, including notice and administrative costs, and litigation expenses.").

Each Settlement Class Member may submit a Claim for Out-of-Pocket Losses. Agreement at ¶ 51. Claims will be subject to review for completeness and plausibility by a Settlement Administrator. *Id.* If it is determined that a Claim is deficient in whole or part, the Settlement Administrator shall provide the Settlement Class Member with an opportunity to cure the deficiencies. *Id.* at ¶ 54. Settlement Class Members may submit a Claim for "Ordinary Losses," capped at $1,000.00 per person, and/or "Extraordinary Losses," capped at $10,000.00 per person. *Id.* at ¶ 51. Claims may be subject to a *pro rata* reduction. *Id.* at ¶ 64. "Ordinary Losses" include (1) "Out of pocket expenses incurred as a result of the Data Breach, including bank fees, long

distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, or gasoline for local travel"; (2) "Fees for additional credit reports, credit monitoring, or other identity theft insurance products purchased between November 4, 2019 and the date of the Preliminary Approval Order"; and (3) "Up to 40 hours of Attested Time, at $25/hour, if at least one full hour was spent dealing with the Data Breach." *Id.* at ¶ 51. "For Attested Time, a sworn attestation detailing how the time was spent shall constitute 'supporting documentation.'" *Id.* "Extraordinary Losses" are "losses arising from financial fraud or identity theft if:" (1) "The loss is an actual, documented, and unreimbursed monetary loss"; (2) "The loss is fairly traceable to the Data Breach"; (3) "The loss is not already covered by one or more of the normal reimbursement categories"; and (4) "The settlement class member made reasonable efforts to avoid, or seek reimbursement for, the loss." *Id.*

None of the Settlement Fund will revert to Aeries.[2] *Id.* ¶ 61. Thus, the common fund doctrine enables the Court to determine a reasonable fee with "some exactitude." *Paul*, 886 F.2d at 271 (internal citation omitted).

The Supreme Court has consistently held that in cases where a common fund of settlement benefits is secured for a class it is appropriate to determine counsel's fee as a percentage of the fund. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the common fund doctrine … a reasonable fee is based on a percentage of the fund

---

[2] Following an attempt to re-mail or re-issue all Settlement Checks, any funds that remain in the Net Settlement Fund more than 150 days after the distribution of Settlement Payments to the Participating Settlement Class Members, or 30 days after all reissued Settlement Checks are no longer negotiable, whichever occurs later or as otherwise agreed to by the parties, the parties shall implement a Secondary Distribution *pro rata* to all Settlement Class Members who had an Approved Claim—only if the Secondary Distribution is economically feasible. Agreement at ¶ 61. If a Secondary Distribution is not economically feasible, or if any funds remain from uncashed Secondary Distribution checks, any remaining monies shall be distributed as required by state law or to the Non-Profit Residual Recipient, EFF. *Id.* at ¶¶ 21, 61.

bestowed on the class."); *see also Six Mexican Workers*, 904 F.2d at 1311 (common fund fee is generally "calculated as a percentage of the recovery"). The common-fund doctrine's fundamental purpose is to spread the burden of a party's litigation expenses among those who are benefited. *See Paul*, 886 F.2d at 271. As the Supreme Court explained:

> [P]ersons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense. Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.

*Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980) (citation omitted). *See also Williams v. MGM-Pathe Comm. Co*., 129 F.3d 1026 (9th Cir. 1997).

The Ninth Circuit has expressly approved the percentage-of-recovery approach, and this approach has become the prevailing method for awarding fees in common fund cases within the Ninth Circuit. *See In re Apple Inc. Device Performance Litig.*, No. 5:18-md-02827-EJD, 2021 WL 1022866, at *2 (N.D. Cal. Mar. 17, 2021) ("[t]he use of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees"); *In re Korean Air Lines Co., Ltd. Antitrust Litig.*, No. CV 07–05107 SJO (AGRx), 2013 WL 7985367, at *1 (C.D. Cal. Dec. 23, 2013) (same); *see also In re Omnivision Tech.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) ("Despite this discretion, use of the percentage method in common fund cases appears to be dominant."); *In re Oracle Sec. Litig.,* 131 F.R.D. 688, 694 (N.D. Cal. 1990) ("Indeed, when compared to the murky criteria of the lodestar approach, contingent fee compensation is vastly superior.").

