# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANURAG GUPTA, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AERIES SOFTWARE, INC.,<br><br>Defendant. | Case No. SA CV 20-0995 FMO (ADSx)<br><br>**ORDER RE: FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

Having reviewed and considered plaintiff's Motion for Final Approval of Class Action Settlement (Dkt. 95, "Motion") and Motion for Payment of Attorneys' Fees, Reimbursement of Litigation Costs and Expenses, and Class Representative Service Award, (Dkt. 93, "Fees Motion"), and the oral argument presented during the final fairness hearing held on November 10, 2022, the court concludes as follows.

## BACKGROUND

On May 28, 2020, Anurag Gupta ("Gupta"), individually and behalf of his minor children D.G. and V.G. ("Gupta Plaintiffs") filed a class action against Aeries Software, Inc. ("defendant" or "Aeries"), asserting claims for: (1) negligence; (2) negligence per se; (3) declaratory judgment; (4) breach of confidence; (5) breach of contract; (6) intrusion upon seclusion; (7) violations of California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; (8) violation of the California Customer Records Act, Cal. Civ. Code §§ 1798.80, et seq.; and (9) violation of the California Consumer Privacy Act, Cal. Civ. Code §§ 1798.100, et seq.  (See Dkt. 1, Complaint at ¶¶ 97-187).  After defendant filed a motion to dismiss, the Gupta Plaintiffs filed a First Amended

Complaint ("FAC"), asserting the same claims with the exception of the negligence per se and intrusion upon seclusion claims. (See Dkt. 26, FAC at ¶¶ 101-178). On June 9, 2021, the Gupta Plaintiffs, in their individual capacities, and newly added plaintiff, Melinda Tomes ("Tomes" or "plaintiff"), filed the operative Second Amended Complaint ("SAC").[1] (Dkt. 54).

The claims arise from a data breach at ABC Unified School District ("ABC") and the San Dieguito Union High School District ("SDUHSD"), which are two of the school districts that use defendant's Aeries School Information System ("Aeries SIS") to manage student data. (Dkt. 54, SAC at ¶ 1). In January 2020, defendant learned that the local database of one of its school district clients was subjected to unauthorized access. (Id. at ¶ 3). That database stored the personal information of students as well as their parents and guardians. (Id.). Aeries admitted that the 166 databases hosted on its servers were subjected to unauthorized access beginning on approximately November 4, 2019 ("the Data Breach"). (Id. at ¶ 4).

Plaintiff alleges that Aeries did not notify its school district customers of the Data Breach until April 27, 2020, when it issued a Notice of Data Breach to its school district customers, (see Dkt. 54, SAC at ¶ 5), and even then, it did not disclose all the information that was subject to the Data Breach, such as students' health care records, social security numbers, grades and standardized test information, along with credit and debit card and other financial information ("PII") belonging to parents and guardians. (See id. at ¶ 7). In mid-May, more than two weeks after defendant sent the Notice of Data Breach, ABC and SDUHSD provided notice of the breach to parents and guardians of children attending their schools. (See id. at ¶¶ 8-9).

D.G. and V.G. are the minor children of Gupta, and attended a school in the ABC school district at the time of the Data Breach. (See Dkt. 54, SAC at ¶ 14). Tomes's children were students in the SDUHSD at the time of the Data Breach. (See id. at ¶¶ 1, 16). The SAC alleges that "Aeries is responsible for allowing the Data Breach to occur because it failed to implement and maintain any reasonable safeguards and failed to comply with industry-standard data security

---

[1] The Gupta Plaintiffs settled their claims individually, leaving Tomes as the remaining class representative. (See Dkt. 90, Court's Order of July 7, 2022 ("Preliminary Approval Order" or "PAO") at 2 n. 1).

practices[.]" (Id. at ¶ 12). As a result of the breach, "Plaintiffs and class members have been exposed to and/or are at a significant risk of identity theft, financial fraud, and other identity-related fraud into the indefinite future." (Id. at ¶ 13).

On September 21, 2020, the court granted the parties' stipulation to stay the action for purposes of "early resolution via mediation[.]" (See Dkt. 29, Joint Stipulation to Stay Litigation); (Dkt. 30, Court's Order of September 21, 2020). The court subsequently granted four additional stipulations to continue the stay. (See Dkt. 36, Court's Order of November 5, 2020); (Dkt. 40, Court's Order of November 24, 2020); (Dkt. 44, Court's Order of January 6, 2021); (Dkt. 46, Court's Order of February 11, 2021).