The percentage method is desirable because it most fairly correlates the compensation of counsel with the benefits conferred upon the class. *See, e.g.*, *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1374–77 (N.D. Cal. 1989) (collecting authority and describing benefits of the percentage method over the lodestar method). It "align[s] the lawyers' interests with achieving the highest award for the class members, and reducing the burden on the courts that a complex lodestar calculation

requires." *Tait v. BSH Home Appliances Corp.*, No. SACV-0711-DOC (ANx), 2015 WL 4537463, at *11 (C.D. Cal. July 27, 2015).

## 2.  The Amount Requested Is Reasonable

Under the percentage-of-the-fund method, the "court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). The Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees." *Id.*; *see also In re Bluetooth*, 654 F.3d at 942 (citing *Six Mexican Workers*, 904 F.2d at 1311); *Vizcaino*, 290 F.3d at 1047; *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997); *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008).

"When assessing whether the percentage requested is reasonable, courts [in this Circuit] look to factors such as: (a) the results achieved; (b) the risk of litigation; (c) the skill required; (d) the quality of work; (e) the contingent nature of the fee and the financial burden; and (f) the awards made in similar cases." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D. Cal. 2010) (citing *Vizcaino*, 290 F.3d at 1047). In the settlement approval context, the reaction of settlement class members to the requested fee should also be considered. *See Medeiros v. HSBC Card Services, Inc.*, No. CV 15-09093 JVS (AFMx), 2017 WL 11632870, at *6 (C.D. Cal. Oct. 23, 2017) ("the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members").

Here, the Settlement created a non-reversionary Settlement Fund in the amount of $1,750,000. Agreement at ¶¶ 20, 41. Class Counsel requests an award of $437,500.00 in attorneys' fees, which amounts to 25% of the Settlement Fund created for the benefit of the Class. The requested fee is presumptively appropriate and each of the factors support an award of the 25% fee requested in this case. Class Counsel

1  also requests an award of $15,780.88 in Litigation Costs and Expenses, which is also

2  reasonable.

3          a.      **The Results Achieved for the Class Support the Requested Fee**

4          The Court's primary consideration in evaluating an attorneys' fee request is to

5  ensure that the amount of fees awarded is "reasonable in relation to the results

6  obtained." *In re Bluetooth*, 654 F.3d at 942 (citing *Hensley*, 461 U.S. at 436). In the

7  present matter, the results obtained are substantial: a $1,750,000.00 cash common fund

8  for the benefit of nearly 100,000 Settlement Class Members. The Settlement Fund of

9  $1,750,000.00 allows for reimbursement of up to $1,000.00 in Out-of-Pocket Losses,

10 including lost time of up to 40 hours at $25/hour, up to $10,000.00 in documented

11 extraordinary losses, and a residual cash payment. The Settlement also provides for a

12 year of credit monitoring and assurances from Aeries that it has implemented changes

13 to its data security practices and procedures. This Settlement is a strong result for the

14 Settlement Class and in line with other data breach settlements of similar scope. *See,*

15 *e.g.*, *Fox v. Iowa Health System*, No. 3:18-cv-00327-jdp, 2020 WL 5678704 (W.D.

16 Wis.) (defendant agreed to pay up to $1,000.00 in attested out-of-pocket expenses and

17 lost time up to 3 hours at $15/hour; up to $6,000.00 in document expenses; credit

18 monitoring; and business practice changes); *see also Pfeiffer v. RadNet, Inc.*, No. 2:20-

19 CV-09553-RGK-SK, 2022 WL 2189533, at *1 (C.D. Cal Feb. 15, 2022) (finding

20 settlement of $2,600,00.00 with credit monitoring, reimbursement of out-of-pocket

21 costs incurred in connection with the data breach, and implementation of increased

22 security measures related to data breach comparable to other data breach settlements,

23 including *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS

24 129939, at *88–90 (N.D. Cal. July 22, 2020)). *See* ECF. No. 55-1 at ¶ 17. Thus, the

25 excellent results obtained support Class Counsel's requested fee.