On April 2, 2021, plaintiff filed a Notice of Settlement. (See Dkt. 48). The parties have defined the settlement class as: "[A]ll individuals in the United States who had an Aeries account through the San Dieguito Union [High] School District at the time of the Data Breach." (Dkt. 76-1, Settlement Agreement and Release ("Settlement Agreement") at ¶ 38).[2] The settlement class consists of approximately 98,199 individuals, (see Dkt. 76, Renewed Motion for Preliminary Approval of Class Action Settlement at 6), and expressly excludes plaintiffs in a state court action filed in the San Diego County Superior Court, Case No. 37-2020-00040868. (See Dkt. 76-1, Settlement Agreement at ¶ 40).

---

[2] Although the Settlement Agreement defines the settlement class in terms of the "San Dieguito Union School District" (Dkt. 76-1, Settlement Agreement at ¶ 38); (see also id. at ¶ 39) (referring to the settlement class list based on information provided by the "San Dieguito Union School District"), the SAC refers to the San Dieguito Union High School District in the class definition. (See Dkt. 54, SAC at ¶ 89). The Settlement Agreement also, at times, refers to the San Dieguito Union High School District. (See Dkt. 76-1, Settlement Agreement at ¶¶ 12, 33). Because the San Dieguito Union High School District definition is consistent with the parties' abbreviation of "SDUHSD" the court assumed that it is the correct entity. The court directed the parties to advise the court, prior to implementing the notice program, if the court's assumption was incorrect. (See Dkt. 90, PAO at 3 n. 2). None of the parties advised the court that its assumption was incorrect. (See, generally, Dkt.). Moreover, although plaintiff cites to an outdated settlement agreement, (see Dkt. 95, Motion at 1 n. 1) (referring and citing to the June 2021 version of the settlement agreement at Dkt. 55-1); (Dkt. 93, Fees Motion at 1 n. 1) (same), the court will refer, and cite to, the operative Settlement Agreement, which is the version executed in November 2021, and approved by the court. (See Dkt. 90, PAO).

Pursuant to the settlement, defendant will pay a nonreversionary settlement amount of $1,750,000, (see Dkt. 76-1, Settlement Agreement at ¶¶ 42, 46-47), which will be used to pay class members, the class representative's service payment, notice and administrative costs, taxes and tax-related expenses,[3] and attorney's fees and costs. (See id. at ¶¶ 20, 42); (Dkt. 90, PAO at 3-4). The settlement provides for up to 25% of the gross settlement amount in attorney's fees, (see Dkt. 76-1, Settlement Agreement at ¶ 87); costs not to exceed $20,000, (see id.); and a service award of $2,500 for Tomes. (See id. at ¶ 85). The settlement administrator, JND Legal Administration ("JND"), shall be paid no more than $200,000.[4] (See Dkt. 90, PAO at 4); (Dkt. 96, Def. Motion at 6); (Dkt. 96-1, Valdetero Decl. at ¶¶ 9-12); (Dkt. 96-2, Eoff Decl. at ¶ 3).

On July 7, 2022, the court granted preliminary approval of the settlement, appointed JND as the settlement administrator, and directed JND to provide notice to class members. (See Dkt. 90, PAO at 24). JND implemented the notice program approved by the court via email and first class mail. (See Dkt. 90, PAO as 22); (Dkt. 95-2, Declaration of Gina M. Intrepido-Bowden Regarding Notice Implementation and Settlement Administration ("Intrepido-Bowden Decl.") at ¶¶ 6-10); (id., Exh. B, Email Notice); (id., Exh. C, Postcard Notice) (collectively "Notice"). As of October 13, 2022,[5] JND had received ten valid Opt-Outs, (see Dkt. 95-2, Intrepido-Bowden Decl. at ¶ 22), and no objections. (See id. at ¶ 20).

Plaintiff now seeks: (1) final approval of the settlement; (2) attorney's fees and costs; and (3) an incentive payment for plaintiff. (See Dkt. 95, Motion); (Dkt. 93, Fees Motion).