26          b.      **Class Counsel Faced Significant Risk in Litigating the Action**

27         The requested fee is reasonable in light not only of the result achieved, but also

28 the significant risks involved in litigating this matter, securing, and then protecting the

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES, AND SERVICE AWARD                    13

1    Settlement Fund for the benefit of the Settlement Class. The risk that further litigation
2    might result in class members not recovering at all is an important factor in determining
3    a fair fee award. *See In re Omnivision Tech*, 559 F. Supp. 2d at 1047; *In re Wash.*, 19
4    F.3d 1291, 1299-1301 (9th Cir. 1994); *In re Heritage Bond Litig.*, No. 02-ML-1475,
5    2005 WL 1594389, at *14 (C.D. Cal. June 10, 2005) ("[t]he risks assumed by Class
6    Counsel, particularly the risk of nonpayment or reimbursement of expenses, is a factor
7    in determining counsel's proper fee award").

8         Although Class Counsel believes that Plaintiff's claims were strong, they are
9    pragmatic and recognize the risks inherent in litigation of a complex data breach case.
10   ECF No. 55-1 at ¶ 18. Data breach class actions are still relatively new and present
11   novel and complex issues, making a successful outcome difficult to predict. Warshaw
12   Decl. at ¶ 21. Among national consumer protection class action litigation, data breach
13   cases are some of the most complex and involve a rapidly evolving area of law. *See*
14   *Bahnmaier v. Wichita State Univ.*, No. 2:20-cv-02246-JAR-TJJ, 2021 WL 3662875, at
15   *3 (D. Kan. Aug. 18, 2021) ("Data-breach litigation is a technical, emerging area of
16   the law"); *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL
17   3960068, at *11 (N.D. Cal. Aug. 17, 2018) ("[D]ata-breach litigation is an actively
18   developing field of the law where much of the legal landscape is still shifting and
19   unsettled. This baseline uncertainty manifested itself in a threshold question that
20   threatened to end the litigation at an early stage as well as ongoing issues that
21   endangered class recovery."). As such, these cases are particularly risky for plaintiffs'
22   attorneys. *See id.*

23        This case presented real and substantial risk that nothing would be recovered for
24   the Class if, for example, Plaintiff's claims were dismissed at the motion to dismiss
25   stage, summary judgment, or at trial, or if class certification were denied. ECF No. 55-
26   1 at ¶ 20. And even if Plaintiff prevailed at trial, any recovery could be delayed for
27   years by an appeal. *Id.*

28

1    By negotiating a Settlement at this early stage of the litigation, the parties have

2    ensured that Settlement Class Members will receive the substantial benefits described

3    above while avoiding the risks and potential pitfalls of prolonged litigation. Class

4    Counsel should not be punished obtaining the desired result without resorting to

5    protracted litigation. *See Vizcaino*, 290 F.3d at 1050 n.5.

6    In sum, Class Counsel faced substantial risks in this Action, yet succeeded in

7    conferring a significant benefit on the Class.

8            **c.**     **Class Counsel Litigated this Action on a Purely Contingent**

9                   **Basis**

10    It is well-established—and Courts in the Ninth Circuit have long recognized—

11    that the public interest is served by rewarding attorneys who assume representation on

12    a contingent basis with an enhanced fee to compensate them for the risk that they might

13    receive no payment or reimbursement at all for their investment of time, resources and

14    expense. *See In re Wash.*, 19 F.3d at 1299 ("Contingent fees that may far exceed the

15    market value of the services if rendered on a noncontingent basis are accepted in the

16    legal profession as a legitimate way of assuring competent representation for plaintiffs

17    who could not afford to pay on an hourly basis regardless whether they win or lose");

18    *Vizcaino*, 290 F.3d at 1051 ("In common fund cases, 'attorneys whose compensation

19    depends on their winning the case[ ] must make up in compensation in the cases they

20    win for the lack of compensation in the cases they lose.'" (*citing In re Wash.,* 19 F.3d

21    at 1300-01)).