---

[3] "Taxes and tax-related expenses" pertain to taxes the settlement administrator will have to pay on interest earned on the settlement fund after defendant transfers the $1,750,000 to the settlement administrator but prior to the distribution of monetary relief to the class members. (See Dkt. 90, PAO at 4 n. 3).

[4] Although the PAO capped JND's fees at $250,000, (Dkt. 90, PAO at 4), the parties and JND have agreed to limit JND's fees to $200,000. (See Dkt. 96, Defendant's Motion for Final Approval of Class Action Settlement ("Def. Motion") at 6); (Dkt. 96-1, Declaration of Jena Valdetero in Support of [Defendant's] Motion for Final Approval of Class Action Settlement ("Valdetero Decl.") at ¶¶ 9-12); (Dkt. 96-2, Declaration of Gretchen Eoff Regarding Settlement Administration Fees ("Eoff Decl.") at ¶ 3).

[5] The deadline for class members to opt-out or file objections to the settlement was October 10, 2022. (See Dkt. 90, PAO at 24-25); (Dkt. 95-2, Intrepido-Bowden Decl. at ¶¶ 19, 21).

**LEGAL STANDARD**

Federal Rule of Civil Procedure 23 provides that "[t]he claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "Courts reviewing class action settlements must ensure that unnamed class members are protected from unjust or unfair settlements affecting their rights, while also accounting for the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." Campbell v. Facebook, Inc., 951 F.3d 1106, 1121 (9th Cir. 2020) (internal quotation and alteration marks omitted). A "district court has a fiduciary duty to look after the interests of . . . absent class members[,]" Allen v. Bedolla, 787 F.3d 1218, 1223 (9th Cir. 2015), and must examine the settlement for "overall fairness[.]" In re Hyundai and Kia Fuel Econ. Litig., 926 F.3d 539, 569 (9th Cir. 2019) (en banc). The court may not "delete, modify or substitute certain provisions." Id. (internal quotation marks omitted). "[T]he settlement must stand or fall as a whole." Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F., 688 F.2d 615, 630 (9th Cir. 1982).

Approval of a class action settlement requires the court to conduct a two-step inquiry.[6] First, the court must determine whether the notice requirements of Rule 23(c)(2)(B) have been satisfied. Second, it must conduct a hearing to determine whether the settlement is "fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2). In determining whether a settlement is fair, reasonable, and adequate, the court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method

---

[6] If the class action is governed by the Class Action Fairness Act ("CAFA"), the court must also assess whether CAFA's notice requirements have been met. See 28 U.S.C. § 1715(d). Here, CAFA notice was provided to appropriate state and federal agencies, (see Dkt. 108, Joint Status Report Regarding Class Action Fairness Act Notice ("Status Report") at 2); (id., Declaration of Gretchen Eoff [] ("Eoff Decl.") at ¶ 3), and no objections were received. (See id., Eoff Decl. at ¶ 3).

>   of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Id.; see McKinney-Drobnis v. Oreshack, 16 F.4th 594, 607 (9th Cir. 2021) ("In 2018, Congress amended Rule 23(e)(2) to provide specific factors for a district court to consider in determining whether a settlement is 'fair, reasonable, and adequate.'").

Whether the settlement agreement is negotiated prior to or after class certification, the court must apply a "higher level of scrutiny for evidence of collusion or other conflicts of interest[.]" In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011) (Bluetooth); see McKinney-Drobnis, 16 F.4th at 608 (same); Briseño v. Henderson, 998 F.3d 1014, 1022 (9th Cir. 2021) ("Under the newly revised Rule 23(e)(2), courts should apply the Bluetooth factors even for post-class certification settlements.") (formatting omitted); id. at 1025 (holding that "courts must apply Bluetooth's heightened scrutiny to post-class certification settlements in assessing whether the division of funds between the class members and their counsel is fair and 'adequate'") (citing Fed. R. Civ. P. 23(e)(2)(C)). Courts should look for signs of collusion, subtle or otherwise, including "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded[;]" "(2) when the parties negotiate a 'clear sailing' arrangement[;]"[7] and "(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund[.]" Bluetooth, 654 F.3d at 947 (internal quotation marks and citations omitted); Campbell, 951 F.3d at 1125 (same).