22    The requested fee award is further justified by the financial risks undertaken by

23    Class Counsel in this case. Class Counsel accepted and litigated this Action solely on

24    a contingency basis. Warshaw Decl. at ¶ 2. Class Counsel have received no

25    compensation for the outlay of attorney time or for the expenses they incurred. *Id.*

26    Moreover, there has never been any guarantee that Class Counsel would be reimbursed

27    for their costs or paid for their time prosecuting the case. *Id.* No matter how many hours

28

Class Counsel devoted, no matter how burdensome the litigation, there would be no payment unless the Class prevailed—which they ultimately did.

### d. The Skill Required and Quality of Work Performed by Counsel Support the Requested Fee

Courts recognize that "the prosecution and management of a complex class action litigation requires unique legal skills and abilities." *Knight v. Red Door Salons, Inc.*, No. 08–01520 SC, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009) (citation omitted); *In re Heritage Bond Litig.*, 2005 WL 1594389 *12. As noted above, data breach class actions present novel and complex issues. *See* Section III.A.2.b, *supra*. The experience and skill of Class Counsel were essential to the success in this litigation. From the outset, Class Counsel engaged in a concerted effort to obtain the maximum recovery for the Class, while steering clear of perceived pitfalls. When new risks and potential obstacles arose, including having to substitute the Gupta Plaintiffs with a class representative who had an Aeries account through the SDUHSD at the time of the Data Breach (*i.e.*, Tomes) *after* Plaintiffs had already filed an amended complaint and the parties had engaged in significant settlement negotiations, Class Counsel skillfully maneuvered to best protect the rights and interests of the Class.

Before reaching the Settlement, Class Counsel investigated filing this Action when the Data Breach was announced, drafted the Complaint, amended the Complaint, conducted informal discovery in connection with mediation, prepared for and attended mediation on three occasions, and negotiated the Agreement. Warshaw Decl. at ¶ 4; Zavareei Decl. at ¶ 4; Cardoso Decl. at ¶ 4. Class Counsel also moved for preliminary approval. *Id.*

Moreover, additional work will be required. Class Counsel must still: (1) prepare for and attend the Final Approval Hearing, including the research and drafting of the reply papers and responses to objections; (2) continue to respond to inquiries from Settlement Class Members; (3) oversee the Settlement through final approval of distribution of the common fund; (4) oversee the Claims administration process,

1   including addressing any Claim review issues; and (5) handle any appeals. Warshaw

2   Decl. at ¶ 13.

3          The quality of opposing counsel is also important in evaluating the services

4   rendered by Class Counsel. *See, e.g.*, *In re Equity Funding Corp. Sec. Litig.*, 438 F.

5   Supp. 1303, 1337 (C.D. Cal. 1977) ("Moreover, plaintiffs' attorneys in this class action

6   have been up against established and skillful defense lawyers, and should be

7   compensated accordingly."). This Action was defended by highly qualified and

8   nationally recognized counsel with a great deal of experience in data breach cases.

9   Warshaw Decl. at ¶ 22. That Class Counsel efficiently resolved the Action for the Class

10  in the face of a defense from experienced counsel, in the ever-challenging landscape

11  of data breach litigation, further evidences the quality of their work.