---

[7] The Ninth Circuit defines a "clear sailing" agreement as one "providing for the payment of attorneys' fees separate and apart from class funds," Bluetooth, 654 F.3d at 947, and also as one where "the defendant agrees not to oppose a petition for a fee award up to a specified maximum value." Id. at 940 n. 6; Roes, 1-2 v. SFBSC Management, LLC, 944 F.3d 1035, 1049 (9th Cir. 2019) (Roes) (defining a clear sailing agreement as "an arrangement where defendant will not object to a certain fee request by class counsel") (internal quotation marks omitted).

**DISCUSSION**

I.  FINAL APPROVAL OF CLASS SETTLEMENT.

    A.  <u>Class Certification</u>.

In its order granting preliminary approval, the court certified the class pursuant to Rule 23(b)(3).  (<u>See</u> Dkt. 90, PAO at 10-17, 24).  Because circumstances have not changed, the court hereby affirms its order certifying the class for settlement purposes under Rule 23(e).  <u>See</u>, <u>e.g.</u>, <u>Gonzalez v. BMC West, LLC</u>, 2018 WL 6318832, *5 (C.D. Cal. 2018) ("In its Preliminary Approval Minute Order, the Court certified the Settlement Class in this matter under Rules 23(a) and 23(b)(3).  Accordingly, the Court need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b).") (internal quotation marks and citation omitted).

    B.  <u>Rule 23(c) Notice Requirements</u>.

Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule 23(c)(2), which require the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

Here, after undertaking the required examination, the court approved the form of the Class Notice and notification procedures.  (<u>See</u> Dkt. 90, PAO at 22-24).  As discussed above, the notice program was implemented by JND.  Based on the record and its prior findings, the court finds that the Class Notice, (Dkt. 95-2, Intrepido-Bowden Decl., Exh. B) (Email Notice); (<u>id.</u>, Exh. C) (Postcard Notice), and the notice process fairly and adequately informed the class members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, and the class members' right to object to the proposed settlement.  <u>See</u> Fed. R. Civ. P. 23(c)(2)(B).

/ / /

/ / /

C. <u>Whether the Class Settlement Is Fair, Adequate and Reasonable</u>.[8]

  1. **Adequate Representation and Arm's-Length Negotiations**.

Rule 23(e)(2) requires the court to consider whether "the class representatives and class counsel have adequately represented the class" and whether the settlement "was negotiated at arm's length[.]" Fed. R. Civ. P. 23(e)(2)(A)-(B); see McKinney-Drobnis, 16 F.4th at 607. Here, the court previously addressed the adequacy of counsel and the arm's-length negotiation factors in connection with preliminary approval. (See Dkt. 90, PAO at 13-14, 17-18). With respect to the latter factor, the court noted that the "settlement was reached as a result of intensive, arm's-length negotiations involving three mediation sessions before an experienced mediator, Martin Quinn, Esq. of JAMS." (Dkt. 90, PAO at 17-18) (internal quotation marks omitted). The court concluded, based on the evidence and record, that the "parties thoroughly investigated and considered their own and the opposing parties' positions" and "had a sound basis for measuring the terms of the settlement[.]" (Id. at 18). Based on the record before the court and the court's previous findings, the court finds these factors weigh in favor of granting final approval.

  2. **The Relief Provided to the Class is Adequate**.

In evaluating whether the relief provided to the class is adequate, the court considers: (i) "the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the

---

[8] Prior to the 2018 amendment to Rule 23(e), courts applied the "Churchill" factors to assess whether a class settlement was fair, adequate, and reasonable: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004); see McKinney-Drobnis, 16 F.4th at 609 (noting that prior to the 2018 amendment to Rule 23(e), the Ninth Circuit instructed courts to consider the Churchill factors). Because "it is still appropriate for district courts to consider the[ Churchill] factors in their holistic assessment of settlement fairness[,]" McKinney-Drobnis, 16 F.4th at 609 n. 4; see also 2018 Adv. Comm. Notes to Amendments to Rule 23 ("The goal of th[e] amendment [wa]s not to displace any factor" courts considered prior to the amendment, "but rather to focus . . . on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."), the court will consider them in evaluating the Rule 23(e)(2) factors.

terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).

      a.    *Costs, Risks, and Delay*.