12                    **e.    Awards in Similar Cases Support the Requested Fee**

13         The award requested here is 25% of the Settlement Fund, the same percentage

14  that has been awarded in other data breach cases in this Court. *See Pfeiffer*, 2022 WL

15  2189533, at *3 (finding attorneys' fees of 25% of the settlement fund in data breach

16  class action reasonable); *Gaston v. Fabfitfun, Inc.*, No. 2:20-cv-09534-RGK-E, 2021

17  WL 6496734, at *4 (C.D. Cal. Dec. 9, 2021) (finding attorneys' fees of 25% of the

18  settlement fund in a data breach class action reasonable) (same). Indeed, district courts

19  within the Ninth Circuit routinely award percentage recoveries in excess of the

20  benchmark in sub-$10 million common fund settlements. *See, e.g.*, *Syed v. M-I, L.L.C.*,

21  No. 1:12-cv-1718-DAD-MJS, 2017 WL 3190341, at *8 (E.D. Cal. July 27, 2017)

22  (awarding one-third of $7 million common fund); *Dearaujo v. Regis Corp.*, No. 2:14-

23  CV-01408-KJM-DB, 2017 WL 3116626, at *13 (E.D. Cal. July 21, 2017) (awarding

24  33% of $1.95 million common fund); *Deaver v. Compass Bank*, No. 13-CV00222-JSC,

25  2015 WL 8526982, at *11 (N.D. Cal. Dec. 11, 2015) (awarding one-third of

26  $500,000.00 common fund); *Bennett v. SimplexGrinnell LP*, No. 11-cv-1854-JST, Dkt.

27  No. 278, at 11 (N.D. Cal. Sept. 3, 2015) (awarding 38.8% of $4.9 million common

28

1  fund); *Lee v. JPMorgan Chase & Co.*, No. 13-cv-511-JLS, 2015 WL 12711659, at *8–

2  9 (C.D. Cal. Apr. 28, 2015) (awarding 33% of $2.4 million common fund).

3        Thus, the Court should find that Class Counsel's requested fee of 25% of the

4  Settlement Fund is reasonable and appropriate.

5        **f.**    **Response to the Settlement**

6        Additionally, the requested award of attorneys' fees, costs and expenses was

7  stated explicitly in the Notice disseminated to the Class on August 8, 2022. Warshaw

8  Decl. ¶ 23. Though Settlement Class Members have until October 10, 2022 to object

9  to Class Counsel's request for reimbursement of their attorneys' fees, costs, and

10 expenses (s*ee* ECF No. 90 at ¶ 10), as of this filing, no Settlement Class Member has

11 objected to Class Counsel's requested fee. *Id.* The absence of any objections to the fees

12 and costs requested by Class Counsel supports the conclusion that the requested fee is

13 fair and reasonable.

14       **3.**    **A Lodestar-Multiplier "Cross-Check" Further Confirms the**

15               **Reasonableness of the Requested Fee**

16       "To guard against an unreasonable result, the Ninth Circuit encourages district

17 courts to 'cross-check[] their calculations against a second method.'" *In re High-Tech*

18 *Employee Antitrust Litig.*, No. 11–CV–02509–LHK, 2015 WL 5158730, *6 (N.D. Cal.

19 Sept. 2, 2015) (citations omitted). Although the requested fee award of 25% is

20 presumptively reasonable in this Circuit, a cross-check of Class Counsel's requested

21 fee amount will confirm the reasonableness of the requested amount.

22       Class Counsel's cumulative lodestar as of September 6, 2022 is $361,677.10

23 using historic billing rates. Warshaw Decl. at ¶ 9. *See In re Wash.*, 19 F.3d at 1305

24 (courts apply each biller's current rates for all hours of work performed, regardless of

25 when the work was performed, as a means of compensating for the "delay in

26 payment"); *Vizcaino*, 290 F.3d at 1051 (affirming lodestar crosscheck using current

27 billing rates). *See also* Warshaw Decl. at ¶ 7 (rates are PSW's customary rates billed

28 to clients and have been approved by numerous courts); Zavareei Decl. at ¶ 7 (same);