In granting preliminary approval, the court found that the class recovery was fair and reasonable, "particularly when taking into account the costs, risks, and delay of trial and appeal." (Dkt. 90, PAO at 19). The court recognized that, "[e]ven putting aside defendant's defenses, and assuming class certification were granted and upheld on appeal, defeating summary judgment, winning the case at trial, and then sustaining the final judgment on appeal would be extremely difficult." (Id.). Under the circumstances, it is significant that class members will receive a monetary recovery "by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation marks omitted); see Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (internal quotation marks omitted). In short, the court finds these factors support approval of the settlement.

      b.    *Method of Distribution*.

Rule 23(e) directs the court to consider the "effectiveness of any proposed method of distributing relief to the class[.]" Fed. R. Civ. P. 23(e)(2)(C)(ii). "[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." 4 Newberg on Class Actions, § 13:53 (5th ed.) (2021 Supp.). Here, class members were required to submit claim forms to obtain monetary relief or receive credit monitoring services. (See Dkt. 90, PAO at 4-6, 18-19). This is reasonable given the potential disparity in harm caused by the data breach. (See id.). Thus, this factor weighs in favor of approval.

      c.    *Attorney's Fees*.

Rule 23(e) requires the court to consider "the terms of any proposed award of attorney's fees, including timing of payment" in determining whether the settlement is fair, adequate and

reasonable. See Fed. R. Civ. P. 23(e)(2)(C)(iii). The Ninth Circuit has interpreted this factor "as imposing an obligation on district courts to examine whether the attorneys' fees arrangement shortchanges the class." McKinney-Drobnis, 16 F.4th at 607 (internal quotation marks omitted). In doing so, the court "must balance the proposed award of attorney's fees vis-à-vis the relief provided for the class[.]" Id. (internal quotation marks omitted). The court must assess the proposed award of attorney's fees by considering the Bluetooth factors. See McKinney-Drobnis, 16 F.4th at 608 ("If we conclude that the district court did not adequately consider the Bluetooth factors, and therefore did not adequately consider signs that the parties had negotiated an unreasonable amount of attorneys' fees in assessing settlement fairness in the first instance, then we must vacate and remand the Approval Order [in addition to the attorneys' fee award], so that the court may appropriately factor this into its Rule 23(e) analysis.") (internal quotation marks omitted) (brackets in original).

Here, application of the Bluetooth factors to the requested attorney's fees award does not undermine the fairness of the settlement. First, the settlement provides for up to 25% of the gross settlement amount ($437,500) in attorney's fees. (See Dkt. 76-1, Settlement Agreement at ¶ 87). Thus, counsel would not be receiving a disproportionate share of the settlement. See Bluetooth, 654 F.3d at 947 (noting that a sign of collusion included "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded") (internal quotation marks omitted).

Second, although the Settlement Agreement includes an implicit clear sailing provision,[9]

---

[9] As noted earlier, one type of "clear sailing" agreement is where "the defendant agrees not to oppose a petition for a fee award up to a specified maximum value." Bluetooth, 654 F.3d at 940 n. 6; see also Roes, 944 F.3d at 1049 (defining a clear sailing agreement as "an arrangement where defendant will not object to a certain fee request by class counsel") (internal quotation marks omitted). Plaintiff states that the "parties have no agreement as to the amount of attorneys' fees . . . that the Court could award, except that Plaintiff unilaterally included in the [Settlement] Agreement a provision capping the amount of fees and costs to be requested, which Aeries accepted without revision." (Dkt. 95, Motion at 7) (citing Dkt. 83-1, Supplemental Declaration of Hassan A. Zavareei in Support of Plaintiff's Supplemental Brief in Response to the Court's Order of December 13, 2021). The court considers this provision to be an implicit agreement subject to Bluetooth.

(see Dkt. 76-1, Settlement Agreement at ¶ 87), any fees not awarded will not revert to defendant; instead, fees will be added to the net settlement fund, from which payments to class members will be made. (Id.). Thus, there is no issue as to whether the clear sailing provision undermines the settlement. See, e.g., Russell v. Kohl's Dep't Stores, Inc., 755 F.Appx. 605, 608 (9th Cir. 2018) (concluding that existence of clear sailing provision did not undermine settlement in part because class counsel's fees "would come from a common fund" and "fees not awarded to counsel . . . would not revert" to defendant).

        d.    *Additional Agreements*.