Cardoso Decl. at ¶ 7 (same). Class Counsel's hourly rates are "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895-96 n.11. *See* Warshaw Decl. at ¶ 7; Zavareei Decl. at ¶ 7; Cardoso Decl. at ¶ 7. Class Counsel's historical hourly rates, which range from $468.00 to $1,250.00 for attorneys and from $208.00 to $225.00 for paralegals, are reasonable for complex class litigation in this market. *See, e.g., In re Yahoo! Inc. Consumer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *26 (N.D. Cal. July 22, 2020) (approving partner rates of $450 to $900, non-partner attorney rates from $160 to $850, with most under $500, and paralegal rates from $50 to $380); *Alvarez v. Sirius XM Radio Inc.*, No. CV 18-8605 JVS(SSx), 2021 WL 1234878, at *11 (C.D. Cal. Feb. 8, 2021) (finding partner rate of $950, associate rate of $450, and paralegal rates of $250 to $310 "well within the range of prevailing local hourly rates"); *Kaupelis v. Harbor Freight Tools USA. Inc.*, No. SACV191203JVSDFMX, 2022 WL 2288895, at *9 (C.D. Cal. Jan. 12, 2022) (approving fee request with hourly rates of $700-$1,000 for partners, $315-$450 for associates, and $250-$300 for paralegals reasonable compared to other awards in California courts); *In re Amgen Inc. Sec. Litig.*, No. CV 7-2536 PSG (PLAx), 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) (approving "a billing rate ranging from $750 to $985 per hour for partners, $500 to $800 per hour for 'of counsels'/senior counsel, and $300 to $725 per hour for other attorneys"); *Zakskorn v. Am. Honda Motor Co.*, No. 2:11–cv–02610–KJM–KJN, 2015 WL 3622990, *13-15 (E.D. Cal. Jun. 9, 2015) (approving fee request with hourly rates of up to $850 for partners and $450 for associates).

As of August 31, 2022, Plaintiff's Counsel's attorneys and paralegals have devoted more 496.6 hours to the prosecution of this Action, amounting to cumulative lodestar of approximately $361,677.10 using historic billing rates. Plaintiff's Counsel's hours of work expended litigating this Action are detailed in the accompanying declarations. *See* Warshaw Decl. at ¶ 8; Zavareei Decl. at ¶ 8; Cardoso Decl. at ¶ 5.

Plaintiff's Counsel have engaged in extensive litigation activities, including: (1) pre-litigation research and investigation; (2) litigation activities such as drafting the complaints; (3) settlement negotiations and mediation, preparation for same, and finalizing the terms of the Agreement; and (4) efforts to obtain Court approval of the Settlement. Warshaw Decl. at ¶ 4; Zavareei Decl. at ¶ 4; Cardoso Decl. at ¶ 4. The number of hours expended throughout this litigation is reasonable. *See, e.g.*, *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982) (reasoning counsel entitled to recover for "'every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest'") (citation omitted).

A fee in the amount of approximately 25% of the $1,750,000.00 common fund therefore represents a very modest multiplier of 1.2 on Class Counsel's cumulative lodestar. This amount falls in the bottom of the range commonly approved in the Ninth Circuit, even where the requested attorneys' fee is substantially higher than that requested here. *See, e.g.*, *In re Yahoo Mail Litig.*, No. 13-CV-4980-LHK, 2016 WL 4474612, at *11 (N.D. Cal. Aug. 25, 2016) (discussing a survey of "attorney's fees awards in common fund cases ranging from $50 to 200 million between 1996 and 2001" and finding that in "the vast majority of cases (20 of 24, or 83%), the multiplier ranged from 1.0–4.0") (citing *Vizcaino*, 290 F.3d at 1052-54).

In sum, the lodestar "cross-check" strongly supports Class Counsel's requested fee of 25% of the common fund.

**B.**   **Class Counsel's Litigation Costs and Expenses are Reasonable and Should be Reimbursed**

Under well-settled law, Class Counsel are entitled to recover "out-of-pocket expenses that would normally be charged to a fee-paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal citation and quotation marks omitted). It is appropriate to reimburse Class Counsel for such expenses from the common fund. *See, e.g., Leonard, et al. v. Baumer (In re United Energy Corp. Solar Power Modules Tax*

*Shelter Inv. Sec. Litig.*), No. CV87-3962RN(GX), 1989 WL 73211, at *6 (C.D. Cal. Mar. 9, 1989). Such expense awards comport with the notion that the district court may "spread the costs of the litigation among the recipients of the common benefit." *Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1121 (9th Cir. 2002); *see also, e.g.*, *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995) (citing *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970) ("Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit[.]")