This factor considers any "agreement required to be identified under Rule 23(e)(3)[.]"[10] Fed. R. Civ. P. 23(e)(2)(C)(iv). Here, defendant disclosed that the parties and JND reached an agreement to cap JND's fees at $200,000. (See Dkt. 96, Def. Motion at 6); (Dkt. 96-1, Valdetero Decl. at ¶¶ 9-12); (Dkt. 96-2, Eoff Decl. at ¶ 3).

        3.    **Equitable Treatment of Class Members**.

Rule 23(e)(2) requires the court to consider whether the settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "A distribution of relief that favors some class members at the expense of others may be a red flag that class counsel have sold out some of the class members at the expense of others, or for their own benefit." 4 Newberg on Class Actions, § 13:48 (5th ed.) (Supp. 2021).

In granting preliminary approval, the court set forth the allocation plan, which is based on the actual harm claimed by each class member, (see Dkt. 90, PAO at 4-6, 18-19), and did not find any issues of concern. (See id.). In short, this factor also weighs in favor of final approval.

        4.    **The Reaction of Class Members to the Proposed Settlement**.

The reaction of the class members to the proposed settlement has been very positive. Significantly, there were no objections and there were only ten requests for exclusion. (See Dkt. 95-2, Intrepido-Bowden Decl. at ¶¶ 20, 22). The lack of objections and limited requests for

---

[10] Rule 23(e)(3) provides that "[t]he parties seeking approval [of a settlement] must file a statement identifying any agreement made in connection with the proposal."

exclusion further support approval of the settlement. See, e.g., Franco v. Ruiz Food Prods., Inc., 2012 WL 5941801, *14 (E.D. Cal. 2012) (finding this factor weighed in favor of approval where only two out of 2,055 class members – less than one percent – opted out, and there were no objections to the settlement); Gong-Chun v. Aetna Inc., 2012 WL 2872788, *16 (E.D. Cal. 2012) (settlement approved when less than two percent of the class members opted out and no objections were received); Barcia v. Contain-A-Way, Inc., 2009 WL 587844, *4 (S.D. Cal. 2009) (finding this factor weighed in favor of approval of settlement when there were only 56 opt-outs out of the 2,385 class members and there were no objections).

In short, the court finds that the settlement is fair, reasonable, and adequate, and not the product of collusion.

II.   ATTORNEY'S FEES, COSTS, AND SERVICE AWARD.

A.   Attorney's Fees.

Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Attorney's fees in class actions are determined "using either the lodestar method or the percentage-of-recovery method." In re Hyundai, 926 F.3d at 570. The court's discretion in choosing between these two methods "must be exercised so as to achieve a reasonable result." Bluetooth, 654 F.3d at 942; see id. (In class actions where a "settlement produces a common fund . . . courts have discretion to employ either the lodestar method or the percentage-of-recovery method."); In re Hyundai, 926 F.3d at 570. The lodestar method is typically utilized when the relief obtained is "not easily monetized," such as when injunctive relief is part of the settlement. See Bluetooth, 654 F.3d at 941. The percentage-of-recovery method is typically used when a common fund is created. See id. at 942. "Whichever method is chosen, courts often employ the other method as a cross-check that the award is reasonable." In re Apple Inc. Device Performance Litig., 50 F.4th 769, 784 (9th Cir. 2022).

Under the lodestar method, the court multiplies the number of reasonable hours expended by a reasonable hourly rate. See In re Hyundai, 926 F.3d at 570. Once the lodestar has been calculated, the court may "adjust the resulting figure upward or downward to account for various

factors, including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment[.]" Id. (internal citation omitted). However, "adjustments [to the lodestar calculation] are the exception rather than the rule." Fischel v. Equitable Life Assurance Society of U.S., 307 F.3d 997, 1007 (9th Cir. 2002) (internal quotation marks omitted); Johnson v. MGM Holdings, Inc., 794 F.Appx. 584, 586 (9th Cir. 2019) (same).

Under the "percentage-of-the-fund" or "percentage-of-recovery" method, the "court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee, using 25% as a benchmark." In re Hyundai, 926 F.3d at 570 (internal quotation marks omitted). The 25% benchmark "can be adjusted upward or downward, depending on the circumstances." Id.; Bluetooth, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."); Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990) ("The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors."). In determining whether to depart from the 25% benchmark, courts consider "all of the circumstances of the case[,]" including:  (1) the results achieved for the class; (2) the risk of litigation; (3) the skill required and quality of the work; (4) the contingent nature of the fee; and (5) awards in similar cases. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002); In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 955 (9th Cir. 2015) (explaining that "there are no doubt many factors that a court could apply in assessing an attorneys' fees award" and that "Vizcaino does not purport to establish an exhaustive list"); Viceral v. Mistras Grp., Inc., 2017 WL 661352, *3 (N.D. Cal. 2017) (utilizing similar factors).