Here, Class Counsel request the reimbursement of $15,780.88 in Litigation Costs and Expenses reasonably incurred. Warshaw Decl. at ¶ 12. Attached to the declarations of Class Counsel are detailed breakdowns of the unreimbursed expenses necessarily incurred by counsel in the prosecution of this Action for which Class Counsel seek reimbursement. *See* Warshaw Decl. at ¶ 10; Zavareei Decl. at ¶ 9. As with the lodestar, all expenses were reported contemporaneously and carefully scrutinized. *See id.* These costs were incurred by Class Counsel for the benefit of Settlement Class Members with no guarantee that they would be reimbursed. *See id.; see also Staton*, 327 F.3d at 974 (class counsel are entitled to reimbursement of expenses they reasonably incurred). Class Counsel's litigation costs are reasonable in amount and the Court should approve their reimbursement.

## C. **The Service Award Request is Reasonable**

"It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards." *Viceral v. Mistras Group, Inc.*, No. 15-cv-02198-EMC, 2017 WL 661352, at *4 (N.D. Cal. Feb. 17, 2017) (citation omitted). Service awards, which are discretionary, "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez*, 563 F.3d at 958–59.

This Court should grant the requested service award of $2,500.00 to Plaintiff to compensate her for her effort and risk in pursuing this litigation as the Settlement Class Representative. Plaintiff has fought for the best interests of the Class actively and enthusiastically, having met with Class Counsel to discuss the case, provided documents and reviewed pleadings, and putting her name on the line for the sake of carrying on this case after it was determined the Gupta Plaintiffs needed to be substituted with a class representative who had an Aeries account through the SDUHSD at the time of the Data Breach in order to adequately represent the Class. *See generally* Tomes Decl., ECF No. 76-3.

Neither Aeries nor, to-date, any Settlement Class Member, objects to the requested service award to Plaintiff in the amount of $2,500.00. Warshaw Decl. at ¶ 23. The service award is consistent with service award payments made in this Circuit and in other data breach cases. *See, e.g.*, *Pfeiffer*, 2022 WL 2189533, at *4 (awarding $1,500.00 service award to each of the seven representative plaintiffs); *Gaston*, 2021 WL 6496734, at *4 (awarding $5,000.00 service award to each of the two named class representatives). Recovery for the Class would not be possible without Plaintiff's involvement; thus, the Court should award her the requested $2,500.00.

## IV.   <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiff and Class Counsel respectfully request (1) an award of Plaintiff's Counsel attorneys' fees in the amount of $437,500.00; (2) reimbursement of reasonable and necessary Litigation Costs and Expenses in the amount of $15,780.88; and (3) a Service Award Payment of $2,500.00 to Plaintiff.

1    Dated: September 6, 2022.          Respectfully submitted,

2                                       */s/ Daniel L. Warshaw*
                                        Daniel L. Warshaw (CA Bar No. 185365)
3                                       **PEARSON, SIMON & WARSHAW, LLP**
                                        15165 Ventura Boulevard, Suite 400
4                                       Sherman Oaks, CA 91403
                                        Telephone: (818) 788-8300
5                                       Facsimile: (818) 788-8104
                                        Email: dwarshaw@pswlaw.com
6
                                        Hassan A. Zavareei (CA Bar No. 181547)
7                                       **TYCKO & ZAVAREEI LLP**
                                        1828 L Street NW, Suite 1000
8                                       Washington, D.C. 20036
                                        Telephone: (202) 973-0900
9                                       Facsimile: (202) 973-0950
                                        Email: hzavareei@tzlegal.com
10
                                        *Counsel for Plaintiff and the Class*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28