Here, the court will utilize the percentage of fund method, as it is the most likely to achieve a reasonable result. See Bluetooth, 654 F.3d at 942 ("Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result."); (Dkt. 93, Fees Motion at 9) (requesting attorney's fees based on the

percentage of fund method). Under the circumstances, the court finds that the requested $437,500.00 in attorney's fees, (see Dkt. 93, Fees Motion at 1), which do not depart from the 25% benchmark, constitute a reasonable fee. See In re Hyundai, 926 F.3d at 570-71 (recognizing 25% benchmark and noting that the percentage method is "a rough approximation of a reasonable fee"); Bluetooth, 654 F.3d at 942 (noting benchmark is typically a reasonable fee award).

B. Costs.

Class counsel seek $15,780.88 in costs. (See Dkt. 93, Fees Motion at 1, 21). The court finds that the costs incurred by class counsel over the course of this litigation are reasonable, and therefore awards a total of $15,780.88 in costs.

C. Class Representative Service Award.

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003); see Wren v. RGIS Inventory Specialists, 2011 WL 1230826, *31 (N.D. Cal. 2011) ("It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards.").

In its order granting preliminary approval of the settlement, the court undertook an examination of the fairness and adequacy of the service award at issue, applying the careful scrutiny required in this Circuit. (See Dkt. 90, PAO at 21); see also Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157, 1163 (9th Cir. 2013) (instructing "district courts to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives"). Based on its review of the record, the court determined that a service award of $2,500 was appropriate. (See Dkt. 90, PAO at 21). The court sees no reason to depart from its previous determination.

**CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiff's Motion for Final Approval of Class Action Settlement **(Document No. 95)** is **granted** upon the terms and conditions set forth in this Order.

2. Plaintiff's Motion for Payment of Attorneys' Fees, Reimbursement of Litigation Costs and Expenses, and Class Representative Service Award **(Document No. 93)** is **granted** as set forth

in this Order.

3. Defendant's Motion for Final Approval of Class Action Settlement **(Document No. 96)** is granted only to the extent set forth in this Order, and is otherwise **denied as moot**.

4. The court hereby **grants final approval** of the parties' Settlement Agreement and Release ("Settlement Agreement") (Document No. 76-1). The court finds that the Settlement Agreement is fair, adequate and reasonable, appears to be the product of arm's-length and informed negotiations, and treats all members of the class fairly. The parties are ordered to perform their obligations pursuant to the terms of the Settlement Agreement and this Order.

5. The settlement class is certified under Federal Rule of Civil Procedure 23(c) as defined in ¶ 38 of Settlement Agreement and this Order.

6. The form, manner, and content of the Class Notice meet the requirements of Federal Rule of Civil Procedure 23(c)(2).

7. Plaintiff Melinda Tomes shall be paid a service payment of $2,500.00 in accordance with the terms of the Settlement Agreement and this Order.

8. Class counsel shall be paid $437,500.00 in attorney's fees, and $15,780.88 in costs in accordance with the terms of the Settlement Agreement and this Order.

9. The settlement administrator, JND, shall be paid its fees and expenses in accordance with the terms of the Settlement Agreement and this Order in an amount not to exceed $200,000.

10. The court approves the designation of the Electronic Frontier Foundation as the cy pres beneficiary of residual funds.

11. All class members who did not validly and timely request exclusion from the settlement have released their claims, as set forth in the Settlement Agreement, against any of the released parties (as defined in the Settlement Agreement).

12. Except as to any class members who have validly and timely requested exclusion, this action is **dismissed with prejudice**, with all parties to bear their own fees and costs.

13. Without affecting the finality of this Order in any way, the court hereby retains jurisdiction over the parties, including class members, for the purpose of construing, enforcing, and administering the Order and Judgment, as well as the Settlement Agreement itself.

14. Judgment shall be entered accordingly.

Dated this 3rd day of March, 2023.

/s/<br>
Fernando M. Olguin<br>
United States District Judge